UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

APR - 3 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

ANTHONY LEWIS, #17215-018
FCC COLEMAN-MEDIUM
P.O. BOX 1032
COLEMAN, FLORIDA 33521-1032

CASE NO.

COMPLAINT

CIVIL COMPLAINT WITH A JURY
DEMAND, IN CONCERT WITH REQUEST
FOR EMERGENCY INJUNCTIVE RELIEF,
INJUNCTIVE RELIEF, AND DECLATORY
JUDGMENT.

V.

UNITED STATES OF AMERICA,
SOVEREIGNTY IN AND FOR FEDERAL DEFENDANTS
DEPARTMENT OF JUSTICE
10th and CONSTITUTION AVENUE, N.W.
WASHINGTON, D.C. 20530

DEPARTMENT OF JUSTICE,
FEDERAL GOVERNMENT ENTITY,
DEPARTMENT OF JUSTICE
10th and CONSTITUTION AVENUE, N.W.
WASHINGTON, D.C. 20530

Case: 1:15-cv-00500   Jury Demand
Assigned To : Mehta, Amit P.
Assign. Date : 4/3/2015
Description: Pro Se Gen. Civil  (F Deck)

KNOWN AND UNKNOWN DEPARTMENT OF JUSTICE EMPLOYEES,
INDIVIDUAL AND OFFICIAL CAPACITY,
DEPARTMENT OF JUSTICE
10th and CONSTITION AVENUE, N.W.
WASHINGTON, D.C. 20530

UNITED STATES ATTORNEY GENERAL JANET RENO,
INDIVIDUAL AND OFFICIAL CAPACITY,
DEPARTMENT OF JUSTICE
10th and CONSTITUTION AVENUE, N.W.
WASHINGTON, D.C. 20530

UNITED STATES ATTORNEY GENERAL JOHN ASHCROFT,
INDIVIDUAL AND OFFICIAL CAPACITY,
DEPARTMENT OF JUSTICE
10th and CONSTITUTION AVENUE, N.W.
WASHINGTON, D.C. 20530

UNITED STATES ATTORNEY GENERAL ALBERTO GONZALEZ,
INDIVIDUAL AND OFFICIAL CAPACITY,
DEPARTMENT OF JUSTICE
10th and CONSTITUTION AVENUE, N.W.
WASHINGTON, D.C. 20530

UNITED STATES ATTRONEY GENERAL MICHAEL MUKASEY,
INDIVIDUAL AND OFFICIAL CAPACITY,
DEPARTMENT OF JUSTICE
10th and CONSTITUTION AVENUE, N.W.
WASHINGTON, D.C. 20530



RECEIVED
Mail Room
MAR 2015
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

RECEIVED
Mail Room
APR - 3 2015
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

RECEIVED
Mail Room
JAN 2015
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

UNITED STATES ATTORNEY GENERAL ERIC HOLDER,
INDIVIDUAL AND OFFICIAL CAPACITY,
DEPARTMENT OF JUSTICE
10th and CONSTITUTION AVENUE, N.W.
WASHINGTON, D.C. 20530

DRUG ENFORCEMENT ADMINISTRATION,
FEDERAL GOVERNMENT ENTITY,
DRUG ENFORCEMENT ADMINISTRATION
8701 MORRISSETTE DRIVE
SPRINGFIELD, VIRGINIA 22152

TOM FEENEY,
DRUG ENFORCEMENT AGENT,
INDIVIDUAL AND OFFICIAL CAPACITY,
DRUG ENFORCEMENT ADMINISTRATION
8701 MORRISSETTE DRIVE
SPRINGFIELD, VIRGINIA 22152

DALE VANDORPLE,
DRUG ENFORCEMENT AGENT,
INDIVIDUAL AND OFFICIAL CAPACITY,
DRUG ENFORCEMENT ADMINISTRATION,
8701 MORRISETTE DRIVE
SPRINGFIELD, VIRGINIA 22152

KNOWN AND UNKNOWN DRUG ENFORCEMENT AGENTS,
INDIVIDUAL AND OFFICIAL CAPACITY,
DRUG ENFORCEMENT ADMINISTRATION
8701 MORRISSETTE DRIVE
SPRINGFIELD, VIRGINIA 22152

EXECUTIVE OFFICE OF UNITED STATES ATTORNEYS,
FEDERAL GOVERNMENT ENTITY,
600 EAST STREET, N.W.
WASHINGTON, D.C. 20530

KNOWN AND UNKNOWN ASSISTANT AND UNITED STATES ATTORNEYS,
INDIVIDUAL AND OFFICIAL CAPACITY,
600 EAST STREET, N.W.
WASHINGTON, D.C. 20530

THOMAS FINDLEY,
ASSISTANT U.S. ATTORNEY, INDIVIDUAL AND
OFFICIAL CAPACITY,
400 NORTH TAMPA STREET, SUITE 3200
TAMPA, FLORIDA 33602

TIMOTHY JAMES,
ASSISTANT U.S. ATTORNEY, INDIVIDUAL AND
OFFICIAL CAPACITY,
400 NORTH TAMPA STREET, SUITE 3200
TAMPA, FLORIDA 33602

TOD FOSTER,
ASSISTANT U.S. ATTORNEY, INDIVIDUAL AND
OFFICIAL CAPACITY,
400 NORTH TAMPA STREET, SUITE 3200
TAMPA, FLORIDA 33602

DOUGLAS FRAZIER,
ASSISTANT U.S. ATTORNEY, INDIVIDUAL AND
OFFICIAL CAPACITY,
400 NORTH TAMPA STREET, SUITE 3200
TAMPA, FLORIDA 33602

JACK FERNANDEZ,
ASSISTANT U.S. ATTORNEY, INDIVIDUAL AND
OFFICIAL CAPACITY,
400 NORTH TAMPA STREET, SUITE 3200
TAMPA, FLORIDA 33602

PAUL I. PEREZ,
ASSISTANT U.S. ATTORNEY, INDIVIDUAL AND
OFFICIAL CAPACITY,
400 NORTH TAMPA STREET, SUITE 3200
TAMPA, FLORIDA 33602

OFFICE OF PROFESSIONAL RESPONSIBILITY,
FEDERAL GOVERNMENT ENTITY,
950 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20530

KNOWN AND UNKNOWN EMPLOYEES OF THE OFFICE
OF PROFESSIONAL RESPONSIBILITY, INDIVIDUAL AND
OFFICIAL CAPACITY,
950 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20530

TORTS BRANCH, CIVIL DIVISION OF THE DEPARTMENT
OF JUSTICE, FEDERAL GOVERNMENT ENTITY,
P.O. Box 888
BENJAMIN FRANKLIN STATION
WASHINGTON, D.C. 20044

KNOWN AND UNKNOWN EMPLOYEES OF THE TORTS BRANCH,
CIVIL DIVISION, OF THE DEPARTMENT OF JUSTICE,
INDIVIDUAL AND OFFICIAL CAMPACITY,
P.O. Box 888
BENJAMIN FRANKLIN STATION
WASHINGTON, D.C. 20044

KNOWN AND UNKNOWN UNITED STATES DISTRICT COURT
JUDGES, INDIVIDUAL AND OFFICIAL CAPACITY,
801 NORTH FLORIDA AVENUE
TAMPA, FLORIDA 33602

TAMPA POLICE DEPARTMENT,
STATE OF FLORIDA GOVERNMENT ENTITY,
411 NORTH FRANKLIN STREET
TAMPA, FLORIDA 33602

D.W. TODD,
TAMPA POLICE OFFICER, INDIVIDUAL AND
OFFICIAL CAPACITY,
411 NORTH FRANKLIN STREET
TAMPA, FLORIDA 33602

R.A. OLIWINSKI,
TAMPA POLICE OFFICER, INDIVIDUAL AND
OFFICIAL CAPACITY,
411 NORTH FRANKLIN STREET
TAMPA, FLORIDA 33602

KNOWN AND UNKNOWN TAMPA POLICE OFFICERS,
TAMPA POLICE OFFICERS, INDIVIDUAL AND OFFICIAL CAPACITY,
411 NORTH FRANKLIN STREET
TAMPA, FLORIDA 33602

KNOWN AND UNKNOWN HILLSBOROUGH COUNTY SHERIFFS OFFICERS,
HILLSBOROUGH COUNTY SHERIFFS OFFICERS, INDIVIDUAL AND
OFFICIAL CAPACITY,
2008 EAST 4th AVENUE
TAMPA, FLORIDA 33605

HONORABLE RALPH NIMMONS,
UNITED STATES DISTRICT COURT JUDGE, INDIVIDUAL AND
OFFICIAL CAPACITY,
801 NORTH FLORIDA AVENUE
TAMPA, FLORIDA 33602

HONORABLE SUZAN KOVACHEVICH,
UNITED STATES DISTRICT COURT JUDGE, INDIVIDUAL AND
OFFICIAL CAPACITY,
801 NORTH FLORIDA AVENUE
TAMPA, FLORIDA 33602

HONORABLE RICHARD LAZZARA,
UNITED STATES DISTRICT COURT JUDGE, INDIVIDUAL AND
OFFICIAL CAPACITY,
801 NORTH FLORIDA AVENUE
TAMPA, FLORIDA 33602

PRELIMINARY PRESENTATION OF GENUINE ISSUES OF
MATERIAL FACTS THAT STATES CLAIMS OF CONSTITUTIONAL, STATUTORY,
LEGAL, AND OTHER RIGHTS VIOLATIONS AS A RESULT OF AN ONGOING AND
CONTINUED COVER UP AND CONSPIRACY TO COVER UP

This is a civil action against the above listed entities,
defendants, and others known and unknown for the past, ongoing,
and continued violation of the plaintiff's fundamental Constitutional,
statutory, legal, and other rights, where there has been in the
past and presently exist an ongoing and continued cover up and con-
spiracy to cover up, as well as conceal evidence, facts, and infor-
mation related to the fundamental Constitutional, statutory, legal,
and other rights violations, including a past and presently ongoing
cover up, conspiracy to cover up, and concealment of past and ongoing
official misconduct, crimes, and wrong doing of the defendants and
others known and unknown.

The plaintiff has suffered past and present violations
of his Constitutional, statutory, legal, and other rights as a
result of the defendants knowingly, intentionally, arbitrarily,
capriciously, maliciously, illegally, and unlawfully, intercepting.
disclosing , and using plaintiff's telephone communications to
arrest, obtain evidence, indict, charge, prosecute, and convict
him, as well as to seize and administratively forfeit plaintiff's
property and property interest, in violatin of Title III of the
Omnibus Crime Control and Safe Streets Act of 1968, relevant to
Title 18 U.S.C. §§ 2510-2522, while in the past, presently, ongoing,
and continuously covering up, conspiring to cover up, and concealing

the fundamental Constitutional, statutory, legal, and other
rights violations, including a cover up, conspiracy to cover up
and concealment of the past, ongoing, and continued official
misconduct, crimes, and wrongdoing of the defendants and others
known and unknown.

The plaintiff has obtained confirmed evidence, facts,
and information of the fundamental Constitutional, statutory,
legal, and other rights violations by way of a Freedom of Info-
rmation Act civil action in the United States District Court in
the District of Columbia, Anthony Lewis v. U.S. Dept. of Justice,
09-746 (RBW) (Dist. of Columbia, 2009), where the Department of
Justice Office of Enforcement Operations confirmed the defenda-
nts and others known and unknown knowingly, intentionally, arb-
itrarily, capriciously, maliciously, illegally, and unlawfully
intercepted, disclosed, and used the plaintiff's telephone com-
munications, relevant to Title III Omnibus Crime Control and
Safe Streets Act of 1968 and Title 18 U.S.C. §§ 2510-2522.

The plaintiff has obtained comfirmed evidence, facts, and information of the entities, defendants, and others known and unknown past, presently ongoing, and continued violation of the plaintiff's fundamental Constitutional, statutory, legal, and other rights violations, by way of the same Freedom of Information Act civil action, Anthony Lewis v. U.S. Dept. of Justice, 09-746 (RBW) (Dist. of Columbia 2009), including a past, presently ongoing, and continued cover up, conspiracy to cover up, and conceal past and ongoing official misconduct, crimes, and wrongdoing of the defendants and others known and unknown.

The fundamental Constitutional, statutory, legal, and other rights violations committed by the entities, defendants, and others known and unknown, including the past, presently ongoing, and continued cover up, conspiracy to cover up, and concealment of official misconduct, crimes, and wrongdoing, has in the past, presently ongoing and continuously deprive the plaintiff of access to the court and/or loss of past and present opportunity to seek and obtain orders of relief from his continued incarceration, full and fair opportunity to litigate civil actions, negated plaintiff's ability to seek and obtain impartial redress in court relevant to criminal and civil proceedings, and caused the loss and/or inadequate resolution of meritorious criminal and civil cases.

The plaintiff has confirmed evidence of a sealed secret docketed case in the Middle District of Florida, Tampa Division, Anthony Lewis v. United States of America, 8:93-mc-10-cr-T-17 (M.D. Fla. 1993), of which has been sealed and secretly docketed for more than "twenty (20) years" by the defendants and others known and

7

unknown, and contains clarifying documents of the defendants vio-
lations of the plaintiff's fundamental Constitutional, statutory,
legal and other rights, including past, presently ongoing, and con-
tinued cover up, conspiracy to cover up, and concealment of official
misconduct, crimes, and wrongdoing, where the defendants and others
refuse to unseal and/or allow the plaintiff access to the same.

        The plaintiff has confirmed evidence of a confession from
the Drug Enforcement Administration's Internal Affairs Division,
clarifying that the defendants and others known and unknown know-
ingly, intentionally,arbitrarily, capriciously, maliciously, illegal-
ly, and unlawfully, intercepted, disclosed, and used the plaintiff's
telephone communications, in violation of Title III of the Omnibus
Crime Control and Safe Streets Act of 1968 and Title 18 U.S.C. §2510-
2522, in concert with the entities, defendants, and others  known
and unknown affording preferential treatment by covering up, con-
spiring to cover up, and concealing the defendants and others known
and unknown official misconduct, crimes, and wrongdoing, where the
Drug Enforcement Administration refuse to release the evidence.

        The plaintiff has confirmed evidence of the defendant
federal government entities in the past, presently ongoing, and
continued common custom and practice to allow its federal employees
to violate plaintiff's and others known and unknown fundamental
Constitutional, statutory, legal, and other rights, by committing
official misconduct, crimes, and wrongdoing, then failing to seek
correction and resolution of the fundamental Constitutional,
statutory, legal, and other rights violations, while covering up,
conspiring to cover up, and concealing the same. The federal gover-

nment entities illegal and unlawful common customs and practices were and are so widespread that the defendants and others known and unknown violated the plaintiff's and others fundamental Constitutional, statutory, legal, and other rights as though acting with the force of law.

The plaintiff has provided the court supporting documents in concert with the present civil action, of which is not a contest to his criminal conviction, nor would invalidate his criminal conviction, although emergency injunctive relief is being sought in concert with the present civil action, that confirms the fundamental Constitutional, statutory, legal, and other rights violations, as well as the defendants and others known and unknown, past, presently ongoing, and continued cover up, conspiracy to cover up, concealment, and silence of the violations set out in the present complaint, set out in Exhibits A through P.

The plaintiff has made an hurculean effort to have his day in court for redress of the Constitutional, statutory, legal, and other rights violations, and the defendants and others known and unknown acted in an intentional  and willful manner to prevent redress and resolution of the fundamental Constitutional, statutory, legal, and other rights violations by committing fraud, fraudulent concealment, a continued cover up and conspiracy to cover up, and concealment of the same violations, for more than twenty (20) years.

9

## JURISDICTION

This court has pendant jurisdiction pursuant to Title
18 U.S.C. §§ 2511, 2515, 2518(10), and 2520 for the statutory
violations of Title 18 U.S.C. §§ 2510-2522. The Court has juris-
diction to hear and address the civil action pursuant to Title
28 U.S.C. §§ 1331, 1333, and 1343, with diversity and supplemen-
tal jurisdiction over all state law claims pursuant to Title 28
U.S.C. § 1367(a). Jurisdiction for additional state law claims
exist pursuant to Title 42 U.S.C. §§ 1983, 1985, and 1988. Jur-
isdiction for the Torts against the defendants exist pursuant to
Title 28 U.S.C. §§ 1346 and 2671-2680. The plaintiff also invo-
kes Title 18 U.S.C. §§ 241 and 242 for his conspiracy claims, and
the court to invoke any and all other statutes that affords it
jurisdiction to hear, address, and resolve the civil litigation.

## VENUE

Venue is proper in this court pursuant to Title 28
U.S.C. §§ 1391(b) and (C), as well as 28 U.S.C. § 1404, as the
events giving rise to this claim occurred and are ongoing in this
district, as well as the Middle District of Florida, Tampa Divi-
sion. The Extraordinary Circumstance Standard is warranted for
venue in this case, as this court has true venue.

Additionally, the interest of justice standard is
applicable for venue here, as judicial economy and efficiency
is better served in this venue, where the civil action is more
than likely to be addressed and resolved impartially by the jud-
icial officers, none of which are defendants or parties relevant
to the litigation.

## PARTIES

1. The plaintiff, Anthony Lewis (Plaintiff), is currently a federal inmate in custody of the United States Attorney General (USAG), with the Federal Bureau of Prisons, at the Federal Correctional Complex-Medium (FCC Coleman-Medium), P.O. Box 1032, in Coleman, Florida 33521-1032.

2. The defendant United States of America (USA), is the overall superior of the federal entities and defendants of the present litigation, and is being sued under the Federal Torts Claims Act (FTCA), for the knowing, intentional, malicious, arbitrary, capricious, illegal, and unlawful acts and/or violations of the Constitution, federal law, and state law, committed by the entities it controls and its employees.

3. The defendant, Department of Justice (DOJ), is being sued for its unconstitutional, illegal, and unlawful widespread practice, custom, usage, and habits that caused the plaintiff loss, violation of his Constitutional rights, federal law, and state law, as well as for negligent supervision of its subordinate federal entities and employees, in concert with a cover up, conspiracy to cover up, and concealment of its subordinate entities and employees violations of Constitutional rights, federal law, official misconduct, wrongdoing, crimes, illegal conduct, and unlawful conduct.

4. The defendant, United States Attorney General (USAG) Janet Reno (defendant Reno), is being sued in her official and individual capacity for negligent supervision of the defendant DOJ and employees of the defendant DOJ and its subordinate entit-

ies, and for also allowing and/or enforcing the defendant DOJ,
its subordinate entities, and employees to effect widespread
practices, customs, and usages that caused the plaitniff loss,
violation of his Constitutional, statutory, legal, and other
rights, including violation of federal and state law, while
covering up, conspiring to cover up, and concealing the same
with past, ongoing, and continued silence during the time she
was acting as the USAG, and at times relevant to the present
civil action.

5. The defendant, United States Attorney General (USAG)
John Ashcroft (defendant Ashcroft), is bieng sued in his official
and individual capacity for negligent supervision of the defend-
ant DOJ and employees of the defendant DOJ and its subordinate
entities, and for also allowing and/or enforcing the defendant
DOJ, its subordinate entities, and employees to effect widespread
practices, customs, and usages that caused the plaintiff loss,
violation of his Constitutional, statutory, legal, and other
rights, including violation of federal and state law, while
covering up, conspiring to cover up, and concealing the same
with past, ongoing, and continued silence during the time he
was acting as the USAG, and at times relevant to the present
civil action.

6. The defendant, United States Attorney General (USAG)
Alberto Gonzalez  (defendant Gonzalez), is bieng used in his
official and individual capacity for negligent supervision of
the defendant DOJ and employees of the defendant DOJ and its
subordinate entities, and for also allowing and/or enforcing

the defendant DOJ, its subordinate entities, and employees to
effect widespread practices, customs, and usages that caused
the plaintiff loss, violation of his Constitutional, statutory,
legal, and other rights, including violation of federal and
state law, while covering up, conspiring to cover up, and
concealing the same with past, ongoing, and continued silence
during the time he was acting as the USAG, and at times relevant
to the present civil action.

7. The defendant, United States Attorney General (USAG)
Michael Mukasey (defendant Mukasey), is bieng sued in his offic-
ial and individual capacity for negligent supervision of the
defendant DOJ and employees of the the defendant DOJ and its
subordinate entities, and for also allowing and/or enforcing
the defendant DOJ, its subordinate entities, and employees to
effect widespread practices, customs, and usages that caused
the plaintiff loss, violation of his Constitutional, statutory,
legal, and other rights, including violation of federal and
state law, while covering up, conspiring to cover up, and conce-
aling the same with past, ongoing, and continued silence during
the time he was acting as the USAG, and at times relevant to
the present civil action.

8. The defendant, United States Attorney General (USAG)
Eric Holder (defendant Holder), is being sued in his official
and individual capacity for negligent supervision of the defend-
and DOJ and employees of the defendant DOJ and its subordinate
entities, and for also allowing and/or enforcing the defendant
DOJ, its subordinate entities, and employees to effect widespread

practices, customs, and usages that caused the plaintiff loss, violation of his Constitutional, statutory, legal, and other rights, including violation of federal and state law, while covering up, conspiring to cover up, and concealing the same with past, ongoing, and continued silence during the time he was acting as the USAG, and at times relevant to the present civil action.

9. The defendant Drug Enforcement Administration, (defendant DEA), is being sued for its illegal and unlawful practices, customs, usages, and habits followed and used by its employees, for its employees official misconduct, criminal acts, knowing, intentional, malicious, arbitrary, capricious, illegal, unlawful, and unconstitutional actions, for its negligent super-vison of its employees, and for its practice and custom of cover-ing up and concealing all of the same states above, including past, ongoing, and continued silence of the violations stated above.

10. The defendant Tom Feeney (defendant Feeney), a DEA agent, is being sued in his official and individual capacity for having direct involvement and knowingly, intentionally, malicio-usly, arbitrarily, capriciously, illegally, and unlawfully viol-ating the plaintiff's Constitutional, statutory, legal, and other rights, federal and state law, while covering up, conspiring to cover up, and concealing the same, including past, ongoing, and continued silence of the violations stated above.

11. The defendant Dale VanDorple (defendant VanDorple), a DEA agent, is being sued in his official and individual capacity for having direct involvement and knowingly, intentionally, malicously, arbitrarily, capriciously, illegally and unlawfully violating the plaintiff's Constitutional, statutory, legal, and other rights, federal and state law, while covering up, conspiring to cover up, and concealing the same, including past, ongoing, and continued silence of the violations stated above.

12. The defendants known and unknown Drug Enforcement Agents (defendants known and unknown DEA agents), DEA agents, are being sued in their official and individual capacity for having direct involvement and knowingly, intentionally, maliciously, arbitrarily, capriciously, illegally, and unlawfully violating the plaintiff's Constitutional, statutory, legal and other rights, federal and state law, while covering up, conspiring to cover up, and concealing the same, including past, ongoing, and continued silence of the violations stated above.

13. The defendant Executive Office of United States Attorneys, (Defendant EOUSA), is being sued for its illegal and unlawful practices, customs, usages, and habits followed and used by its employees, for its employees official misconduct, criminal acts, knowing, intentional, malicious, arbitrary, capricious, illegal, unlawful, and unconstitutional actions, for its negligent supervision of its employees, and for its practices and custom of covering up and concealing all of the same stated above, including past, ongoing, and continued silence of the violations stated above.

14. The defendant known and unknown Assistant United
States Attorneys (defendant known and unknown AUSA(s)),
employees of the defendant DOJ and EOUSA, is being sued in
their official and individual capacity for having direct involv-
ement and knowingly, intentionally, maliciously, arbitrarily,
capriciously, illegally, and unlawfully violating the plaintiffs
Constitutional, statutory, legal, and other rights, federal and
state law, while covering up, conspiring to cover up, and conce-
aling the same, including past, ongoing, and continued silence
of the violations stated above.

15. The defendant Thomas Findley (defendant Findley),
an AUSA and employee of the defendant DOJ and EOUSA, is being
sued in his official and individual capacity for having direct
involvement and knowingly, intentionally, maliciously, arbitrar-
ily, capriciously, illegally, and unlawfully violating the plai-
ntiff's Constitutional, statutory, legal, and other rights, fed-
eral and state law, while covering up, conspiring to cover up,
and concealing the same, including past, ongoing, and continued
silence of the violations stated above.

16. The defendant Timothy James (defendant James), an
AUSA and employee of the defendant DOJ and EOUSA, is being sued
in his official and individual capacity for having direct invol-
vement and knowingly, and intentionally, maliciously, arbitrarily,
capriciously, illegally, and unlawfully violating the plaintiff's
Constitutional, statutory, legal, and other rights, federal and
state law, while covering up, conspiring to cover up, and conce-
aling the same, including past, ongoing, and continued silence

of the violations stated above.

17. The defendant Todd Foster (defendant Foster), an
AUSA and employee of the defendant DOJ and EOUSA, is being sued
in his official and individual capacity for having direct invol-
vement and knowingly, and intentionally, maliciously, arbitrarily,
capriciously, illegally, and unlawfully violating the plaintiff's
Constitutional, statutory, legal and other rights, federal and
state law, while covering up, conspiring to cover up, and conce-
aling the same, including past, ongoing, and continued silence
of the violations stated above.

18. The defendant Douglas Frazier (defendant Frazier),
an AUSA and employee of the defendant DOJ and EOUSA, is being
sued in his official and individual capacity for having direct
involvement and knowingly, and intentionally, maliciously, arbi-
trarily, capriciously, illegally, and unlawfully violating the
plaintiff's Constitutional, statutory, legal, and other rights,
federal and state law, while covering up, conspiring to cover up,
and concealing the same, including past, ongoing, and continued
silence of the violations states above.

19. The defendant Jack Fernandez (defendant Fernandez),
an AUSA and employee of the defendant DOJ and EOUSA, is being
sued in his official and individual capacity for having direct
involvement and knowingly, and intentionally, maliciously, arbi-
trarily, capriciously, illegally, and unlawfully violationg the
plaintiff's Constitutional, statutory, legal, and other rights,
federal and state law, while covering up, conspiring to cover up,
and concealing the same, including past, ongoing, and continued

17

silence of the violations stated above.

20. The defendant Paul I. Perez (defendant Perez), a United States Attorney and employee of the defendant DOJ and EOUSA, is being sued in his official and individual capacity for negligent supervision, and having direct involement and knowingly, and intentionally, maliciously, arbitrarily, capriciously, illegally, and unlawfully violating the plaintiff's Constitutional, statutory, legal, and other rights, federal and state law, while covering up, conspiring to cover up, and concealing the same, including past, ongoing, and continued silence of the violations stated above.

21. The defendant Office of Professional Responsibility (defendant OPR), is being sued for its unconstitutional, illegal, and unlawful widespread practice, custom, usage, and habits that caused the plaintiff loss, violation of his Constitutional, statutory, legal, and other rights, federal and state law, negligent supervision of its employees, in concert with a cover up, conspiracy to cover up, and concealment the individual defendants violations, misconduct, wrongdoing, crimes, illegal conduct, and unlawful conduct.

22. The defendant known and unknown employees of the defendant OPR (known/unknown OPR employee), are being sued in their official and individual capacity for having direct involvement and knowingly, and intentionally, maliciously, arbitrarily, capriciously, illegally, and unlawfully violating the plaintiff's Constitutional, statutory, legal, and other rights, federal and state law, for following the OPR illegal and unlawful widespread

18

practice, custom, usage, and habits of covering up, conspiring
to cover up, and concealment of the individual defendants viola-
tions, misconduct, wrongdoing, crimes, illegal conduct, and
unlawful conduct.

23. The defendant Torts Branch, Civil Division of the
Department of Justice (defendant Torts Branch Civil Division of
the DOJ), is being sued for its unconstitutional, illegal, and
unlawful widespread practice, custom, usage, and habits that
caused the plaintiff loss, violation of his Constitutional,
statutory, legal, and other rights, federal and state law, negl-
igent supervision of its employees, in concert with a cover up,
conspiracy to cover up, and concealment of the individual defen-
dants violations, misconduct, wrongdoing, crimes, illegal conduct,
and unlawful conduct.

24. The defendants known and unknown employees of the
defendant Torts Branch, Civil Division of the DOJ (defendant
known/unknown Torts Branch, Civil Division (FTCD) of the DOJ employees),
are being sued in their official and individual capacity for
having direct involvement and knowingly, intentionally, malicio-
usly, arbitrarily, capriciously, illegally, and unlawfully, vio-
lating the plaintiff's Constitutional, statutory, legal, and
other rights, federal and state law, by following the Torts
Branch, Civil Division of the DOJ illegal and unlawful widespread
practice, custom, usage, and habits of covering up, conspiring to
cover up, and concealment of the individual defendants violations,
misconduct, wrongdoing, crimes, illegal conduct, and unlawful
conduct.

25. The defendants known and unknown United States District Court Judges (defendant(s) known/unknown District Court Judge(s)), are being sued in their official and individual capacity for having direct involvement and knowingly, intentionally, maliciously, arbitrarily, capriciously, illegally, and unlawfully, violating the plaintiff's Constitutional, statutory, legal, and other rights, federal and state law, by failing to comply to their oath of office to honor the Constitution and laws of the United States, and using their judicial authority to cover up, conspire to cover up, and conceal the individual defendants violations, misconduct, wrongdoing, crimes, illegal conduct, and unlawful conduct, while also committing criminal acts and wrongdoing themselves.

26. The defendant Tampa Police Department (defendant TPD), is being sued for its unconstitutional, illegal, and unlawful widespread practice, custom, usage, and habits that caused the plaintiff loss, violation of his Constitutional, statutory, legal, and other rights, federal and state law, negligent supervision of its employees, in concert with a cover up, conspiracy to cover up, and concealment of its employees and individual defendants violations, misconduct, wrongdoing, crimes, illegal conduct, and unlawful conduct.

27. The defendant D.W. Todd (defendant Todd), is being sued in his official and individual capacity for having direct involvement and knowingly, intentionally, maliciously, arbitrarily, capriciously, illegally, and unlawfully violating the plaintiff's Constitutional, statutory, legal, and other rights,

20

federal and state law, while covering up, conspiring to cover
up, and concealing the same, including past, ongoing, and cont-
inued silence of the violations stated above.

28. The defendant R.A. Oliwinski (defendant Oliwinski),
is being sued in his official and individual capacity for having
direct involvement and knowingly, intentionally, maliciously,
arbitrarily, capriciously, illegally, and unlawfully violating
the plaintiff's Constitutional, statutory, legal, and other
rights, federal and state law, while covering up, conspiring
to cover up, and concealing the same, including past, ongoing,
and continued silence of the violations stated above.

29. The defendants known and unknown Tampa Police
Officers (defendant(s) known/unknown TPD officers), are being
sued in their official and individual capacity for having direct
involvement and knowingly, intentionally, malic-
iously, arbitrarily, capriciously, illegally, and unlawfully,
violating the plaintiff's Constitutional, statutory, legal, and
other rights, federal and state law, while covering up, conspi-
ring to cover up, and concealing the same, including past,
ongoing, and continued silence of the violations stated above.

30. The defendants known and unknown Hillsborough County
Sheriffs Officers (defendant(s) known/unknown HCSO officers),
are being sued in their official and individual capacity for
having direct involvement and knowingly, intentionally, malici-
ously, arbitrarily, capriciously, illegally, and unlawfully,
violating the plaintiff's Constitutional, statutory, legal, and

other rights , federal and state law, while covering up, conspir-
ing to cover up, and concealing the same, including past, ongoing
and continued silence of the violations stated above.

31. The defendant Honorable Ralph Nimmons is being sued in
his official and individual capacity for having direct involvement
and knowingly,  intentionally, maliciously, capriciously, illegally,
and unlawfully, violating the plaintiff's constitutional,  statutory,
legal, and other rights, Federal and state law, by failing to comply
to his oath  of office to honor the Constitution and laws of the
United States, and using his judicial authority, to cover up, con-
spire to cover up, and conceal the individual defendant's violations,
misconduct, wrongdoing, crimes, illegal criminal acts and wrongdoing
himself.

32. The defendant Honorable Suzan Kovachevich is being sued
in her official and individual capacity for having direct involve-
ment and knowingly, intentially, maliciously, capriciously, illegaly,
and unlawfully, violating the plaintiff's contitutional, statutory,
legal, and other rights, Federal and state law, by failing to comply
to her oath of office to honor the Constitution and laws of the
United States, and using his judicial authority, to cover up,
conspire to cover up, and conceal the individual defendant's vio-
lations, misconduct, wrongdoing, crimes, illegal criminal acts and
wrongdoing herself.

33. The defendant Honorable Richard Lazzara is being sued in
his official and individual capacity for having direct involvement
and knowingly, intentially, maliciously, capriciously, illegaly,

and unlawfully, violating the plaintiff's constitutional, statutory, legal, and other rights, federal and state law, by failing to comply to his oath of office to honor the Constitution and laws of the United States, and using his judicial authority, to cover up, conspire to cover up, and conceal the individual defendant's violations, misdconduct, wrongdoing, crimes, illegal criminal acts and wrongdoing himself.

The true facts being set out here are not the complete facts of the case, and given the fact that the defendants have in the past, and presently are instrumental in covering up and concealing additional truths and evidence. The defendants have acted in the past and are presently acting with hopes and intentions that the plaintiff would not discover the crimes, Constitutional violations, legal rights violations, statutory rights violations, and other rights violations.

Finally, the defendants have acted with hopes and intentions that delay would cause facts and evidence to be discarded, and that material facts, evidence, and witnesses would fade. The possibility of amendment of the civil complaint is evident in light of the following.

PROCEDURAL HISTORY OF GENERAL ALLEGATIONS

34. The defendants specific involvement with illegally
intercepting the telephone communications of the plaintiff(s)
resulted from an investigation of the plaintiff by the defendants
Feeney, VanDorple, known and unknown DEA Agents, all of which
were employees of the defendant DEA, defendants D.W. Todd, R.A.
Oliwinski, known and unknown TPD Officers, and known and unknown
HCSO, for alleged narcotic dealings in Tampa, Florida, as a joint
investigation that started on an unknown date in 1992.

35. The defendants DEA, Feeney, VanDorple, and known and
unknown DEA Agents, did not have, nor obtained executive authori-
zation from the United States Attorney General to investigate the
plaintiff for narcotics dealings, nor did the defendants have and/or
obtain jurisdiction from the  Defendant USAG(s), or any other
Executive Branch of government official to investigate the plain-
tiff for illegal narcotics dealings, as required pursuant to 21
C.F.R. 1311.02(a), Title 21 U.S.C. §§875 and 876, and Drug Enforce-
ment Administration Operation manuel §6654.1(a).

36. During the investigation of the plaintiff by the defen-
dants Feeney, VanDorple, Todd, Oliwinski, known and unknown DEA
Agents, known and unknown TPD Officers, and known and unknown HCSO,
the defendants Foster, Finley, and Frazier, sought wiretap orders
from the defendant Kovachivich, without complying to the authorization
requirements of Title 18 U.S.C. §2516, in order to intercept telephone
communications from plaintiff's telephones and/or telephones as-
sociated with the plaintiff.

24

37. The defendants Foster, Finley, and Frazier intentionally and with reckless disregard for the law and Constitution, failed to seek authorization from the USAG or any other DOJ Official, in order to seek a wiretap order from the defendant Kovachivich, for the purpose of intercepting telephone communications of the plaintiff's and/or telephones associated with the plaintiff.

38.   During the investigation of the plaintiff by the defendants Feeney, VanDorple, Todd, Oliwinski, known and unknown DEA Agents, known and unknown TPD Officers, and known and unknown HCSO, none of the defendants complied to the State of Florida Wire tap statute and procedures as set out in Sections 934.03 through 934.09.

39.   All of the defendants listed in the present civil action intentionally and with reckless disregard for the law and constitution, failed to comply to the State of Florida Wiretap statute in order to intercept telephone communications from plaintiff's telephones and/or telephones associated with the plaintiff.

40.   On dates unknown the defendants Foster, Finley, and Frazier, working in conjunction with the defendants Feeney, VanDorple, Todd, Oliwinski, known and unknown DEA Agents, known and unknown TPD Officers, and known and unknown HCSO, prepared and filed motions and affidavits requesting wiretap orders for the plaintiff's telephones and telephones associated with the plaintiff, and presented them to the defendant Kovachivich for wiretap orders.

41.   On July 21, 1993, the defendant Kovachivich signed and issued an order to the defendants Foster, Finley, and Frazier to intercept telephone communications from telephone number (813) 933-

2944, a telephone of the plaintiffs and/or associated with the plaintiff, without the defendants Foster, Finley, and Frazier obtaining authorization from the USAG, and without the defendant Kovachivich assuring that authorization from the USAG was issued as required pursuant to Title 18 U.S.C. §§2516 and 2517.

42.  On August 3, 1993, the defendant Kovachivich signed and issued an order to the defendants Foster, Finley, and Frazier to intercept telephone communications from telephone number (813) 979-4849, a telephone of the plaintiff and/or associated with the plaintiff , without the defendants Foster, Finley, and Frazier obtaining authorization from the USAG, and without the defendant Kovachivich assuring that authorization from the USAG was issued as required pursuant to Title 18 U.S.C. §§2516 and 2517.

43.  On August 9, 1993, the Defendant Kovachivich signed and issued an order to the defendants Foster, Finley, and Frazier to intercept telephone communications from telephone number (813) 620-7412, a telephone of the plaintiff and/or associated with the plaintiff, without the defendants Foster, Finley, and Frazier obtaining authorization from the USAG, and without the defendant Kovachivich assuring that authorization from the USAG was issued as required pursuant to Title 18 U.S.C. §§2516 and 2517.

44.  From an unknown date, but at least from July 21, 1993, the defendants Feeney, VanDorple, Todd, Oliwinski, known and unknown DEA Agents, known and unknown TPD Officers, and known and unknown HCSO, collected information from and illegally intercepted telephone communications from the plaintiff's telephones and/or

telephones associated with the plaintiff as stated in the present
complaint, based on the orders issued by the defendant Kovachivich,
which was issued after the defendants Foster, Finley, and Frazier
requested for the orders without the required authorization, until
a date presently unknown.

45.  On or about August 17, 1993, the defendants Feeney, Van-
Dorple, Todd, Oliwinski, known and unknown DEA Agents, known and
unknown TPD Officers, and known and unknown HCSO raided the plain-
tiff's apartment located at 12230 North 16th Street, apartment 346,
after intercepting telephone communications from the plaintiff's
telephone and/or telephones associated with the plaintiff, with
anticipation of finding illegal narcotics, without possessing an
arrest warrant for the plaintiff and without obtaining a search
warrant for the residence from a judicial officer.

46.  On or about August 17, 1993, the defendants Feeney, Van-
Dorple, Todd, Oliwinski, known and unknown DEA Agents, known and
unknown TPD Officers, known and unknown HCSO raided the plaintiff's
residences located at 2608 E. Yukon Street and 4101 North Holly
Street, after intercepting telephone communications from the plain-
tiff's telephone and/or telephones associated with the plaintiff,
with anticipation of finding illegal narcotics, and without possess-
ing search warrants for the residences from a judicial officer

47.  On or about August 17, 1993, the defendants Feeney, Van-
Dorple, Todd, Oliwinski, known and unknown DEA Agents, known and
unknown TPD Officers, and known and unknown HCSO, collected personal
property, documents, business documents, vehicles, property associ-

ated with the plaintiff's business, and alleged narcotics evidence,
from the residences stated in the present complaint, after inter-
cepting telephone communications from the plaintiff's telephones
and/or telephones associated with the plaintiff, without possessing
seizure warrants for the property issued by a judicial officer.

48. On or about August 17, 1993, sometime after the plain-
tiff's residences were raided and his property was seized, the
defendants Feeney, VanDorple, Todd, Oliwinski, known and unknown
DEA Agents, known and unknown TPD Officers, known and unknown HCSO,
fabricated alleged judicially issued search warrants for the
residences stated in the present complaint, and supported the
affidavits for the fabricated search warrants with illegally inter-
cepeted telephone communications from the plaintiff's telephone
and/or telephones associated with the plaintiff. See Exhibit O.

49.  On or about August 17, 1993, the plaintiff was taken to
the United States District Court, Middle Distict of Florida,
Tampa Division for a detention hearing, after being arrested by
the defendants, Feeney, VanDorple, Todd, Oliwinski, known and un-
known DEA Agents, known and unknown TPD Officers, known and unknown
HCSO, for alleged narcotics violations that allegedly occurred
in November of 1992.

50. On or about August 17, 1993, the defendants Foster, Finley,
and Frazier obtained and Federal indictment against the plaintiff
for alleged narcotics violations, after having the defendants
Feeney, VanDorple, Todd, Oliwinski, known and unknown DEA Agents,
known and unknown TPD Officers, and known and unknown HCSO testify

in front of a Federal Grand Jury and using illegally intercepted telephone communications information, testimony, and/or evidence to obtain the indictment from the Grand Jury.

51. On or about August 17, 1993, the defendants Foster, Finley, and Frazier, working in conjunction with the defendants Feeney, VanDorple, Todd, Oliwinski, known and unknown DEA Agents, known and unknown TPD Officers, and known and unknown HCSO, presented information, testimony, and/or evidence at the plaintiff's detention hearing that was obtained by way of the illegally intercepted tele-phone communications from the plaintiff's telephone and/or tele-phones associated with the plaintiff.

52. On or about November 10, 1993, the defendants foster, Finley, and Frazier obtained a Federal superseding indictment against the plaintiff for alleged narcotics violations, after having the defendants Feeney, VanDorple, Todd, Oliwinski, known and unknown DEA Agents, known and unknown TPD Officers, known and un-known HCSO(s) testify in front of a Federal Grand Jury and using illegally intercepted telephone communications information, testimony, and/or evidence to obtain the indictment from the Grand Jury.

53. On a date presently unknown, but in November of 1993, the plaintiff forwarded the defendant Nimmons a letter informing him of the illegally intercepted telephone communications used by the defendants Foster, Finley, Frazier, Feeney, VanDorple, Todd, Oliwinski, known and unknown DEA Agents, known and unknown TPD Officers, and known and unknown HCSO, throughout the proceedings of the case and in the Court, and requested the defendant Nimmons to investigate the matter.

54. The defendant Nimmons failed to respond to the plaintiff's letter informing him of the defendants involvement with the illegally intercepted telephone communications used in the present case, and has failed to respond and/or investigate up to the present date.

55. On or about December 12, 1993, the plaintiff filed a motion requesting his then attorney Tracy Sheehan to withdraw from his case for her failure to file motions to suppress the illegally intercepted telephone communications, and the defendant Nimmons allowed the plaintiff to dismiss attorney Tracy Sheehan on a later date.

56. On or about March 22, 1994, the plaintiff's newly retained attorney Kenneth Siegel filed a motion requesting leave to file pretrial motions to suppress the illegally intercepted telephone communications, and the defendant Nimmons denied attorney Siegel leave to suppress the illegally intercepted telephone communications in an order dated March 25, 1994, when the plaintiff had a statutory and constitutional right to suppress the illegally intercepted telephone communication pursuant to Title 18 U.S.C. §§2515 and 2518(10)(a).

57. On or about April 11, 1994, through April 20, 1994, the defendant Fernandez prosecuted the plaintiff during trial proceedings of his criminal case, case number 93-249 CR-T-21, working in conjunction with the defendants Feeney, VanDorple, Todd, Oliwinski, known and unknown DEA Agents, known and unknown TPD Officers, known and unknown HCSO, and using the illegally intercepted telephone communications for prosecution purposes.

58. On or about April 11, 1994 through April 20, 1994, and at all times throughout the case, the defendant Fernandez concealed the fact that the telephone communications used at trial and testified to by the defendants Feeney, VanDorple, Todd, Oliwinski, known and unknown DEA Agents, known and unknown TPD Officers, and known and unknown HCSO were illegally obtained without authorization from the USAG.

59. On or about April 20, 1994, the plaintiff was convicted by a jury after the defendant Fernandez, working in conjunction with the defendants Feeney, VanDorple, Todd, Oliwinski, known and unknown DEA Agents, known and unknown TPD Officers, and known and unknown HCSO(s) used the illegally intercepted telephone communications, and information, testimony, and evidence derived from the illegally intercepted telephone communications for prosecuting him.

60. On September 16, 1994, the plaintiff was sentenced to a life sentence based on the illegally intercepted telephone communications, as well as the information, testimony, and evidence derived from the illegally intercepted telephone communications, by the defendant Nimmons.

61. On November 16, 1993 and December 17, 1993, the defendant DEA, forfeited the plaintiff's vehicles and personal property, without providing the plaintiff probable cause and notice for the seizure/forfeiture, based on the fabricated search warrants containing the illegally intercepted telephone communications from the plaintiff's telephone and telephones associated with the plaintiff.

62.  The plaintiff has attempted  to have the defendant Nimmons and the defendant Kovachivich provide him information and/or evidence in reference to the illegally intercepted telephone communications, and to allow him suppression and sealing of the illegally intercepted telephone communications in which they have had direct involvement in issuing and/or failing to suppress, from an unknown date up to the present date, of which is ongoing and continued.

63.  The defendants Nimmons and Kovachivich has failed to respond to the plaintiff's request for information and/or evidence in reference to the illegally intercepted telephone communications, they have failed to allow the plaintiff suppression and sealing of the illegally intercepted telephone communications, and they have continued to conceal the civil and criminal acts involved with the illegally intercepted telephone communications, from an unknown date up to the present date.

64.  The defendant Lazzara began residing over the plaintiff's criminal case on an unknown date in 2000, and the plaintiff has attempted to have the defendant Lazzara provide him information and/or evidence in reference to the illegally intercepted telephone communications, as well as suppression and sealing of the illegally intercepted telephone communications, from 2000 up to the present date.

65.  The defendant Lazzara has failed to respond to the plaintiff's request for information and/or evidence in reference to the illegally intercepted telephone communications, he has failed to allow the plaintiff suppression and sealing of the illegally intercepted telephone communications, and he has con-

tinued to conceal the civil and criminal actions involved with the illegally intercepted telephone communications, from an unknown date in 2000 up to the present date.

66. On an unknown date, the plaintiff has requested the defendant USAO and the defendant Perez, who are the employer and supervisor of the defendants Foster, Finley, Frazier, and Fernandez, to compel the defendants Foster, Finley, Frazier, and Fernandez to seek correction of the use of the illegally intercepted telephone communications, and to provide him victims rights pursuant to The Victims Rights Act of Title 42 U.S.C. §10606.

67. The defendants USAO and Perez has failed to respond to the plaintiff's request for correction of the defendants Foster, Finley, Frazier, Fernandez's use of the illegally intercepted telephone communications and the request for victims rights, pursuant to the Victims Rights Act of Title 42 U.S.C. §10606, and the defendants has continued to conceal the civil and criminal actions involved with the illegally intercepted telephone communications, as well as deprive the plaintiff of victims rights.

68. The plaintiff has filed complaints to numerous of agencies of the defendant DOJ, in an attempt to have the matters of the illegally intercepted telephone communications corrected and to obtain victims rights, specifically, the defendant OPR, and although the defendant OPR effected an investigation of the matters, it has continued to conceal the civil and criminal actions involved with the illegally intercepted telephone communications up to the present date.

69. The plaintiff has also filed complaints with the defendant
DOJ, for the defendants USAG, the Inspector General of the United
States, the Public Integrity Section of the Department of Justice,
the Administrative Office of the United States Courts, the Executive
Office of United States Attorneys, The Federal Bureau of Investi-
gations, and the Office of the United States President, all of which
function under the defendant United States and the defendant USAG,
in an attempt to have the illegally intercepted telephone communi-
cations violations corrected and resolved, and none of the complaints
have been responded to up to the present date, and/or are unresolved.

70. At all times relevant to the present case, the defendants
knew or should have known that they were committing criminal and
civil violations by intercepting, disclosing, and using the plain-
tiff's illegally intercepted telephone communications as set out
in Title 18 U.S.C. §2511 and 2520, and such is ongoing and continued
with a coverup of the same.

## RECENT GENERAL ALLEGATIONS

RECENT DISCOVERY OF A CONFIRMED COVER UP, CONSPIRACY TO COVER UP,
AND CONCEALMENT OF CONSTITUTIONAL, STATUTORY, LEGAL, AND OTHER
RIGHTS VIOLATIONS, CRIMES, WRONGDOING, ILLEGAL, AND UNLAWFUL
CONDUCT OF THE DEFENDANTS

71. The plaintiff, having been incarcerated for more than
twenty (20) years   in the Federal Bureau of Prisons (BOP),
after being convicted in the United States District Court, Middle
District of Florida, Tampa Division, under case number 93-249-cr-T-
21(B), and having sought to have his conviction and sentence vacated
as a result of the defendants violating his Constitutional, statu-

tory, legal, and other rights at all times while incarcerated, in-
cluding seeking redress for Constitutional violations, in both
criminal and civil proceedings, has recently discovered confirmed
evidence of a cover up, conspiracy to cover up, and concealment of
the defendants violations of the plaintiff's Constitutional, statu-
tory, legal, and other rights, crimes, wrongdoing, illegal, and
unlawful conduct.

72. The plaintiff filed a Freedom of Information Act (FOIA)
request with the Department of Justice Office of Enforcement Opera-
tions (OEO), on or about August 2, 2008, after more than a decade
of seeking information and documentation relevant to the defendants
Feeney, VanDorple, Todd, Oliwinski, known and unknown DEA Agents,
known and unknown TPD Officers, and known and unknown HCS Officers,
illegal and unlawful interception, disclosure, and use of his tele-
phone communications from telephone numbers (813) 933-2944, (813)
979-4849, and (813) 620-7412, from the defendants known and unknown
District Court Judges in the Middle District of Florida, Tampa
Division. See, Supporting Exhibit A.

73. On an unknown date in November of 2008, Rena Y. Kim, the
Chief of the OEO Freedom of Information Privacy Act Unit, sent the
plaintiff a response to his FOIA request to the OEO, informing the
plaintiff that the OEO did not find any criminal division records
pertaining to him in their search of the indexes for criminal di-
vision systems plaintiff designated, of which was specifically re-
lated to plaintiff request for information, documents, orders,
complaints, and authorization relevant to the defendant USAG Janet
Reno and/or any other DOJ official authorizing any Assistant United

States Attorney to seek or obtain judicial orders to intercept plaintiff's telephone communications from the three (3) related telephones, (813) 933-2944, (813) 979-4849, and (813) 620-7412, in 1993-1994. See, Supporting Exhibit B.

74. The plaintiff filed a FOIA request with the Hillsborough County Courthouse Clerk of the Court (HCCC), on or about September 21, 2008, after obtaining the OEO documentation informing him that the OEO did not have information, documents, orders, complaints and authorization relevant to the defendant USAG Janet Reno and/or other DOJ official authorizing any Assistant United States Attorney to seek or obtain judicial orders to intercept plaintiff's telephone communications from the three (3) related telephones, (813) 933-2944, (813) 979-4849, and (813) 620-7412, in order to obtain copies of original complaints, affidavits, search warrants, and judicial orders for search warrants issued by state Judge Don Castor on August 17, 1993 for plaintiff's residence at 12230 North 16th Street, #346, Tampa, Florida 33612; for 4101 North Holly Street, Tampa, Florida issued by Judge Robert Bonanno on August 17, 1993; and for 2608 East Yukon Street, Tampa, Florida issued by Judge Robert Bonanno on August 17, 1993, all of which contained illegally and unlawfully intercepted telephone communication information from plaintiff's telephones at (813) 933-2944, (813) 979-4849, and (813) 620-7412, allegedly obtained from the judges stated above by defendants Feeney, VanDorple, Todd, Oliwinski, known and unknown DEA Agents, known and unknown TPD Officers, and known and unknown HCS Officers for searching plaintiff's residences, seizing, and forfeiting plainitff's vehicles and property. See, Supporting Exhibit C.

75. On an unknown date and on or about October 30, 2008, the
HCCC, specific name unknown, sent plaintiff a response to his FOIA
request, informing the plaintiff that the HCCC was unable to locate
the case he referenced and for the plaintiff to provide additional
information, with the additional information being a question of,
"is this case a Federal charge", without providing the plaintiff
any of the documents requested in his FOIA to the HCCC. See, Support-
ing Exhibit D.

76.. The plaintiff responded to the HCCC's question presented
in its response to his FOIA request, "is this case a Federal charge"
on or about November 3, 2008, and informed the HCCC of the Federal
case number he was prosecuted under in Federal court, case number
93-cr-249-T-21(B), Middle District of Florida, Tampa, Division,
while also informing the HCCC of Tampa Police Officers and alleged
judicial officers from the state court, who issued the search warrants
for the residences stated above in paragraph 74 and the HCCC did
not respond to the plaintiff up to the present date. See, Support-
ing Exhibit E.

77. The plaintiff filed a FOIA request with the United States
Attorney's Office, Tampa Division, on or about September 21, 2008,
after obtaining the OEO documentation informing him that the OEO
did not have information, documents, orders, complaints and author-
ization relevant to the defendant USAG Janet Reno and/or other DOJ
officials authorizing      any Assistant United States Attorney to
seek or obtain judicial orders to intercept plaintiff's telephone
communications from the three (3) related telephones, (813) 933-
2944, (813) 979-4849, and (813) 620-7412, in attempt to obtain any

and all documents and/or copies of all complaints, affidavits, and
other documents filed with the United States Attorney General Janet
Reno in 1993-1994, and the OEO, seeking authorization to intercept
telephone communications of the plaintiff from the same telephone
numbers, (813) 933-2944, (813) 979-4849, and (813) 620-7412, that
were filed by prosecuting Assistant United States Attorneys (AUSA);
and the plaintiff requested a copy of the authorization from the
defendant Janet Reno, giving the AUSA(s) authority to obtain judicial
order(s) to intercept telephone communications from the same tele-
phone numbers, and the judicial orders from the judge issued to
the AUSA(s). See, Supporting Exhibit F.

78. On or about December of 2008, the defendant EOUSA,
responded to the plaintiff's FOIA request on the behalf of the
United States Attorney's Office, Tampa Division, and provided the
plaintiff with numerous documents held in the United States Attor-
ney's Office, Tampa Division and within the defendant EOUSA, in-
cluding documents fabricated to appear as though they were presented
to the OEO in order to obtain authorization from defendant USAG
Janet Reno, for authorization to intercept telephone communications
from the plaintiff's telephone numbers, (813) 933-2944, (813) 979-
4849, and (813) 620-7412, as well as orders from the defendant
Kovachevich bearing case number 8:93-mc-10-cr-T-17 (M.D. Fla. 1993),
of which put the plaintiff on notice that the documents and order
were in a secret docketed sealed case and that the defendants
Findley, James, Foster, and Frazier knowingly, intentionally,
arbitrarily, capriciously, maliciously, illegally, and unlawfully
fabricated the documents to appear as though they were presented

to the OEO in order to obtain authorization from defendant USAG
Janet Reno. See, Supporting Exhibit G.

79.  The plaintiff filed a FOIA request with the defendant
DEA, on or about October 29, 2008, after obtaining the OEO document-
ation informing him that the OEO did not have information, documents,
orders, complaints and authorization relevant to the defendant USAG
Janet Reno and/or other DOJ officials authorizing any Assistant
United States Attorney to seek or obtain judicial orders to inter-
cept plaintiff's telephone communications from the three (3) re-
lated telephones, (813) 933-2944, (813) 933-4849, (813) 620-7412,
in an attempt to obtain any and all documents and information rele-
vant to the defendant's Feeney, VanDorple, and known and unknown
DEA Agents involvement in the illegal and unlawful interception of
plaintiff's telephone conversations from the same telephones and/or
telephone numbers stated above, and the defendant DEA refused to
provide plaintiff documents and information relevant to the request,
asserting that such information was priviledged. See, Exhibit H.

80. On or about December 30, 2008, the Plaintiff filed a FOIA
request with the FTCD, after having filed a Tort Claim with the DOJ
on September 21, 2004, for the purpose of attempting to resolve
his remedies prior to civil action against the defendants stated
in the present civil action, and to obtain any and all documents
of its investigation of the plaintiff's claim that his telephone
communications were illegally and unlawfully intercepted by the
defendants from the telephone numbers stated above, and the defen-
dant FTCD has continued to inform the plaintiff that an investiga-
tion of the Tort Claim was still taking place. See, Exhibit I.

81. On or about December  of 2010, the plaintiff filed a civil
action pursuant to FOIA in the United States District Court, District
of Washington D.C., in an attempt to have the defendant's and others
known and unknown to provide him with any and all documents rele-
vant to the illegal and unlawful interception, disclosure, and use
of his telephone communications from  the telephones stated above
by the defendant, and included the District Court as a Defendant
in concert with presenting  the claims of fraud, fraudulent conceal-
ment, and a cover up had occurred and was ongoing.

82. Throughout the litigation of plaintiff's FOIA civil action
the plaintiff's obtained additional evidence of a Secretly Docketed
case existing in the Middle District of Florida, Tampa Division,
containing documents, evidence, and information related to the
defendant's illegal and unlawful interception, disclosure, and use
of his telephone communications, including the discovery of fraud,
fraudulent concealment, and criminal acts committed by the defen-
dants and perpetrated on the Court, with the defendant Kovachevich
residing over the case, of which is titled "In the Matter of the
Application of the United States of America for an Order Authorizing
the Interception of Electronic and Wire Communications", Case
Number 93-MC-10-CR-T-17EAP. See, Exhibit J.

83. The plaintiff then filed motions in the Middle District
of Florida, Tampa Division, informing the Defendant Kovachevich
of the documents, evidence, and information related to the defen-
dants illegal and unlawful interception, disclosure, and use of his
telephone commmunications including the fraud, fraudulent conceal-
ment and criminal acts committed by the defendants and perpetrated

40

on the Court, and the defendant Kovachevich refused to unseal the
case, denying the plaintiff's motions, alleging that the defendants
had acted legally as the sealed case reflected. See, Exhibit K.

84.   The plaintiff then filed a motion in the Middle District
of Florida, Tampa Division informing the defendant Kovachevich that
she was in error in concluding that there existed authorization
from the USAG giving the defendants authority to seek and obtain
judicial orders to intercept, disclose, and use his telephone com-
munications; provided the defendant Kovachevich a copy of the docu-
ment that she alleged was authorized from the USAG to intercept,
disclose, and use his telephone communications; put the defendant
Kovachevich on notice that she was a witness to the defendant's
illegal, unlawful, criminal, and fraudulent acts; requested the
defendant Kovachevich to recuse herself; and requested the defendant
Kovachevich to correct the clear error that occurred, the defendant
Kovachevich denied the plaintiff's request and imposed an injunction
on him from further filing documents with the Court without consent.
See, Exhibit L.

85.   The plaintiff then filed a motion to the Eleventh Circuit
Court of Appeals, requesting the Court's supervisory powers for
correction of the defendant Kovachevich's error in failing to un-
seal the Secretly Docketed case containing documents, evidence, and
information of the defendants illegal, unlawful, criminal, and
fraudulent acts relevant to the interception, disclosure, and use
of his telephone communications, in concert with a request for
investigation of a conspiracy among the defendants to commit the
acts stated above, along with a request for additional relief, and

the Eleventh Circuit Judges denied the plaintiff's request, as well
as a request for reconsideration of the same. See, Exhibit M.

86.   The defendant Kovachevich being informed of the defendants
illegal and unlawful interception, disclosure, and use of the
plaintiff's telephone communications, including the fraud, fraudulent
concealment, and criminal acts committed by the defendants and per-
petrated on the Court, has made it routine, habit, and practice to
conceal and cover up the same, in collusion with the defendants,
of which is ongoing and continued, with an attempt to dupe plaintiff.

87.   The plaintiff has in the past and only recently, filed
motions in the Middle District of Florida, Tampa division, inform-
ing the now residing Judge, defendant Lazzara, in Case Number 93-
249-CR-T-21(B), of the defendants illegal and unlawful interception,
disclosure, and use of his telephone communications, including the
fraud, fraudulent concealment, and criminal acts committed, and the
defendant Lazzara has made it routine, habit, and practice to con-
ceal and cover-up the same, in collusion with the defendants, of
which is ongoing and continued.

88.   The plaintiff has in the past, and from the onset of the
prosecution of his criminal case in the Middle District of Florida,
Tampa Division, informed the defendant Nimmons that the defendants
illegally and unlawfully intercepted, disclosed, and used his tele-
phone communications even during the litigation of his habeas corpus
motion, including the fraud, fraudulent concealment, and criminal
acts committed by the defendants and perpetrated on the Court, and
the defendant Nimmons has made it routine, habit, and practice to

conceal and cover-up the same, in collusion with the defendants, of which ceased upon his death, and/or an unknown date.

89.   The defendants, including the defendant Reno, Ashcroft, Gonzalez, Mukasey, Holder, Feeney, VanDorple, known and unknown DEA Agents, known and unknown AUSA(s), Findley, James, Foster, Frazier, Fernandez, Todd, Oliwinski, known and unknown TPD Officers, known and unknown HCS Officers, Kovachevich, Nimmons, and Lazzara, knowingly, intentionally, and maliciously,  conspired and have an ongoing and continued conspiracy with each other and others unknown to obstruct justice by corruptly concealing the illegal and unlawful (wrongful), as well as the truth of the matters as set out in the present civil complaint.

90.   The defendants, including the defendant Reno, Ashcroft, Gonzalez, Mukasey, Holder, Feeney, VanDorple, known and unknown DEA Agents, known and unknown AUSA(s), Findley, James, Foster, Frazier, Fernandez, Todd, Oliwinski, known and unknown TPD Officers, known and unknown HCS Officers, Kovachevich, Nimmons, and Lazzara, knowingly, intentionally, and maliciously, conspired and have an ongoing and continued conspiracy with each other and others known and unknown to deprive the plaintiff of access to the Court by covering up and concealing the Constitutional, statutory, legal, and other rights violation committed against the plaintiff, and by controling and influencing the administration  of justice throughout the Federal Court System in past and present proceedings; all related to the illegal and unlawful interception; disclosure, and use of the plaintiff's telephone communications, criminal violations, as well as the truth of the matters as set out in the present civil

complaint (impeding, hindering, defeating, in any manner, the due course of justice).

91.   The plaintiff, after having obtained the documents and evidence by way of his FOIA request, specifically the documents from the HCCC, of which informed plaintiff that there did not exist complaints, affidavits, search warrants, not judicially issued orders for search warrants issued by state judges for the residences stated in paragraph 71, filed a civil action in the United States District Court, District of Columbia, pursuant to the Administrative Procedure Act (APA), presenting the claim the the defendant DEA and its agents seized and administratively forfeited his vehicles and property erroneously, unlawfully, and by way of fraud, fraudulent concealment, as well as deception under Case Number 09-264(RBW) Anthony Lewis v. Drug Enforcment Administration.

92.   The plaintiff set out in the APA civil action that, the defendant DEA and its Agents, specifically the defendant Feeney, VanDorple, and known and unknown DEA Agents, violated his Fourth and Fifth Amendment Constitutional rights by seizing his vehicles and property without probable cause and administatively forfeiting his vehicles and property without notice and opportunity to contest the seizure and forfeiture, all as a result of fraud, fraudulent concealment, and evading the Constitution and statutory requirement of Title 19 U.S.C. §§1602 to 1604, while continuing to cover up and conceal the same, of which is ongoing and continued.

93.   The District Court Judge residing over the APA civil action denied the plaintiff's civil action as a result of the

44

defendant. DEA and its employees and/or representatives presentations to the Court that plaintiff had previously litigated the claim of his vehicles and property being illegally, unlawfully, and uncon-stitutionally seized and forfeited, without the defendant DEA and its employees and/or representatives making a contest to the fraud, fraudulent concealment, and evading of the Constitution and statutory requirement of Title 19 U.S.C. §§1602 to 1604, including the cover up and concealment of the same, and the District Court Judge failed to address and adjudicate on the merits the same.

94. The defendant DEA, its employees and/or representatives, the defendants known and unknown DEA Agents, and others known and unknown knowingly, intentionally, and maliciously conspired and have an ongoing and continued conspiracy with each other and others unknown to obstruct justice by corruptly concealing the illegal unlawful, unconstitutional, and wrongful seizure and administrative forfeiture of the plaintiff's vehicles and property, as well as the truth of the matters of the fraud, fraudulent concealment, and cover up of the same as set out in the present complaint.

95. The defendant DEA, its employees and/or representatives, the defendants known and unknown DEA Agents, and others known and unknown knowingly, intentionally, and maliciously conspired and have an ongoing and continued conspiracy with each other and others known and unknown to deprive the plaintiff of access to the Court by covering up and concealing the Constitutional, statutory, legal, and other rights violations committed against the plaintiff, by also committing fraud and fraudulent concealment, and by controlling and influencing the administration of justice throughout the Federal

Court System in past and present proceedings, all related to the
illegal, unlawful, unconstitutional, and wrongful seizure and
administrative forfeiture of the plaintiff's vehicles and property,
as well as the truth of the matters of the fraud, fraudulent con-
cealment, presented in the present civil complaint, impeding,
hindering, defeating in any manner the due course of justice.

96. The defendant DEA, its employees and/or representatives,
the defendants known and unknown DEA agents, others known and un-
known knowingly, intentionally, and maliciously conspired and
have an ongoing and continued conspiracy with each other, and
others known and unknown to present to plaintiff that they possessed
judicially issued search warrants for the seizure and forfeiture
of the plaintiff's property, where they knew the DEA administra-
tive files did not have any search warrants for the seizure and
forfeiture, and does not presently have such search warrants, yet
continuously, and presently is covering up and concealing the mat-
ters of fraud, and fraudulent concealment as presented in the
present civil complaint. See, Exhibit O.

97. The defendants DOJ, EOUSA, PPR, FTCD, TPD, and HCSD, have
made it routine, habit, and practice, as well as unwritten policy
and custom to allow its employees to violate the plaintiff's and
others Constitutional, statutory, legal, and other rights; to not
enforce established written policy and custom preventing the vio-
lations of plaintiff and others Constitutional, statutory, legal,
and other rights by its employees; to conceal and cover up criminal
violations, wrongs, illegal and unlawful acts, with the violation
of Constitutional, statutory, legal, and other rights committed by

46

its employees; and to remain silent about all of the above, as set
out in the present civil complaint.

98.  The defendants DOJ, DEA, EOUSA, OPR, FTCD, TPD, and ACSD
failed to take corrective steps and/or measures to remedy the routines,
habits, practices, and customs related to its employees violations
of the plaintiff's Constitutional, statutory, legal, and other rights
and the wrongful, illegal, unlawful, and criminal acts committed by
its employees at anytime in the past and up to the present day,
of which is continued and ongoing.

99.  The plaintiff has only recently received information of
the defendant's ongoing and continued violation of Constitutional,
statutory, legal, and other rights violations related to illegally, and
unlawfully intercepting, disclosing, and using telephone communi-
cations of which is ongoing and continued since 1987 up to the present
date, specifically in drug cases. See, Exhibit P.

100.  The plaintiff has provided the Court supporting evidence
in concert with the filing of the present civil complaint to cure
any later assertions that he has failed to state a claim, and to
clarify the validity of the truths set out in the civil complaint,
and has a large volume of additional supporting evidence that will
be presented throughout the litigation.


101.  At all times relevant to the present facts, the defen-
dants knew  or should have known that they had and presently have
a professional, ethical, fudiciary, and sworn duty to reveal the
truth of the matters relevant to illegally intercepted telephone

communications, and to cease the illegal and unlawful civil and criminal violations once recognized or put on notice by the plaintiff about illegally and unlawfully intercepting, disclosing, and using telephone communications.

102. At all times relevant to the present facts, the defendants targeted and/or selected African-Americans and minorities, and deliberately, knowingly, intentionally, and maliciously violated plaintiff's Constitutional, statutory, legal, and other rights, as well as when committing the wrongful, illegal, unlawful, and criminal acts set out in the present civil complaint.

103. As a result of the defendants actions the plaintiff has suffered and continues to suffer illegal and unlawful imprisonment, subjected to egregrious and flagrant violations of his Constitutional rights, legal rights, and other rights, deprivation of his Constitutional rights, legal rights, and other rights, privileges, and immunities secured and protected by the Constitution of the United States, the laws of the United States and the laws of Florida.

104. As a result of the defendants actions the plaintiff has been deprived of the appropriate relief to insure minimum corrective measures necessary to insure full enjoyment of his Constitutional rights, legal rights, other rights, privileges, and immunities, as well as his civil liberties, secured and protected by the Constitution, the laws of the United States and the laws of Florida.

105. As a result of the defendants' actions the plaintiff has suffered mental anquish, discomfort, vexation, emotional distress, intentionally infliction of emotional distress, loss of finances, loss and destruction of property, loss of property interest, and the deprivation, denial, and violation of Constitutional rights, as well as the laws of the United States, other injuries and damages.

## CAUSE OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FIRST AND FIFTH  AMENDMENT
### RIGHTS TO ACCESS TO THE COURT

106. The defendants have all violated and are continuing to violate the plaintiff's First and Fifth Amendment rights to accessing the court by covering up and concealing in the past and presently covering up and concealing the illegal and unlawful interception of the plaintiff's telephone communications, and also covering up and concealing their criminal, wrongful, illegal, and unlawful actions, in concert with covering up and concealing the Constitutional rights violations, statutory rights violations, legal rights violations, and other rights violations, all of which deprived the plaintiff of loss of past and present opportunities to seek and obtain orders of relief from his continued incarceration in federal court; full and fair opportunity to litigate criminal and civil actions in federal court; negated plaintiff's ability to seek and obtain impartial redress in federal court relevant to criminal and civil proceedings; caused the loss and/or inadequate resolution of meritorious criminal and civil cases; and

by controlling and influencing the administration of justice throughout the federal court system in the past, present, and ongoing. This includes the denial of adequate, effective and meaningful access to the courts.

### SECOND CAUSE OF ACTION

CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS FIRST AND FIFTH AMENDMENT RIGHT TO ACCESS TO THE COURT

107. The defendants have all conspired to violate and are continuing to violate the plaintiff's First and Fifth Amendment rights to access to the court by covering up and concealing in the past and presently covering up and concealing the illegal and unlawful interception of the plaintiff's telephone communications, and also covering up and concealing their criminal, wrongful, illegal, and unlawful actions, in concert with covering up and concealing the Constitutional rights violations, statutory rights violations, legal rights violations, and other rights violations, all of which deprived the plaintiff of loss of past and present opportunities to seek and obtain orders of relief from his con-tinued incarceration in federal court; full and fair opportunity to litigate criminal and civil actions in federal court; negated plaintiff's ability to seek and obtain impartial redress in federal court relevant to criminal and civil proceedings; caused the loss and/or inadequate resolution of meritorious criminal and civil cases; and by controlling and influencing the administration of justice throughout the federal court system in the past, present, and ongoing. This includes the denial of adequate, effective and

meaningful access to the courts.


## THIRD CAUSE OF ACTION
### OBSTRUCTION OF JUSTICE

108. The defendants have all obstructed justice and are
continuing to obstruct justice by covering up and concealing in
the past, and presently covering up and concealing the illegal and
unlawful interception of the plaintiff's telephone communications,
and also covering up and concealing their criminal, wrongful,
illegal, and unlawful actions, in concert with covering up and
concealing the Constitutional rights violations, statutory rights
violations, legal rights violations, and other rights violations,
all of which deprived the plaintiff of loss of past and present
opportunities to seek and obtain orders of relief from his con-
tinued incarceration in federal court; full and fair opportunity
to litigate criminal and civil actions in federal court; negated
plaintiff's ability to seek and obtain impartial redress in federal
court relevant to  criminal and civil proceedings; caused the loss
and/or inadequate resolution of meritorious criminal and civil
cases; and by controlling and influencing the administration of
justice throughout the federal court system in the past, present,
and ongoing. This includes the denial of adequate, effective and
meaningful access to the courts.


## FOURTH CAUSE  OF ACTION
### CONSPIRACY TO OBSTRUCT JUSTICE

109. The defendants have all conspired to obstruct justice
and are continuing to conspire to obstruct justice by covering up
and concealing in the past, and presently covering up and conceal-
ing the illegal and unlawful interception of the plaintiff's tele-
phone communications, and also covering up and concealing their
criminal, wrongful, illegal, and unlawful actions, in concert with
covering up and concealing the Constitutional rights violations,
statutory rights violations, legal rights violations, and other
rights violations, all of which deprived the plaintiff of loss of
past and present opportunities to seek and obtain orders of relief
from his continued incarceration in federal court; full and fair
opportunity to litigate criminal and civil actions in federal court;
negated plaintiff's ability to seek and obtain impartial redress
in federal court relevant to criminal and civil proceedings; caused
the loss and/or inadequate resolution of meritorious criminal and
civil cases; and by controlling and influencing the administration
of justice throughout the federal court system in the past, present,
and ongoing. This includes the denial of adequate, effective and
meaningful access to the courts.

## FIFTH CAUSE OF ACTION
### VIOLATION OF THE MONELL DOCTRINE

110. The defendants USA, DOJ, EOUSA, OPR, FTCD, TPD, and
HCSO, are being sued for negligent supervision of its employees,
the individual defendants set out in the present civil complaint,
and for its illegal, unlawful and wrongful customs, practices,

habits and conduct in allowing its employees to tresspass and commit
the illegal, unlawful, as well as inadequate investigation of
employees, and inadequate training of employees unconstitutional
actions in intercepting, disclosing, and using illegally intercepted
telephone communications of plaintiff's and/or telephones associate-
ed with the plaintiff. The following stated above also includes
the defendants employees committing crimes, Constitutional rights
violations, statutory right violations, legal rights violations,
other rights violations, fraud, fraudulent concealment, covering
up, and concealing the same as stated in the civil complaint.

### SIXTH CAUSE OF ACTION
### VIOLATION OF THE FOURTH AMENDMENT

111. The defendants Feeney, VanDorple, known and unknown
DEA agents, known and unknown AUSA(s), Findley, James, Foster,
Frazier, Fernandez, Perez, Todd, Oliwinski, known and unknown TPD
officers, known and unknown HCSO, Kovachevich, Nimmons, and Lazzara
have all violated the plaintiff's Fourth Amendment right to be
free from illegal searches and seizures and expectation to privacy
by failing to obtain wiretap authorization and judicial orders
without compliance to the statutory requirements of Title 18 U.S.C.
§§2510-2522 (The Federal Wiretap Act); issuing judicial wiretap
orders without compliance to §§2510-2522; intecepting telephone
communications without compliance to §§2510-2522; disclosing tele-
phone communications without compliance to §§2510-2522; using tele-
phone communications without compliance to §§2510-2522; seizing evidence and
property without judicially issued search warrants; forfeiting

property without judicially issued search warrants; failing to
suppress and seal illegally intercepted telephone communications;
committing fraud and fraudulent concealment to commit all the
violations stated above and covering up and concealing all of
the above.

## SEVENTH CAUSE OF ACTION
### VIOLATION OF THE FIFTH AMENDMENT

112. The defendants Feeney, VanDorple, known and unknown DEA
agents, known and unknown AUSA(s), Findley, James, Foster, Frazier,
Fernandez, Perez, Todd, Oliwinski, known and unknown TPD officers,
known and unknown HCSO, Kovachevich, Nimmons, and Lazzara have all
violated the plaintiff's Fifth  Amendment Due Process right to
notice and opportunity to contest illegally intercepted telephone
communications as required pursuant to §§2510-2522; failing to
comply to the requirements of §§2510-2522 prior to obtaining author-
ization to intercept telephone communications; issuing judicial
wiretap orders without compliance to §§2510-2522; intercepting
telephone communications without compliance to 2510-2522; disclos-
ing telephone communications without compliance to 2510-2522; using
telephone communications without compliance to 2510-2522; seizing
evidence and property without notice and opportunity to be heard
prior to the seizure and without judicially issued warrants; for-
feiting property without notice and opportunity to contest the
forfeiture; failing to suppress and seal illegally intercepted
telephone communications; failing to suppress illegally seized
evidence; committing fraud and fraudulent concealment to commit

all the violations stated above and covering up and concealing, all
of the above.


## EIGHTH CAUSE OF ACTION
### VIOLATION OF THE EIGHTH AMENDMENT

113.   The defendants have all violated the plaintiff's Eighth
Amendment right to be free of cruel and unusual punishment, subject-
ing him to a life sentence without parole as a result of violating
plaintiff's Fifth Amendment Due Process right to notice and oppor-
tunity to contest illegally intercepted telephone communications
as required pursuant to §§2510-2522; failing to comply to the
requirements of §§2510-2522 prior to obtaining authorization to
intercept telephone communications; issuing judicial wiretap orders
without compliance to §§2510-2522; intercepting telephone commun-
ications without compliance to §§2510-2522; disclosing telephone
communications without compliance to §§2510-2522; using telephone
communications without compliance to §§2510-2522; seizing evidence
and property without notice and opportunity to be heard prior to
the seizure and without judicially issued warrants; forfeiting
property without notice and opportunity to contest the forfeiture;
failing to suppress and seal illegally intercepted telephone
communications; failing to suppress illegally seized evidence;
committing fraud and fraudulent concealment to commit all the
violations stated above and covering up and concealing, all of the
above.

## NINTH CAUSE OF ACTION

## VIOLATION OF THE FOURTEENTH AMENDMENT

114. The defendants have all violated the plaintiff's
Fourteenth Amendment right to equal protection of the laws sub-
jecting him to a life sentence without parole as a result of
violating plaintiff's Fifth Amendment Due Process right to notice
and opportunity to contest illegally intercepted telephone commun-
ications, as required  pursuant to §§2510-2522; failing to comply
to the requirements of §§2510-2522 prior to obtaining authoriza-
tion to intercept telephone communications; issuing judicial wire-
tap orders without compliance to §§2510-2522; intercepting tele-
phone communications without compliance to §§2510-2522; disclosing
telephone communications without compliance to §§2510-2522; using
telephone communications without compliance to §§2510-2522; seiz-
ing evidence and property without notice and opportunity to be
heard prior to the seizure and without judicially issued warrants;
forfeiting property without notice and opportunity to contest the
forfeiture; failing to suppress and seal illegally intercepted
telephone communications; failing to suppress illegally seized
evidence; committing fraud and fraudulent concealment to commit
all the violations stated above and covering up and concealing,
all of the above.

## TENTH CAUSE OF ACTION

## FEDERAL TORTS CLAIM VIOLATION

115. The defendants USA, DOJ, DEA, EOUSA, OPR, and FTCD are
liable pursuant to the Federal Torts Claims Act, because of its

employees knowing, intentional, deliberate, reckless, wrongful,
and illegal acts; for its employees following illegal and unlawful
routine, customs, practices, habits, and conduct in seeking author-
ization for wiretaps, issuing wiretap orders, intercepted tele-
phone communications, disclosing telephone communications, using
telephone communications, committing fraud and fraudulent con-
cealment to commit violations of §§2510-2522, and other crimes
and violations, and for covering up and concealing all of the above,
as wells as those set out in the civil complaint.

## ELEVENTH CAUSE OF ACTION

### VIOLATION OF TITLE 18 U.S.C. § 2511

116. The defendants Feeney, VanDorple, known and unknown
DEA agents, known and unknown AUSA(s), Findley, James, Foster,
Frazier, Fernandez, Perez, Todd, Oliwinski, known and unknown
TPD officers, known and unknown HCSO, Kovachevich, Nimmons, and
Lazzara have all committed criminal violations under 18 U.S.C. §
2511, and are being sued for such, for illegally and unlawfully
seeking wiretap orders, issuing wiretap orders, intercepting
telephone communications, disclosing telephone communications,
using telephone communications, all related to the plaintiff
and/or associated with the plaintiff, and in violation of §§
2510-2522.

## TWELTH CAUSE OF ACTION

### VIOLATION OF TITLE 18 U.S.C. § 2520

117. The defendants Feeney, VanDorple, known and unknown
DEA agents, known and unknown AUSA(s), Findley, James, Foster,
Frazier, Fernandez, Perez, Todd, Oliwinski, known and unknown

TPD officers, known and unknown HCSO, Kovachevich, Nimmons, and
Lazzara have all committed civil violations under 18 U.S.C. §
2520, are being suef for such, for illegally and unlawfully see-
king wiretap orders, issuing wiretap orders, intercepting telep-
hone communications, disclosing telephone communications, using
telephone communications, all related to the plaintiff and/or
associated with the plaintiff, and in violation of §§ 2510-2522.

### FOURTEENTH CAUSE OF ACTION

### VIOLATION OF TITLE 42 U.S.C. § 1983

118. The defendants Todd, Oliwinski, known and unknown
TPD officers, and known and unknown HCSO have all committed
violations of Title 42 U.S.C. § 1983 by acting under color of
state law pursuant to written and unwritten policy, customs, and
practices of the defendant TPD and the defendant HCSD, under
their authority as TPD officers and HCSD officers, while also
working in conjunction with the defendants DEA, DOJ, OPR, FTCD,
AND EOUSA, and their employees, violated the federal wiretaping
laws, the state of Florida wiretaping laws, the United States
Constitution, and the state of Florida Constitution, by illegally
and unlawfully intercepting, disclosing, and using plaintiff's
telephone communications in violation of §§ 2510-2522.

### FIFTEENTH CAUE OF ACTION

### VIOLATION OF TITLE 42 U.S.C. §§ 1985 AND 1988

119. The defendants Feeney, VanDorple, known and unknown
DEA agents, known and unknown AUSA(s), Findley, James, Foster,
Frazier, Fernandez, Perez, Todd, Oliwinski, known and unknown
TPD officers, known and unknown HCSO, Kovachevich, Nimmons, and

Lazzara have all committed violations of Title 42 U.S.C. §§
1985 and 1988 by conspiring to violate the federal wiretaping
laws, the state of Florida wiretaping laws, the United States
Constitution, and the state of Florida Constitution, by illegally
and unlawfully intercepting, disclosing, and using plaintiff's
telephone communications in violation of §§ 2510-2522.

As a direct, proximate, and foreseeable result of the
conduct and actions of these defendants, where the defendants
have been deliberately and recklessly indifferent to the rights,
welfare, privileges, liberties, and immunities of the plaintiff,
as shown by, but not limited to the examples set forth in the
following complaint, the plaintiff has suffered extreme pain,
severe mental anguish, permanent mental and physical injury,
denial of foresaid rights under the Constitution, and other
injuries and damages that are permanent or continuing in nature.

Wherefore, the plaintiff demands judgment for liquidated
damages against all named defendants herein, including perjudg-
ment interest on all economic losses, compensatory damages, pun-
itive damages, cost of this civil action, attorneys fees, and
for such other further relief as the court deems just and proper.

Wherefore, the plaintiff demands judgment as follows:

A. Issue emergency preliminary injunctive relief as
requested by the plaintiff in his request for injustive relief
presented to the court.

B. Grant liquidated damages in amounts that will be
determined at trial.

C. Grant compensatory damages in amounts that will be determined at trial.

D. Grant punitive damages in amounts that will be determined at trial.

E.   Grant cost of suit herin, including plaintiff's reasonable attorney fees.

F. Grant such other relief as the court deems just and proper.

I declare under penalty of perjury that the foregoing and the contents of the same are true and correct pursuant to Title 28 U.S.C. § 1746.

_____          _____
Date                                Anthony Lewis, Pro-se

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY LEWIS,
          PLAINTIFF,

V.                              CASE NO.

UNITED STATES OF AMERICA, et al.,

EXHIBITS IN SUPPORT OF CIVIL COMPLAINT
AND REQUEST FOR EMERGENCY INJUNCTIVE RELIEF
AND DECLATORY JUDGMENT
_____

Anthony Lewis, Pro-se
Reg. No. 17215-018
FCC Coleman-Medium
P.O. Box 1032
Coleman, Florida 33521-1032



FOIA REQUEST TO DEPARTMENT OF JUSTICE
OFFICE OF ENFORCEMENT OPERATIONS

EXHIBIT A

2008000544

## IDENTIFICATION OF REQUESTOR

(Prints Noqavilable because of Institutional Lock-Down)

NAME: Anthony Lewis
ALIAS: "Mace"
DATE OF BIRTH: November 27, 1965
REG. NO.: 17215-018
SOC. SEC. NO.: 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
ADDRESS:
FCC Coleman-USP-1
P.O. Box 1033
Coleman, Florida 33521-1033

| Right Thumb | Right Index |
|---|---|
| | |
| | |
| | |
| RT | RI |

TO: Department of Justice
Attn: Office of Enforcement Operations
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

RECEIVED
AUG 15 2008

RE:   FREEDOM OF INFORMATION ACT (U.S.C. 552), PRIVACY ACT (5 U.S.C. 552 a (d) (1))
      Request:  EXEMPTIONS (5 U.S.C. 552 (c) (1)), GENERAL (U.S.C. 552 a (j) (2)) OR
      SPECIFIC (U.S.C. 552 a (k) (2)) NOT APPLICABLE TO THIS REQUEST.

Dear Sir/Ms.:

This letter will serve as my request pursuant to the provisions of the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a (d) (1)), and the applicable State Statutes governing Freedom of Information Requests if state agency request, for full disclosure and release of all records and / or data contained in the files of your agency, and specifically under my name and / or an identifier assigned to my name.  The records sought but not limited to, is the compiled file containing (1) arrest records, (2) investigation and / or investigatory reports, (3) reports or evidentiary and / or scientific information findings, (4) wants, warrants, and / or detainers, (5) final and closing investigation reports; and (6) any and / or all information, data, or reports not otherwise exempt by statute (5 U.S.C. 552 (c) (1)), (5 U.S.C. 552 a (j) (2), (k) (2), or law, Tarlton v. Saxbe, 507 F.2d. 1116. 165 U.S. App. D.C. 293 (1974), Menard v Saxbe, 498 F.2d. 1017, 162 U.S. App. D.C. 284 (1974), Sullivan v. Murphy, 478 F.2d. 938, 156 U.S. App. D.C. 28 (1973).  Your Agency is advised that the investigation reports in toto are no longer accorded exempt status unless under the specific exemption noted, and only with reference to specific citation of authority, Paton v. La Prade, 524 F.2d. 862, 868-69, (CA3 1975).

SPECIFIC REQUESTS:

(A) Any and all Documents, orders, Complaints, Affidavits, Authorization and/or other Information Relevant to Attorney General Janet Reno, or any other DOJ official, Authorizing any Assistant U.S. Attorney to seek or obtain Judicial orders to Intercept Telephone communications of Anthony Lewis or any other, from Telephone numbers (813)-933-2944 (813)-977-4849 and (813)-620-7412, In 1993-1994.

(B) Confirmation that no Documents, orders, Complaints, Affidavits, or other Information Exist on file for the same Telephone numbers stated above, If such cannot be located or on file.

(C) The numbers of Authorizations to Intercept Telephone communications issued by Janet Reno In 1993 and 1994, and a Confirmation that the same Telephone numbers stated above are not one of them.

It is further requested that your Agency in response to the material requested specifically inform me if and to whom the file and / or any material therein contained has been released to any identifiable individual or agency, their name, title, purpose and need for such information, the date of such release, the specific material that was released, the person within your Agency who released such information, and the specific reference to authority, statute or regulation, governing such release (5 U.S.C. 552 a (d) (1)), Paton v. La Parde, 524 F.2d. 862 (CA3 1975), Tarlton v. Saxbe, 507 F.2d. 1116, 165 U.S. App. D.C. 293 (1974).

It is further requested that your Agency provide me with a copy of specific regulations of your Department as provided by statute (5 U.S.C. 552), so that compliance with such regulations is adhered to except as otherwise provided by law (5 U.S.C. 701 et. seq.).

If and for any reason you choose not to send me any of the documents or papers requested, then please provide me with a "Vaughn Index" as set forth in Vaughn v. Rosen, 484 F.2d. 820 (D.C. Cir. 1973).

If and for any reason it is determined that portions of the material and records sought is exempt by statute (5 U.S.C. 552 (c) (1), 552 a (j) (2), (k) (2) or by regulation (Menard v. Mitchell, 430 F.2d. 486, 139 U.S. App. D.C. 113 (1970), Nemetz v. Department of Treasury, 446 F. Supp.102, (N.D. Ill. 1976)), I request specific citation to authority for such deletion, Chastain v. Kelly, 510 F. 2d. 1232 (D.C. Cir. 1975). I further agree to pay any reasonable costs, or file IN FORMA PAUPERIS if I am indigent, provided by statute or regulation of your agency, for search and copying of the material requested.

Pursuant to Title 5 U.S.C. 552 (d) (A), it is noted that your Agency has ten (10) working days following receipt of this request to provide the information and material sought. Should any delay occur, it is requested that your Agency inform me of this delay as provided by Agency regulations and the date as to when your Agency will be able to act upon request.

Yours truly,

Dated: August 2, 2008

DEPARTMENT OF JUSTICE OFFICE OF ENFORCEMENT OPERATIONS
RESPONSE   TO  FOIA REQUEST

EXHIBIT B



U.S. Department of Justice

Criminal Division

Office of Enforcement Operations                    Washington, D.C. 20530

CRM-200800703P
                                                    NOV 2 4 2008

Mr. Anthony Lewis
Reg. No. 17215-018
FCC. Coleman- USP- 1
P.O. Box 1033
Coleman, FL 33521-1033

Dear Mr. Lewis:

        This is in response to your request of September 14, 2008,
pursuant to the Privacy Act, for access to records concerning
you.

        We did not find any Criminal Division records pertaining to
you in our search of the indexes for the criminal Division
systems you designated.

        If you consider this response to be a denial of your
request, you have a right to an administrative appeal of this
determination.  Your appeal should be addressed to:  Office of
Information and Privacy, United States Department of Justice,
1425 New York Ave., NW, Suite 11050, Washington, DC 20530-0001.
Both the envelope and the letter should be clearly marked with
the legend "FOIA Appeal."  Department regulations provide that
such appeals must be received by the Office of Information and
Privacy within sixty days of the date of this letter.  28 C.F.R.
16.45.  If you exercise this right and your appeal is denied, you
also have the right to seek judicial review of this action in the
federal judicial district (1) in which you reside, (2) in which
you have your principal place of business, (3) in which the
records denied are located, or (4) for the District of Columbia.
If you elect to file an appeal, please include, in your letter to
the Office of Information and Privacy, the Criminal Division file
number that appears above your name in this letter.

                                    Sincerely,

                                    Rena Y. Kim by bey

                                    Rena Y. Kim, Chief
                                    Freedom of Information Privacy Act Unit

FOIA REQUEST TO THE HILLSBOROUGH COUNTY COURTHOUSE

EXHIBIT C

PRIVACY ACT IDENTIFICATION AND REQUEST FORM

Hillsborough County Courthouse
Clerk of the Court
Tampa, Florida 33602

FILE NO. _____

DATE: _____

PRIVACY ACT NOTICE· The following information is requested pursuant to Department of Justice Regulations (28 C.F.R  16.41) in order to verify your identity and to assist in locating your records.  False information may subject the requester to criminal penalties under 18 U S.C. Section 1001 and/or 5 U S.C  Section 552a(i)(3).

I request access to records or information pertaining to me in the system(s) of records checked on the attached list.

1.  FULL NAME (Please print):

| Lewis | Anthony | L |
|---|---|---|
| (LAST) | (FIRST) | (MIDDLE, IN FULL) |

2.  Date of Birth: 11/27/65    Place of Birth: Tampa, Florida
                   mo./day/year

3.  Present address: P.O. Box 1033, Coleman, Florida 33521-1033

4.  Prior addresses: 2608 E. Yukon, Tampa, Florida 33604, 4101 North Holly Street,

Tampa, Florida, 12230 N. 16th Street, #346,  Tampa, Florida 33612

.. . The approximate year or years during which you believe that a record about you may have been created: 1993

.   The judicial district(s) or state(s) where the events occurred about which you believe a record may have been created:
Thirteenth Judicial Circuit, Hillsborough County Courthouse, Tampa, Florida

If married or divorced or separated, the full name of your spouse (if wife, please include maiden name): _____ N/A _____

If the record you believe to exist about you includes arrest, trial or conviction records:

(a) The date of arrest, indictment or complaint against you:
August 17, 1993 (Arrest) No state indictment nor prosecution

(b) Approximate date of conviction: Federal Conviction on September 16, 1994
                                     U.S. District Court, Tampa Division

(c) Federal court and district in which trial or proceeding took place:
U.S. District Court, Middle District of Florida, Tampa Division

d) Federal offense(s) involved: Conspiracy to possess and distribute

e) Names of codefendant(s) (if any): Terrance Mally, Carlos Garces

In accordance with Title 28, United States Code, Section 1746, I
te under penalty of perjury that the foregoing is true and correct.

## IDENTIFICATION OF REQUESTOR

NAME: Anthony Lewis
ALIAS: Mace
DATE OF BIRTH: 11/27/65
REG NO.: 17215-018
SOC. SEC. NO.: 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
ADDRESS: FCC Coleman-USP-1, P.O.
Box 1033, Coleman, Florida 33521-1033

| Right Thumb | Right Index |
|---|---|
| | |
| RT | RI |

TO: Hillsborough County Courthouse
Clerk of the Court
Tampa, Florida 33602

RE:   FREEDOM OF INFORMATION ACT (U.S.C. 552), PRIVACY ACT (5 U.S.C. 552 a (d) (1))
Request  EXEMPTIONS (5 U.S.C. 552 (c) (1)), GENERAL (U.S.C. 552 a (j) (2)) OR
SPECIFIC (U.S.C. 552 a (k) (2)) NOT APPLICABLE TO THIS REQUEST.

Dear Sir/Ms.,

This letter will serve as my request pursuant to the provisions of the Freedom of Information Act (5
U.S.C. 552) and the Privacy Act (5 U.S.C. 552a (d) (1)), and the applicable State Statutes governing
Freedom of Information Requests if state agency request, for full disclosure and release of all records
and / or data contained in the files of your agency, and specifically under my name and / or an
identifier assigned to my name. The records sought but not limited to, is the compiled file containing
(1) arrest records, (2) investigation and / or investigatory report (3) reports or evidentiary and / or
scientific information findings, (4) wants, warrants, and / or detainers, (5) final and closing
investigation reports; and (6) any and / or all information, data, or reports not otherwise exempt by
statute (5 U.S.C. 552 (c) (1)), (5 U.S.C. 552 a (j) (2), (k) (2), or law, Tarlton v. Saxbe, 507 F.2d. 1116,
165 U.S. App. D. C. 293 (1974), Menard v Saxbe, 498 F 2d. 1017, 162 U.S. App. D. C. 284 (1974)
Sullivan v. Murphy, 478 F 2d. 938, 1_5 U.S. App. D.C. 2  (1973). Your Agency is advised that the
investigation reports in toto are no longer accorded exempt status unless under the specific exemption
noted, and only with reference to specific citation of authority, Paton v. La Prade, 524 F.2d. 862, 868-
69. (CA3 1975)

*SPECIFIC REQUESTS*
1) I am requesting an expedited copy of the original complaints, affidavits, search warrants, and judicial orders for search warrants issued by Judge Don Castor August 17, 1993 for 12230 North 16th Street, #346, Tampa, Florida 33612, issued by Judge Robert Bonanno on August 17, 1993 for 4101 North Holly Street, Tampa, Florida; and issued by judge Robert Bonanno on August 17, 199 3 for 2608 E. Yukon Street, Tampa, Florida 33604. 2) A copy of the date the evidence obtained by way of search was returned, a copy of what evidence was returned, and a copy of the judge's authorization of the return of the same. If no such documents exist, please state in writing such.

It is further requested that your Agency in response to the material requested specifically inform me if and to whom the file and / or any material therein contained has been released to any identifiable individual or agency, their name, title, purpose and need for such information, the date of such release, the specific material that was released, the person within your Agency who released such information, and the specific reference to authority, statute or regulation, governing such release (5 U.S.C. 552 a (d) (1)), Paton v. La Parde, 524 F.2d. 862 (CA3 1975), Tarlton v. Saxbe, 507 F.2d. 1116, 165 U.S. App D.C. 293 (1974).

It is further requested that your Agency provide me with a copy of specific regulations of your Department as provided by statute (5 U.S.C. 552), so that compliance with such regulations is adhered to except as otherwise provided by law (5 U.S.C. 701 et. seq.)

If and for any reason you choose not to send me any of the documents or papers requested, then please provide me with a "Vaughn Index" as set forth in Vaughn v. Rosen, 484 F.2d. 820 (D.C. Cir. 1973).

If and for any reason it is determined that portions of the material and records sought is exempt by statute (5 U.S.C. 552 (c) (1), 552 a (j) (2), (k) (2) or by regulation (Menard v. Mitchell, 430 F.2d. 486, 139 U.S. App. D.C. 113 (1970), Nemetz v. Department of Treasury, 446 F. Supp.102, (N.D. Ill. 1976)), I request specific citation to authority for such deletion, Chastain v. Kelly, 510 F. 2d. 1232 (D.C. Cir. 1975) I further agree to pay any reasonable costs, or file IN FORMA PAUPERIS if I am indigent, provided by statute or regulation of your agency, for search and copying of the material requested.

Pursuant to Title 5 U.S.C. 552 (d) (A), it is noted that your Agency has ten (10) work g days following receipt of this reques to provide the information and material sought. Should any delay occur, it is requested that your Agency inform me of a delay as provided by Agency regulation; and the date as to when your Agency will be able to act upon request

Yours truly.

Dated: September 21, 2008

U.S. Department of Justice            Certification of Identity            

Privacy Act Statement. In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester ¹ __Anthony Lewis__

Citizenship Status ² __U.S. Citizen__        Social Security Number ³ __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__

Current Address __P.O. Box 1033, Coleman, Florida 33521-1033__

Date of Birth __November 27, 1965__        Place of Birth __Tampa, Florida__

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature ⁴ _____        Date September 24, 2008

OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C Section 552a(b), I authorize the U.S Department of Justice to release any and all information relating to me to:

_____
Print or Type Name

Name of individual who is the subject of the record sought.
Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully, admitted for permanent residence" pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.
Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the location of records relating to you. Without your social security number, the Department may be unable to locate any or all records

HILLSBOROUGH COUNTY COURTHOUSE
RESPONSE TO FOIA REQUEST

EXHIBIT D

E. Anthony Lewis

DATE: 11/30/06

CASE: _____

PAT FRANK

Clerk of the Circuit Court
13th Judicial Circuit

CIRCUIT CRIMINAL DIVISION
PO BOX 1110
TAMPA, FL 33601
(813) 276-8100 X4307

We acknowledge receipt of your correspondence requesting information.

1   ☐ Enclosed is the information you requested.

2.  ☐ Pursuant to F.S. 28.24(5)(a) there is a required service charge of $1.00/page for copies (8 ½ x 14 or smaller). Upon receipt of payment in the amount of $_____, we will forward the requested copies.

3.  ☐ Pursuant to F.S. 28.24(3) there is a required service charge of $2.00 for each document certified. Upon receipt of payment in the amount of $_____, we will forward the requested certified document(s).

4.  ☐ Pursuant to F.S. 28.24(20) there is a required service charge of $2.00 for each year and name searched. Upon receipt of payment in the amount of $_____, we will forward the requested information.

5.  ☐ Pursuant to F.S. 28.24(16) there is a required service charge of $7.00 for each Exemplified Certificate (including signing and sealing). Upon receipt of payment in the amount of $_____, we will forward the requested Exemplification.

6.  ☐ Pursuant to F.S. 940.04, you are entitled to receive without charge one copy of the Information or indictment and the Judgment and Sentence. The law does not provide for copies of additional documents without charge.

7.  ☐ All requests for transcripts, including costs, must be forwarded to the Court Reporter.

8.  ☐ Criminal history and lab reports are not part of the court file. Requests should be submitted to the arresting agency.

9.  ☐ For information concerning the progress of your appeal, please contact the 2nd DISTRICT COURT OF APPEALS, PO BOX 327, LAKELAND, FL 33802.

10  ☐ A search of records from _____ through _____ was made and no record was found against _____.

11  ☐ Pursuant to F.S 27.40(1), The Office of Criminal Conflict and Civil Regional Counsel have been appointed in your case

12  ☒ We are unable to locate the case you have referenced. Please provide the additional information requested below.

Middle Name  _____     Case Number _____

Date of Birth  _____     Arrest Date _____

Charge.  _____     Judge _____

13  ☒ Other In this Case a federal Charge

_____

_____

_____

Yours truly,
PAT FRANK
CLERK OF THE CIRCUIT COURT

AS DEPUTY CLERK

PLAINTIFF'S RESPONSE TO HILLSBOROUGH COUNTY COURTHOUSE
FOIA RESPONSE

EXHIBIT E

Anthony Lewis, #17215-018
FCC Coleman-USP-1
P.O. Box 1033
Colema, Florida 33521-1033

Clerk of the Court                    October 16, 2008
Attn: Pat Frank
Criminal Division-214
P.O. Box 1110
Tampa, Florida 33601

      Re: Previously filed Freedom of Information Act Request.

Dear Ms. Frank:

      I am presently writing you about my previously
filed Freedom of Information Act request, where I requested
specific documentation from you, different than that you have
forwarded me.  A review of my Freedom of Information Act request
will clearly show that I requested documentation relevant to
alleged search warrants, search warrant affidavits, complaints,
and other documents related to the same, that were allegedly
issued on August 17, 1993, by Judges Robert Bonanno and Don
Cator. The residences related to the documents being requested
are 12230 North 16th Street, #346, 4101 North Holly Street, and
2608 East Yukon Street.  You have not provided me any documents
related to my request.

      Please take notice that the documents you have forwarded
me are documents related to my criminal case from 1987 and 1988,
of which are different and distinct from the documents I am now
requesting.  Finally, I ask that if you do not have these docum-
ents on file, or if the documents do not exist, please inform
me of such in writing.

      In conclusion, I bring to your attention that in the
event you have not provided me the documents requested, or a
written notification that the documents do not exist and/or are
not on file, you will be a party and/or subject to a federal writ
of mandamus being filed for denying my Freedom of Information
Request.  I am with hopes that you will promptly respond to the
present letter.

      I close thanking you in advance for your attention and
concern.

                                    Anthony Lewis,

E. Anthony Is. S., #17215-018
FCC (Coleman-USP)
P.O. Box 1033
Coleman, Florida 33521-1033

Clerk of the Court                                    November 3, 2008
ATTN: IT FRANK
Criminal Division - 214
P.O. Box 1110
Tampa, Florida 33601

RE: Request for FOIA Documents And Response
To Recently Received Response.

DEAR MS. FRANK:

        I have just Received your Response
- to my last letter to you about the documents I requested Pursuant
to the Freedom of Information Act (FOIA) and the Document you
Forwarded Me Question whether Documents I seek are Relevant to
a Federal coverage not Enclosed? The Answer To your Question Is
yes, there were alleged "State Search Warrants" issued by
alleged State Judges As stated on the FOIA Documents I filed
with you, the Record Case Number Is 93-CR-249-21B, Middle
District of Florida, Tampa Division.

Given the fact that state and Federal agents were involved In the case. "Alleged" STATE Police officers from the Virginia Police Department obtained Judicially ISSUED Search WARRANTS From Judges Robert Zinnano and Ben Conklin on August 17, 1993. THESE Search WARRANTS, the Supporting affidavits, Complaints, Return of the Search WARRANTS, and the Judicial orders should be on file with this Court. Please review the Enclosed FOIA Documents for further Information.

In Conclusion, I bring to your attention that More than Likely these Documents are Not on file with the Court. In the Event these Documents are Not Located and/or Do Not EXIST In the Court, please provide me with Certified Documentation from the Court Stating So. I again Enclose the Documents I forwarded to you Initially for the FOIA Request, and the Second Letter I forwarded to you, along with the Completed application you forwarded me. Please promptly Respond.

I Thank you In advance for your attention and concern.

Sincerely.
Anthony Lewes

FOIA REQUEST TO UNITED STATES ATTORNEYS OFFICE

EXHIBIT F

## IDENTIFICATION OF REQUESTOR

NAME Anthony Lewis
ALIAS Mace
DATE OF BIRTH 11/27/65
REG. NO : 17215-018
SOC SEC NO . 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
ADDRESS FCC Coleman-USP-1, P.O.
Box 1033, Coleman, Florida 33521-1033



| Right Thumb | Right Index |
|---|---|
| | |
| RT | RI |

TO United States Attorneys Office
400 Tampa Street, Suite 3200
Tampa, Florida 33602

RE    FREEDOM OF INFORMATION ACT (U.S.C. 552), PRIVACY ACT (5 U.S.C. 552 a (d) (1))
Request.  EXEMPTIONS (5 U.S.C. 552 (c) (1)), GENERAL (U.S.C. 552 a (j) (2)) OR
SPECIFIC (U.S.C. 552 a (k) (2)) NOT APPLICABLE TO THIS REQUEST.

Dear Sir/Ms

This letter will serve as my request pursuant to the provisions of the Freedom of Information Act (5
U S C  552) and the Privacy Act (5 U S C  552a (d) (1)), and the applicable State Statutes governing
Freedom of Information Requests if state agency request, for full disclosure and release of all records
and / or data contained in the files of your agency, and specifically under my name and / or an
identifier assigned to my name  The records sought but not limited to, is the compiled file containing
(1) arrest records, (2) investigation and / or investigatory reports, (3) reports or evidentiary and / or
scientific information findings, (4) wants, warrants, and / or detainers, (5) final and closing
investigation reports, and (6) any and / or all information, data, or reports not otherwise exempt by
la  the (5 U S C  552 (c) (1)), (5 U S C. 552 a (j) (2), (k) (2), or law, Tarlton v. Saxbe, 507 F 2d  1116
165 U S  App  D C  293 (1974), Menard v Saxbe, 498 F 2d  1017, 162 U S  App  D.C. 284 (1974),
Sullivan v  Murphy. 478 F.2d. 938, 156 U S  App  D C  28 (1973). Your Agency is advised that the
investigation reports in toto are no longer accorded exempt status unless under the specific exemption
noted  and only with reference to specific citation of authority, Paton v  La Prade, 524 F 2d  862, 868-
69  (CA3 1975)

(The information and/or documents being requested relate to case no. 93-24-CR-T-21(B)
SPECIFIC REQUESTS
1) I am requesting an expedited copy of "all" compliants, affidavits, and
other documents filed with the United States Attorney General Janet Reno in
1993-1994 and the Office of Enforcement Operations, seeking authorization to
intercept telephone communications of Anthonty Lewis from phone numbers
(813)- 979-4849, (813)-620-7412, (813)-933-2944, which were filed by the
Prosecuting Assistant U.S. Attorney. 2) I am requesting a copy of the author-
ization from Janet Reno, given the prosecuting attorney authority to obtain
Judicial order to intercept telephone communications from the same telephones,
and the judicial orders from the judge issued to the prosecuting attorney.

It is further requested that your Agency in response to the material requested specifically inform me
if and to whom the file and / or any material therein contained has been released to any identifiable
individual or agency, their name, title, purpose and need for such information, the date of such release,
the specific material that was released, the person within your Agency who released such information,
and the specific reference to authority, statute or regulation, governing such release (5 U.S.C. 552 a
(d) (1)). Paton v. La Parde, 524 F.2d. 862 (CA3 1975), Tarlton v. Saxbe, 507 F.2d. 1116, 165 U.S.
App. D.C. 293 (1974).

It is further requested that your Agency provide me with a copy of specific regulations of your
Department as provided by statute (5 U.S.C. 552), so that compliance with such regulations is adhered
to except as otherwise provided by law (5 U.S.C. 701 et. seq.).

If and for any reason you choose not to send me any of the documents or papers requested, then please
provide me with a "Vaughn Index" as set forth in Vaughn v. Rosen, 484 F.2d. 820 (D.C. Cir. 1973).

If and for any reason it is determined that portions of the material and records sought is exempt by
statute (5 U.S.C. 552 (c) (1), 552 a (j) (2), (k) (2) or by regulation (Menard v. Mitchell, 430 F.2d 486,
139 U.S. App. D.C. 113 (1970), Nemetz v. Department of Treasury, 446 F. Supp.102, (N.D. Ill.
1976)), I request specific citation to authority for such deletion, Chastain v. Kelly, 510 F. 2d 1232
(D.C. Cir. 1975). I further agree to pay any reasonable costs, or file IN FORMA PAUPERIS if I am
indigent, provided by statute or regulation of your agency, for search and copying of the material
requested

Pursuant to Title 5 U.S.C. 552 (d) (A), it is noted that your Agency has ten (10) working days
following receipt of this request to provide the information and material sought. Should any delay
occur it is requested that your Agency inform me of this delay as provided by Agency regulations and
the date as to when your Agency will be able to act upon request

Yours truly,

Dated September 21, 2008

U.S. Department of Justice                **Certification of Identity**        

Privacy Act Statement. In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C Section 1001 and/or 5 U.S.C Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]   Anthony Lewis

Citizenship Status [2]  U.S. Citizen          Social Security Number [3]  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

Current Address  P.O. Box 1033, Coleman, Florida 33521-1033

Date of Birth  November 27, 1965        Place of Birth  Tampa, Florida

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [4]  _Anthony Lewis_          Date _September 4, 2008_

**OPTIONAL: Authorization to Release Information to Another Person**

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C Section 552a(b), I authorize the U.S Department of Justice to release any and all information relating to me to

_____

Print or Type Name

[1] Name of individual who is the subject of the record sought
[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence
[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you
[4] Signature of individual who is the subject of the record sought

EOUSA DOCUMENTS FOR WIRETAP FROM FOIA REQUEST

EXHIBIT G

U.S. Department of Justice

JCK:MHK:CHR:JDW:jdw

Washington, D.C. 20530

AUG - 2 1993

**MEMORANDUM**

TO: Maureen H. Killion, Associate Director
Office of Enforcement Operations
Criminal Division

FROM: John C. Keeney
Acting Assistant Attorney General
Criminal Division

SUBJECT: Authorization for Interception Order Application

This is with regard to your recommendation that I, an appropriately designated official of the Criminal Division, authorize an application to a federal judge of competent jurisdiction for an order under Title 18, United States Code, Section 2518, for a thirty (30) day period authorizing the interception of wire communications to and from a telephone bearing the number 7C subscribed to by 7C 7C and located at h 16th Street, Tampa, Florida, in connection with an investigation into possible violations of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, by Anthony Lewis, 7C

7C

By virtue of the authority vested in her by Section 2516 of Title 18, United States Code, the Attorney General of the United States has by Order Number 1709-93, dated April 5, 1993, designated specific officials in the Criminal Division to authorize applications for court orders authorizing the interception of wire or oral communications. As a duly designated official in the Criminal Division, this power is exercisable by me. WHEREFORE, acting under this delegated power, I hereby authorize the above-described application to be made by any investigative or law enforcement officer of the United States as defined in Section 2510(7) of Title 18, United States Code.

R.p 7C

The authorization given is intended to apply not only to the target telephone number listed above, but to any changed telephone number subsequently assigned to the same cable, pair, and binding posts utilized by the target telephone within the thirty (30) day period.  The authorization is also intended to apply to background conversations intercepted in the vicinity of the target telephone while the telephone is off the hook or otherwise in use.

John C. Keeney
Acting Assistant Attorney General
Criminal Division

AUG - 2 1993
Date

MARK M RICHARD
Deputy Assistant Attorney General
Criminal Division





U.S. Department of Justice

Post Office Box 7600
Benjamin Franklin Station
Washington, D.C.  20044-7600

Washington, DC 20530

AUG  6 1993

Honorable Douglas N. Frazier
United States Attorney for the
Middle District of Florida
500 Zack Street, Suite 400
Tampa, Florida 33602-3996

Dear Mr. Frazier:

This is to advise you that pursuant to the power delegated
to him by special designation by the Attorney General under the
authority vested in her by Section 2516 of Title 18, United
States Code, an appropriate official of the Criminal Division has
authorized an application to be made to a federal judge of
competent jurisdiction for an order under Section 2518 of Title
18, United States Code, for a thirty (30) day period authorizing
the interception of wire communications to and from the cellular
telephone bearing the number (813) 620-7412, subscribed to by
Anthony Lewis, 2608 E. Yukon Street, Tampa, Florida, in
connection with an investigation into possible violations of
Title 21, United States Code, Sections 841(a)(1), 843(b), and
846, by Anthony Lewis,

The authorization given is intended to apply not only
to the target telephone number listed above, but to any changed
telephone number, or any other telephone number used by or
assigned to the instrument bearing the same electronic serial
number designated by the target cellular telephone within the
thirty (30) day period.  The authorization is also intended to
apply to background conversations intercepted in the vicinity of
the target telephone while the telephone is off the hook or
otherwise in use.

The authorization given is intended to apply not only to the target telephone number listed above, but to any changed telephone number subsequently assigned to the same cable, pair, and binding posts utilized by the target telephone within the thirty (30) day period.  The authorization is also intended to apply to background conversations intercepted in the vicinity of the target telephone while the telephone is off the hook or otherwise in use.

John C. Keeney
Acting Assistant Attorney General
Criminal Division

JUL 2 1 1993

Date



U.S. Department of Justice

Post Office Box 7600
Benjamin Franklin Station
Washington, D.C.  20044-7600

*Washington, D.C. 20530*

AUG  3 1993

Honorable Douglas N. Frazier
United States Attorney for the
Middle District of Florida
500 Zack Street, Suite 400
Tampa, Florida 33602-3996

Dear Mr. Frazier:

This is to advise you that pursuant to the power delegated
to him by special designation by the Attorney General under the
authority vested in her by Section 2516 of Title 18, United
States Code, an appropriate official of the Criminal Division has
authorized an application to be made to a federal judge of
competent jurisdiction for an order under Section 2518 of Title
18, United States Code, for a thirty (30) day period authorizing
the interception of wire communications to and from a telephone
bearing the number
Douglas ---- ---- ---- ----                    ---- ---- ----
.. ----------on with an investigation into possible violations of
Title 21, United States Code, Sections 841(a)(1), 843(b), and
846, by Anthony Lewis,

The authorization given is intended to apply not only to the
target telephone number listed above, but to any changed
telephone number subsequently assigned to the same cable, pair,
and binding posts utilized by the target telephone within the
thirty (30) day period.  The authorization is also intended to
apply to background conversations intercepted in the vicinity of
the target telephone while the telephone is off the hook or
otherwise in use.

A copy of the Attorney General's order designating specific
officials in the Criminal Division to authorize applications for
interception orders of this nature and a copy of the memorandum
of authorization are enclosed.

Accordingly, you or any other attorney on your staff who is an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, are authorized to make the above-described application.

Sincerely,

John C. Keeney
Acting Assistant Attorney General

By:

Maureen H. Killion, Associate Director
Office of Enforcement Operations
Criminal Division

Enclosures

Accordingly, you or any other attorney on your staff who is an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, are authorized to make the above-described application.

The application should include a request that the order providing for the interception specifically authorize surreptitious entry for the purpose of installing, maintaining, and removing any electronic interception devices to be utilized in accomplishing the oral interception.

Sincerely,

John C. Keeney
Acting Assistant Attorney General

By: Frederick D. Hess

Frederick D. Hess, Director
Office of Enforcement Operations
Criminal Division

Enclosures



U.S. Department of Justice

Post Office Box 7600
Benjamin Franklin Station
Washington, D.C.  20044-7600

*Washington, D.C. 20530*
JUL 2 1 1993

Honorable Douglas N. Frazier
United States Attorney for the
Middle District of Florida
500 Zack Street, Suite 400
Tampa, Florida 33602-3996

Dear Mr. Frazier:

    This is to advise you that pursuant to the power delegated
to him by special designation by the Attorney General under the
authority vested in her by Section 2516 of Title 18, United
States Code, an appropriate official of the Criminal Division has
authorized an application to be made to a federal judge of
competent jurisdiction for an order under Section 2518 of Title
18, United States Code, for a thirty (30) day period authorizing
the interception of wire communications to and from a telephone
h-    _g the number (813) 993-2944, subscribed to by [          ] in
connection with an investigation into possible violations of
Title 21, United States Code, Sections 841(a)(1), 843(b), and
846, by Anthony Lewis,

                    and others as you

    The authorization given is intended to apply not only to the
target telephone number listed above, but to any changed
telephone number subsequently assigned to the same cable, pair,
and binding posts utilized by the target telephone within the
thirty (30) day period.  The authorization is also intended to
apply to background conversations intercepted in the vicinity of
the target telephone while the telephone is off the hook or
otherwise in use.

    A copy of the Attorney General's order designating specific
officials in the Criminal Division to authorize applications for
interception orders of this nature and a copy of the memorandum
of authorization are enclosed.



U.S. Department of Justice

JCK:FDH:MHK:CHR:JDW:jdw

Washington, D.C. 20530

JUL 2 1 1993

**MEMORANDUM**

TO:        Frederick D. Hess, Director
           Office of Enforcement Operations
           Criminal Division

FROM:      John C. Keeney
           Acting Assistant Attorney General
           Criminal Division

SUBJECT:   Authorization for Interception Order Application

This is with regard to your recommendation that I, an
appropriately designated official of the Criminal Division,
authorize an application to a federal judge of competent
jurisdiction for an order under Title 18, United States Code,
Section 2518, for a thirty (30) day period authorizing the
interception of wire communications to and from a telephone
bearing the number (813) 993-2944, subscribed to by [ ]
and located at [                                    ] 7C
connection with an investigation into possible violations of
Title 21, United States Code, Sections 841(a)(1), 843(b), and
[     ] by Anthony Lewis, [                          ] 7C
[          ] 7C  [        ] and others as yet unknown.

By virtue of the authority vested in her by Section 2516 of
Title 18, United States Code, the Attorney General of the United
States has by Order Number 1709-93, dated April 5, 1993,
designated specific officials in the Criminal Division to
authorize applications for court orders authorizing the
interception of wire or oral communications. As a duly
designated official in the Criminal Division, this power is
exercisable by me. WHEREFORE, acting under this delegated power,
I hereby authorize the above-described application to be made by
any investigative or law enforcement officer of the United States
as defined in Section 2510(7) of Title 18, United States Code.

A copy of the Attorney General's order designating specific officials in the Criminal Division to authorize applications for interception orders of this nature and a copy of the memorandum of authorization are enclosed.

Accordingly, you or any other attorney on your staff who is an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, are authorized to make the above-described application.

Sincerely,

John C. Keeney
Acting Assistant Attorney General

By:

Maureen H. Killion, Associate Director
Office of Enforcement Operations
Criminal Division

Enclosures



U.S. Department of Justice

JCK:MHK:CHR:JDW: j dw

_Washington, D.C. 20530_

AUG – 6 1993

**MEMORANDUM**

TO:     Maureen H. Killion, Associate Director
        Office of Enforcement Operations
        Criminal Division

FROM:   John C. Keeney
        Acting Assistant Attorney General
        Criminal Division

SUBJECT:  Authorization for Interception Order Application

        This is with regard to your recommendation that I, an
appropriately designated official of the Criminal Division,
authorize an application to a federal judge of competent
jurisdiction for an order under Title 18, United States Code,
Section 2518, for a thirty (30) day period authorizing the
interception of wire communications to and from the cellular
telephone bearing the number (813) 620-7412, subscribed to by
Anthony Lewis, 2608 E. Yukon Street, Tampa, Florida, in
connection with an investigation into possible violations of
Title 21, United States Code, Sections 841 (a)(1),
846, by Anthony Lewis,
Le
                                          7C

        By virtue of the authority vested in her by Section 2516 of
Title 18, United States Code, the Attorney General of the United
States has by Order Number 1709-93, dated April 5, 1993,
designated specific officials in the Criminal Division to
authorize applications for court orders authorizing the
interception of wire or oral communications.  As a duly
designated official in the Criminal Division, this power is
exercisable by me.  WHEREFORE, acting under this delegated power,
I hereby authorize the above-described application to be made by
any investigative or law enforcement officer of the United States
as defined in Section 2510(7) of Title 18, United States Code.

Mixed D---

CRIMINAL     T-III's        ☑

The authorization given is intended to apply not only to the target telephone number listed above, but to any changed telephone number, or any other telephone number used by or assigned to the instrument bearing the same electronic serial number designated by the target cellular telephone within the thirty (30) day period.  The authorization is also intended to apply to background conversations intercepted in the vicinity of the target telephone while the telephone is off the hook or otherwise in use.

John C. Keeney
Acting Assistant Attorney General
Criminal Division

AUG - 6 1993

Date

DEA RESPONSE TO FOIA REQUEST

EXHIBIT H



U. S. Department of Justice
Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

*www.dea.gov*

SEP ... 2009

Mr. Anthony Lewis
#17215-018
Federal Correction Camp
P.O. Box 759
Coleman, FL 33521

Re: *Anthony Lewis v. Executive Office for United States Attorneys, et al.,* C.A. No. 09-0746 RBW
      FOI Request 04-0699-F

Dear Mr. Lewis:

Enclosed please find 49 pages in their entirety and portions of one (1) page in further response to your Freedom of Information/Privacy Act (FOIA/PA) requests to the Drug Enforcement Administration (DEA) dated January 15, 2004, and October 29, 2008. It has also been noted that you have submitted other requests to DEA. Pursuant to a request for information related to third-parties, assigned DEA FOIA Request No. 95-0263-F, the request was closed after you were given notice that a release authorization was required and you failed to respond. Pursuant to request for investigative information assigned DEA FOIA Request No. 96-0264-P, 299 pages of materials were released to you.

To the extent that your letter of January 15, 2004, assigned DEA FOIA Request No. 04-0699, requests "(1) arrests records, (2) investigation and/or investigatory reports, (3) reports or evidentiary and/ or scientific information findings, (4) wants, warrants and/or detainers, (5) final and closing investigation reports: and (6) any and/or all information, data or reports not otherwise exempt by statute . . . .", this aspect of your request is duplicative of your request assigned DEA FOIA Request No. 96-0264-P. A query of the DEA Narcotics and Dangerous Drug Information System (NADDIS) indicates that no additional investigative information related to you has been included in any criminal investigative case file, since the time the release was made. Thus, this aspect of your request is denied as duplicative of your prior request.

To the extent that your letters of January 15, 2004, assigned DEA FOIA Request No. 04-0699, and October 29, 2008, request information related to two individuals that you claim are DEA special agents, by this letter, DEA neither confirms nor denies the existence of any information. As you were informed as early as 1995 and again by a DEA letter dated February 4, 2009, release of any such information would be an unwarranted invasion of personal privacy. If any such information exists, it would be contained in the DEA Planning and Inspection

Mr. Anthony Lewis                                                         `Page 2
September 11, 2009

Division Records, JUSTICE/DEA-010, which is a Privacy Act System of Records that is
exempt from the access provisions of the Act, in accordance with Exemptions (j)(2) and (k)(2).
Thus, in accordance with the Privacy Act, information contained in the system cannot be
disclosed without the prior written consent from the individual about whom the record pertains,
unless ordered by a court of competent jurisdiction, pursuant to a published routine use or
release is required by the Freedom of information Act.  Thus, except for the enclosed
documents, no further information is available to you.

The names of DEA personnel were been withheld pursuant to PA Exemptions (j)(2) and
(k)(2) and the FOIA Exemptions (b)(6) and (b)(7)(C) on a single page.  The FOIA, 5 U.S.C. §
552 (b)(7)(6) and (b)(7)(C), sets forth exemptions for records or information compiled for law
enforcement purposes the disclosure of which could reasonably be expected to constitute an
unwarranted invasion of personal privacy.  Thus, releasing their identities and information
pertaining to these individuals in the context of a DEA investigation would place each of these
employees in a position that they may suffer undue invasions of privacy, harassment and
humiliation from disclosure of their identities.

Sincerely,

William C. Little, Jr.
Senior Attorney
Administrative Law Section

Enclosures

TORTS BRANCH CIVIL DIVISION OF THE DOJ RESPONSE TO
REQUEST FOR STATUS OF PENDING TORT CLAIM

EXHIBIT I



**U.S. Department of Justice**

Civil Division, Torts Branch
Federal Tort Claims Act Staff

_Post Office Box 888_
_Benjamin Franklin Station_
_Washington, D C   20044_

BMP:MCArdike:mca
157-16-32387
157-16-32389
157-16-35435

July 15, 2013

Mr. Anthony Lewis
Reg. No. 17215-018
FCC Coleman Medium
P.O. Box 1032
Coleman, FL   33521

Re:   <u>Administrative Tort Claim of Anthony Lewis</u>

Dear Mr. Lewis:

This is in response to your submission dated June 10, 2013, which you presented to the

Department of Justice (Department).   The Department received the submission on June 21,

2013.   I will contact you if further information is needed.

Very truly yours,

BRENT M. PHIPPS
Paralegal
Civil Division, Torts Branch



**U.S. Department of Justice**

Civil Division, Torts Branch
Federal Tort Claims Act Staff

GKJ:JLevitas:jl
157-16-32387
157-16-32389
157-16-35435

*Post Office Box 888*
*Benjamin Franklin Station*
*Washington, D C  20044*

November 19, 2009

Mr. Anthony Lewis
Reg. No. 17215-018
USP Coleman 1
U.S. Penitentiary
P.O. Box 1033
Coleman, FL  33521



Re:  Administrative tort claims of Anthony Lewis

Dear Mr. Lewis:

This is in regard to your letters dated September 14, 2009, and October 26, 2009, which you presented to the Department of Justice (Department).  The Department received your letters on October 2, 2009, and November 5, 2009, respectively.  In them, you inform us that you are resubmitting your administrative tort claims dated October 4, 2004, and inquire as to their status. We are still in the process of reviewing your claims and will contact you if further information is needed.  I apologize for the delay in our response to your letters.

Yours very truly,

JONATHAN LEVITAS
Paralegal
Torts Branch, Civil Division

Anthony Lewis, #17215-018
FCC Coleman-USP-1
P.O. Box 1033
Coleman, Florida 33521-1033

Department of Justice                    October 26, 2009
Attn: Attorney General
Tenth and Constitution Avenue, N.W.
Washington, D.C. 20530

        Re: Resubmittion of Tort Claims and request for
            resolution.

To Whom It may concern:

        I am presently writing you to inform you that I am
resubmitting my Tort Claims filed in 2004, of which have not
been addressed nor resolved. Given the fact that I have filed
the Tort Claim with the Civil Division with the attention of
the new director, Phyllis Pyles, with no response, I am filing
the Tort Claims with this department to begin the process a
new.

        Finally, I bring to your attention that I have obtained
evidence in support of claims I have presented in my Tort Claims,
specifically related to the illegal and unlawful intercepting of
my telephone communications, where the Department of Justice's
Office of Enforcement Operations have confirmed that no authority
to intercept my telephone communictions was ever issued by the
United States Attorney General in 1993 to 1994, as alleged by the
government employees who illegally and unlawfully intercepted them.

        In conclusion, I ask that you process the Tort Claims
as required by established law, and/or inform me as to whether
or not the  new director has acted upon the resubmittion of the
Torts Claims forwarded to her.

        I thank you in advance for your attention and concern.

                                    Sincerely,

                                    Anthony Lewis

Anthony Lewis, #17215-018
FCC Coleman-USP-1
P.O. Box 1033
Coleman, Florida 33521-1033

Civil Division, Torts Branch          September 14, 2009
Federal Tort Claims Act Staff
Attn: Phyllis Pyles, Director
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044

      Re: Resubmittion of Previous Tort Claims and Request
         For Resolution and/or response after confirmed
         violations, and Notice of Complaint filed to the
         Attorney General Eric Holder.

Dear Mrs. Pyles:

      This is a letter informing you that I am resubmitting
my previously filed Tort Claims with this office, given the
fact that I have received evidence from the Department of
Justice's Office of Enforcement Operations confirming the
rights violations in reference to the illegal and unlawful
wiretapping complained of in the Tort claims. (See enclosed).

      I bring to your attention that more than four years
have gone by without his Department and/or Branch addressing,
responding to, and resolving the Tort Claims since I received
a letter from the paralegal specialist Kimberly P. Smith. (See
enclosed). After having filed the Tort Claims, I have obtained
evidence and documentation from the Office of Enforcement Opera-
tions informing me that there exist no files or records of the
Attorney General, Janet Reno at the times relevant to the present
Tort Claims, having given any United States Attorney or Assistant
United States Attorney Authorization to seek a judicial order to
intercept my telephone communications. (Id. enclosed).

      I now ask that you inform me whether or not you have
denied my Tort Claims and/or if they have been denied, and if
they have not been denied, to please inform me of the status
of the Tort Claims. Finally, I ask that you address and resolve
the Tort Claims in the even such has not taken place. In concl-
usion, I inform you that I have forwarded a copy of the same
letter and documents to the Attorney General Eric Holder along
with a complaint for review of the matters at hand.

      I close thanking you for your attention and concern,
and look forward to receiving a timely response.

                       Sincerely,

                       Anthony Lewis

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form  Use additional sheet(s) if necessary.  See reverse side for additional instructions | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1  Submit To Appropriate Federal Agency: Department of Justice Tenth and Constitution Avenue, N.W. Washington, D.C. 20503 | 2. Name, Address of claimant and claimant's personal representative, if any  (See instructions on reverse )  (Number, Street, City, State and Zip Code) Anthony Lewis, #17215-018 FCC Coleman-USP-1 P.O. Box 1033 Coleman, Florida 33521-1033 |
|---|---|

| 3. TYPE OF EMPLOYMENT □ MILITARY □ CIVILIAN | 4  DATE OF BIRTH 11-27-65 | 5. MARITAL STATUS Single | 6  DATE AND DAY OF ACCIDENT 8-17-93 to present | 7. TIME (A.M  OR P.M.) N/A |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof.  Use additional pages if necessary.)

**"SEE ATTACHED"**

**RESUBMITTING ORIGINAL**

| 9 | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

**"SEE ATTACHED"**

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

**"SEE ATTACHED"**

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

**"SEE ATTACHED"**

| 11 | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, and Zip Code) | |
| **"SEE ATTACHED"** | **"SEE ATTACHED"** | |

| 12  (See instructions on reverse ) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a  PROPERTY DAMAGE **"SEE ATTACHED"** | 12b  PERSONAL INJURY **"SEE ATTACHED"** | 12c  WRONGFUL DEATH **"SEE ATTACHED"** | 12d  TOTAL (Failure to specify may cause forfeiture of your rights ) **"SEE ATTACHED"** |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a  SIGNATURE OF CLAIMANT (See instructions on reverse side ) *Anthony Lewis* | 13b  Phone number of person signing form N/A | 14  DATE OF SIGNATURE 9-14-09 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government (See 31 U S C  3729 ) | Fine  imprisonment, or both  (See 18 U S C  287, 1001 ) |

NSN 7540-00-634-4046

STANDARD FORM 95

CLAIM FOR DAMAGE,
INJURY, OR DEATH

INSTRUCTIONS: Please read carefully the instructions on the reverse side and apply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED
OMB NO.
1105-0008
EXPIRES 4-30-94

Submit To Appropriate Federal Agency:

Department of Justice
Tenth & Constitution Avenue, N.W.
Washington, D.C. 20530

2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code)

Anthony Lewis #17215-018
FCC Coleman-USP
P.O. Box 1033
Coleman, Florida 33521-1033

| TYPE OF EMPLOYMENT ☐ MILITARY ☐ CIVILIAN | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| N/A | 11/27/65 | single | 8/17/93 to present | N/A |

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying the persons and property involved, the place of occurrence and the cause thereof.) (Use additional pages if necessary.)

This Tort Claim is being filed because of the United States Government's employees has acted with negligence and created liability for themselves and the United States by committing crimes against the petitioner in prosecuting him in a federal court, and convicting him. The crimes committed were stemed from illegal intercepted telephone communications, in violation of Title 18 U.S.C. § 2511, and fraud, in violation of Title 18 U.S.C. § 287. This Tort claims is also being filed because the United States employees and government agencies refuse to provide the victims rights pursuant to Title 42 U.S.C. § 10606 and relief pursuant to Title 18 U.S.C. § 2520.

## PROPERTY DAMAGE

9. NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

N/A Property interest and property cannot presently be identified

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.) loss of business, business interest, vehicles, personal property, real estate interest, other unknown property.

## PERSONAL INJURY/WRONGFUL DEATH

10. NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

...tion, mental anguish, emotional distress, anxiety, discomfort, and loss of physical mental support system.

## WITNESSES

| NAME | ADDRESS (Number, street, city, State and Zip Code) |
|---|---|
| various known and unknown friends, family, and others | known and unknow to be submitted when possible |

(See instructions on reverse)          AMOUNT OF CLAIM (In dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| 300,000.00 | 10. Milliion Dollars | N/A | $10,300,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| Anthony Lewis | N/A | 10-4-04 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000, plus amount of damages sustained by the United States... | Fine of not more than $10,000 or imprisonment... |

# CLAIM FOR DAMAGE, INJURY, OR DEATH

INSTRUCTIONS: Please read carefully the instructions apply information requested on both sides of this form. necessary. See reverse side for additional instructions. reverse side and additional sheet(s) if

FORM APPROVED
OMB NO.
1105-0008
EXPIRES 4-30-94

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| Department of Justice<br>Tenth & Constitution Avenue, N.W.<br>Washington, D.C. 20530 | Anthony Lewis #17215-018<br>FCC Coleman-USP<br>P.O. Box 1033<br>Coleman, Florida 33521-1033 |

| 3. TYPE OF EMPLOYMENT<br>N/A<br>☐ MILITARY ☐ CIVILIAN | 4. DATE OF BIRTH<br>11/27/65 | 5. MARITAL STATUS<br>single | 6. DATE AND DAY OF ACCIDENT<br>8/17/93 to present | 7. TIME (A.M. OR P.M.)<br>N/A |
|---|---|---|---|---|

**8. Basis of Claim** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying the persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

I have been illegally arrested, illegally detained, illegally prosecuted, illegally convicted, and illegally incarcerated as a direct, proximate and foreseeable result of agents and officers of the Drug Enforcement Administration, The United States Attorneys office, the U.S. District Court, and the Eleventh Circuit Court of Appeals, by their acts of racial discrimination in targeting blacks in sovereign states without criminal jurisdiction to do so, and their failure to correct their actions when in violation of the Constitution and laws of the United States, in cluding state laws. The entities stated above made such actions routine, habit and practice and has had a continued pattern of the same with reckless disregard as respondent superiors.

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

no property interest and property cannot presently be identified

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.) loss of business, business interest, vehicles, personal property, real estate interest, other unknown property.

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT. emotional distress, anxiety, discomfort, vexation, mental anguish, and loss of physical and mental support system.

**11. WITNESSES**

| NAME | ADDRESS (Number, street, city, State and Zip Code) |
|---|---|
| Numerous known and unknown blacks | Known and unknown |

**12.** (See instructions on reverse) **AMOUNT OF CLAIM** (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| $200,000.00 | 10 Million Dollars | N/A | $10,200,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>*Anthony Lewis* | 13b. Phone number of signatory<br>N/A | 14. DATE OF CLAIM<br>10-4-04 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM<br>The claimant shall forfeit and pay to the United States the sum of $2,000. double the amount of damages sustained by the United States | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS<br>Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |
|---|---|

Anthony Lewis, #17215-018
FCC Coleman-USP-1
P.O. Box 1033
Coleman, Florida 33521-1033

Civil Division, Torts Branch          September 14, 2009
Federal Tort Claims Act Staff
Attn:
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044

      Re: Resubmittion of Previous Tort Claim and Request
         For Resolution and/or Response after confirmed
         violations, and Notice of Complaint filed to the
         Attorney General Eric Holder.

Dear Director:

      This is a letter informing you that I am resubmitting
my previously filed Tort Claims with this office, given the
fact that I have received evidence from the Department of
Justice's Office of Enforcement Operations confirming the
rights violations in reference to the illegal and unlawful
wiretapping complained of in the Tort Claims. (See, enclosed).

      I bring to your attenion that more than four years
have gone by without this Department and/or Branch addressing,
responding to, and resolving the Tort Claims, since I received
a letter from the Paralegal Specialist Kimberly P. Smith. (See,
enclosed). Since having filed the Tort Claims, I have obtained
evidence from the Office of Enforcement Operations informging me
that there exist no files and records of the Attorney General,
Janet Reno at the times relevant to the present Tort Claims,
having given any United States Attorney or Assistant United
States Attorney Authorization to seek a judicial order to interc-
ept my telephone communications. (Id. enclosed).

      I now ask that you inform me whether or not you have
denied my Tort Claims and/or if they have been denied, and if
they have not been denied, to please inform me of the status
of the Tort Claims. Finally, I ask that you address and resolve
the Tort Claims in the event such has not taken place. In conc-
lusion, I bring to your attention that I have forwarded a copy
of the same letter and documents to the Attorney General Eric
Holder along with a complaint for review of of the matter at
hand.

      I closing thanking you for your attention and concern,
and I look forward to receiving a timely response.

                    Sincerely,

                    Anthony Lewis

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions apply information requested on both sides of this form. necessary. See reverse side for additional instructions. | reverse side and additional sheet(s) if | FORM APPROVED OMB NO. 1105-0008 EXPIRES 4-30-94 |
|---|---|---|---|

| 1 Submit To Appropriate Federal Agency: Department of Justice Tenth & Constitution Avenue, N.W. Washington, D.C. 20530 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) Anthony Lewis #17215-018 FCC Coleman-USP P.O. Box 1033 Coleman, Florida 33521-1033 |
|---|---|

| 3. TYPE OF EMPLOYMENT N/A □ MILITARY □ CIVILIAN | 4. DATE OF BIRTH 11/27/65 | 5. MARITAL STATUS single | 6. DATE AND DAY OF ACCIDENT 8/17/93 to present | 7. TIME (A.M. OR P.M.) N/A |
|---|---|---|---|---|

**8. Basis of Claim** *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying the persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

I have been illegally arrested, illegally detained, illegally prosecuted, illegally convicted, and illegally incarcerated as a direct, proximate and foreseeable result of agents and officers of the Drug Enforcement Administration, The United States Attorneys office, the U.S. District Court, and the Eleventh Circuit Court of Appeals, by their acts of racial discrimination in targeting blacks in sovereign states without criminal jurisdiction to do so, and their failure to correct their actions when in violation of the Constitution and laws of the United States, in cluding state laws. The entities stated above made such actions routine, habit and practice and has had a continued pattern of the same with reckless disregard as respondent superiors.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

N.A  Property interest and property cannot presently be identified

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)* loss of business, business interest, vehicles, personal property, real estate interest, other unknown property.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT. emotional distress, anxiety, discomfort, vexation, mental anguish, and loss of physical and mental support system.

| 11. | WITNESSES | |
|---|---|---|
| | NAME | ADDRESS (Number, street, city, State and Zip Code) |
| | Numerous known and unknown blacks | Known and unknown |

| 12. (See instructions on reverse) | AMOUNT OF CLAIM (In dollars) | | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| $200,000.00 | 10 Million Dollars | N/A | $10,200,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory N/A | 14. DATE OF CLAIM 12-4-84 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000, us d double the amount of damages sustained by the United States. | Fine of not more than $10,000 or imprisonment for not more than 5 years or both (See 18 U.S.C. 287, 1001.) |

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions apply information requested on both sides of this form. necessary. See reverse side for additional instructions. | reverse side and additional sheet(s) if | FORM APPROVED OMB NO. 1105-0008 EXPIRES 4-30-94 |
|---|---|---|---|

| 1 Submit To Appropriate Federal Agency: Department of Justice Tenth & Constitution Avenue, N.W. Washington, D.C. 20530 | 2. Name, Address of claimant and claimant's personal representative, if any. (See Instructions on reverse) (Number, street, city, State and Zip Code) Anthony Lewis #17215-018 FCC Coleman-USP P.O. Box 1033 Coleman, Florida 33521-1033 |
|---|---|

| 3. TYPE OF EMPLOYMENT N/A ☐ MILITARY  ☐ CIVILIAN | 4. DATE OF BIRTH 11/27/65 | 5. MARITAL STATUS single | 6. DATE AND DAY OF ACCIDENT 8/17/93 to present | 7. TIME (A.M. OR P.M.) N/A |
|---|---|---|---|---|

**8. Basis of Claim** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying the persons and property involved, the place of occurrence and the cause thereof.) (Use additional pages if necessary.)

I have been illegally arrested, illegally detained, illegally prosecuted, illegally convicted, and illegally incarcerated as a direct, proximate and foreseeable result of agents and officers of the Drug Enforcement Administration, The United States Attorneys office, the U.S. District Court, and the Eleventh Circuit Court of Appeals, by their acts of racial discrimination in targeting blacks in sovereign states without criminal jurisdiction to do so, and their failure to correct their actions when in violation of the Constitution and laws of the United States, in cluding state laws. The entities stated above made such actions routine, habit and practice and has had a continued pattern of the same with reckless disregard as respondent superiors.

**9.** PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

n.a   Property interest and property cannot presently be identified

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.)   loss of business, business interest, vehicles, personal property. real estate interest, other unknown property.

**10.** PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT. emotional distress, anxiety, discomfort, vexation, mental anguish, and loss of physical and mental support system.

**11.** WITNESSES

| NAME | ADDRESS (Number, street, city, State and Zip Code) |
|---|---|
| Numerous known and unknown blacks | Known and unknown |

**12.** (See Instructions on reverse)  AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| $200,000.00 | 10 Million Dollars | N/A | $10,200,000.00 |

CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See Instructions on reverse side.) Anthony Lewis | 13b. Phone number of signatory N/A | 14. DATE OF CLAIM 10-4-84 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM The claimant shall forfeit and pay to the United States the sum of $2,000. is double the amount of damages sustained by the United States | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |
|---|---|



**U.S. Department of Justice**

*Civil Division, Torts Branch*
*Federal Tort Claims Act Staff*

---

*Kimberly P. Smith*
*Paralegal Specialist*

*Post Office Box 888*
*Benjamin Franklin Station*
*Washington, D.C  20044*

*Telephone: (202) 616-4233*
*Facsimile: (202) 616-5200*

PJP:KPSmith:hls
157-16-NEW

December 16, 2004

Anthony Lewis
#17215-018
FCC Coleman-USP
Post Office Box 1033
Coleman, Florida  33521-1033

Re:   <u>Administrative Tort Claim of Anthony Lewis</u>

Dear Mr. Lewis:

The administrative tort claim dated October 4, 2004, which you presented to the Department of Justice on October 14, 2004, was referred to this office for handling.

Your claim has been assigned to me for handling.  As soon as I have reviewed the material, I will contact you.  Should you have any questions in the interim, please feel free to contact me at the following address:

**Kimberly P. Smith**
**Paralegal Specialist**
**Torts Branch, Civil Division**
**United States Department of Justice**
**P. O. Box 888**
**Benjamin Franklin Station**
**Washington, D.C.  20044.**

Very truly yours,

KIMBERLY P. SMITH
Paralegal Specialist
Torts Branch, Civil Division

cc w/encls:     Paul Ignatius Perez
                United States Attorney
                Middle District of Florida
                400 North Tampa Street
                Suite 3200
                Tampa, FL  33602

                Honorable Cynthia R. Ryan
                Office of Chief Counsel
                Drug Enforcement Administration
                Torts Claims Office/DEA
                Room 12142-C LP2
                Washington, D.C.  20537

                Honorable William R. Burchill, Jr.
                General Counsel
                Administrative Office of U.S. Courts
                1 Columbus Circle, N.E.
                Suite 7-290
                Washington, D.C.  20544



**U.S. Department of Justice**

Criminal Division

---

*Office of Enforcement Operations*                    *Washington, D C  20530*

CRM-200800703P
                                          NOV 2 4 2008

Mr. Anthony Lewis
Reg. No. 17215-018
FCC- Coleman- USP- 1
P.O. Box 1033
Coleman, FL 33521-1033

Dear Mr. Lewis:

        This is in response to your request of September 14, 2008,
pursuant to the Privacy Act, for access to records concerning
you.

        We did not find any Criminal Division records pertaining to
you in our search of the indexes for the criminal Division
systems you designated.

        If you consider this response to be a denial of your
request, you have a right to an administrative appeal of this
determination.  Your appeal should be addressed to:  Office of
Information and Privacy, United States Department of Justice,
1425 New York Ave., NW, Suite 11050, Washington, DC 20530-0001.
Both the envelope and the letter should be clearly marked with
the legend "FOIA Appeal."  Department regulations provide that
such appeals must be received by the Office of Information and
Privacy within sixty days of the date of this letter.  28 C.F.R.
16.45.  If you exercise this right and your appeal is denied, you
also have the right to seek judicial review of this action in the
federal judicial district (1) in which you reside, (2) in which
you have your principal place of business, (3) in which the
records denied are located, or (4) for the District of Columbia.
If you elect to file an appeal, please include, in your letter to
the Office of Information and Privacy, the Criminal Division file
number that appears above your name in this letter.

                            Sincerely,

                            Rena Y. Kim, Chief
                            Freedom of Information Privacy Act Unit

.

DOCUMENTS FROM SEALED SECRET DOCKETED CASE
MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

EXHIBIT J

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN THE MATTER OF THE           )
APPLICATION OF THE UNITED      )
STATES FOR AN ORDER            )    Case Nos. 93-10-Misc-Cr-T-17
AUTHORIZING THE INTERCEPTION   )              93-11-Misc-Cr-T-21
OF WIRE COMMUNICATIONS         )              93-12-Misc-Cr-T-15
_____

INVENTORY

TO:


A.   On July 22, 1993; August 3, 1993; and on August 9,
1993; applications for orders authorizing interception of wire
communications were filed in the United States District Court for
the Middle District of Florida;

B.   That pursuant to the above-noted application, orders
were entered authorizing the interception of wire communications
for a period of thirty (30) days.

C.   That between the dates of July 22, 1993 and August 19,
1993, wire communications were intercepted.

                    Very truly yours,

                    DOUGLAS N. FRAZIER
                    United States Attorney


By: _____
    THOMAS M. FINDLEY
    Assistant United States Attorney

UNITED STATES DISTRICT COURT ′3 NOV 25  AM 10:39
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION         ... U.S. DISTRICT COURT
                       ... LE DISTRICT OF FLORIDA
                          TAMPA, FLORIDA

IN THE MATTER OF THE          )
APPLICATION OF THE UNITED     )
STATES FOR AN ORDER           )   Case Nos. 93-10-Misc-Cr-T-17
AUTHORIZING THE INTERCEPTION  )             93-11-Misc-Cr-T-21
OF WIRE COMMUNICATIONS        )             93-12-Misc-Cr-T-15

_____

IN CAMERA

GOVERNMENT'S EX-PARTE MOTION FOR AN ORDER AUTHORIZING
THE SERVICE OF INVENTORY PURSUANT TO 18 U.S.C. §2518(8)(d)

NOW COMES the United States of America, by and through its

attorneys, Douglas N. Frazier, United States Attorney and Thomas

M. Findley, Assistant United States Attorney, for an order to

serve an Inventory upon certain subjects and interceptees in the

above captioned matter.  The government further requests an

additional ninety (90) days to serve such Inventory on the

intercepted parties, as authorized by 18 U.S.C. §2518(8)(d)

because several of the named interceptees are targets of ongoing

investigations.  In support of its motion, the United States

avers as follows:

1.  On July 22, 1993, this Court executed an order

authorizing the interception of wire communications of Anthony

Lewis, Calvin Lewis, Henry Lee Lewis, Jr, Henry Lee Lewis, Sr.,

Lenthia Lewis, Kenneth "Ray" Underwood, Carlos Graces, Lester Lee

from telephone number (813) 933-2944, subscribed to by Henry
Lewis and located at 2608 E. Yokon Street, Tampa, Florida; and
Digital Display telephone pager, number (813) 887-9422,
subscribed to by L and L System, Inc., of Tampa, Florida;

   2.  On August 3, 1993, this Court executed an order
authorizing the interception of wire communications of Anthony
Lewis, Calvin Lewis, Henry Lee Lewis, Jr, Henry Lee Lewis, Sr.,
Lenthia Lewis, Kenneth "Ray" Underwood, Carlos Graces, Lester Lee
Lewis and Ernest Darell Calhoun, and others as yet unknown to and
from telephone number (813) 979-4849, subscribed to by Brenda
Douglas, located at 12230 North 16th Street, Tampa, Florida;

   3.  On August 9, 1993, this Court executed an order
authorizing the interception of wire communications of Anthony
Lewis, Calvin Lewis, Henry Lee Lewis, Jr, Henry Lee Lewis, Sr.,
Lenthia Lewis, Kenneth "Ray" Underwood, Carlos Graces, Lester Lee
Lewis and Ernest Darell Calhoun, and others as yet unknown to and
from portable cellular telephone having electronic serial number
(ESN) 8113F88A, assigned telephone number (813) 620-7412,
subscribed to by Anthony Lewis, of Tampa, Florida;

   4.  On August 19, 1993, the United States deactivated the
electronic surveillance devices and terminated intercepting wire
communication.

   5.  The following individuals were intercepted:
        Anthony Lewis              Carlos Graces

Angelique Braccetty          Terrance Malloy

Henry Lewis                  Juan Carlos

Joe Fernandez                Carl Jackson

Rodney Mills

Respectfully submitted,

DOUGLAS N. FRAZIER
United States Attorney

By:

THOMAS M. FINDLEY
Assistant United States Attorney
500 Zack Street, Room 410
Tampa, Florida  33602
813/274-6351

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | |
| APPLICATION OF THE UNITED | ) | |
| STATES FOR AN ORDER | ) | Case Nos. 93-10-Misc-Cr-T-17 |
| AUTHORIZING THE INTERCEPTION | ) | 93-11-Misc-Cr-T-21 |
| OF WIRE COMMUNICATIONS | ) | 93-12-Misc-Cr-T-15 |

IN CAMERA

GOVERNMENT'S EX-PARTE MOTION FOR AN ORDER AUTHORIZING
THE SERVICE OF INVENTORY PURSUANT TO 18 U.S.C. §2518(8)(d)

NOW COMES the United States of America, by and through its
attorneys, Douglas N. Frazier, United States Attorney and Thomas
M. Findley, Assistant United States Attorney, for an order to
serve an Inventory upon certain subjects and interceptees in the
above captioned matter. The government further requests an
additional ninety (90) days to serve such Inventory on the
intercepted parties, as authorized by 18 U.S.C. §2518(8)(d)
because several of the named interceptees are targets of ongoing
investigations. In support of its motion, the United States
avers as follows:

1. On July 22, 1993, this Court executed an order
authorizing the interception of wire communications of Anthony
Lewis, Calvin Lewis, Henry Lee Lewis, Jr, Henry Lee Lewis, Sr.,
Lenthia Lewis, Kenneth "Ray" Underwood, Carlos Graces, Lester Lee
Lewis and Ernest Darell Calhoun, and others as yet unknown to and

from telephone number (813) 933-2944, subscribed to by Henry

Lewis and located at 2608 E. Yokon Street, Tampa, Florida; and

Digital Display telephone pager, number (813) 887-9422,

subscribed to by L and L System, Inc., of Tampa, Florida;

2.   On August 3, 1993, this Court executed an order

authorizing the interception of wire communications of Anthony

Lewis, Calvin Lewis, Henry Lee Lewis, Jr, Henry Lee Lewis, Sr.,

Lenthia Lewis, Kenneth "Ray" Underwood, Carlos Graces, Lester Lee

Lewis and Ernest Darell Calhoun, and others as yet unknown to and

from telephone number (813) 979-4849, subscribed to by Brenda

Douglas, located at 12230 North 16th Street, Tampa, Florida;

3.   On August 9, 1993, this Court executed an order

authorizing the interception of wire communications of Anthony

Lewis, Calvin Lewis, Henry Lee Lewis, Jr, Henry Lee Lewis, Sr.,

Lenthia Lewis, Kenneth "Ray" Underwood, Carlos Graces, Lester Lee

Lewis and Ernest Darell Calhoun, and others as yet unknown to and

from portable cellular telephone having electronic serial number

(ESN) 8113F88A, assigned telephone number (813) 620-7412,

subscribed to by Anthony Lewis, of Tampa, Florida;

4.   On August 19, 1993, the United States deactivated the

electronic surveillance devices and terminated intercepting wire

communication.

5.   The following individuals were intercepted:

Anthony Lewis            Carlos Graces

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN THE MATTER OF THE APPLICATION   :
OF THE UNITED STATES OF AMERICA    :
FOR AN ORDER AUTHORIZING THE       :   MISC. NO.
INTERCEPTION OF WIRE COMMUNICATIONS:

**IN CAMERA**
ANCILLARY APPLICATION FOR TOLL
RECORDS AND SUBSCRIBER INFORMATION
PURSUANT TO TITLE 18, UNITED STATES
CODE, SECTION 2703(c)(1)(B)

The United States hereby applies for judicial
assistance pursuant to Title 18, United States Code, Section
2703(c)(1)(B), with respect to obtaining toll record and
subscriber information pertinent to certain telephone numbers
dialed from the telephone facility at (813) 620-7412, Electronic
Serial Number 8113F88A, a hand-held cellular telephone subscribed
to by ANTHONY LEWIS, of Tampa, Florida, which is the subject of
the Court's Order authorizing wire interception.
Contemporaneous, timely access to this information during the
pendency of the wire interception will enable law enforcement
officers to follow up investigative leads promptly, thus making
possible the arrest of persons and seizure of contraband and/or
proceeds before narcotics, currency or violators can move from
one location to another location that may be unknown to law
enforcement officers.

WHEREFORE, the United States Attorney respectfully
requests an Order be entered, pursuant to Title 18, United States
Code, Section 2703(c)(1)(B), directing GTE, a communication

service provider within the meaning of Title 18, United States Code, Section 2510(15), to (1) produce to the Drug Enforcement Administration and Special Federal Officers deputized in the captioned investigation, records of subscriber information and toll call billing records for certain telephone numbers derived from the captioned wire interception during the pendency of said interception, and (2) not to disclose the existence of this Order and Application, the request of the government for assistance or information, or the existence of this investigation, to the subscribers or any other person, until further order of the Court.  The United States further requests that this Application and any Order pursuant thereto be sealed.

Respectfully submitted,

DOUGLAS N. FRAZIER
United States Attorney

By:

THOMAS M. FINDLEY
Assistant United States Attorney
500 Zack Street, Suite 400
Tampa, Florida  33602-3996
(813) 225-7300

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN THE MATTER OF THE APPLICATION   :
OF THE UNITED STATES OF AMERICA    :
FOR AN ORDER AUTHORIZING THE       :   MISC. NO.
INTERCEPTION OF ELECTRONIC         :
AND WIRE COMMUNICATIONS            :

**IN CAMERA**
**ANCILLARY ORDER PROVIDING FOR TOLL**
**RECORDS AND SUBSCRIBER INFORMATION AND TO SEAL**

The United States has moved pursuant to Title 18,
United States Code, Section 2703(c)(1)(B), for an Order that Dial
Page and GTE of Florida, Inc., be required, contemporaneously
with the captioned electronic and wire interception of telephone
number (813) 933-2944, a telephone subscribed to by HENRY LEWIS,
of 2608 E. Yukon Street in Tampa, Florida, and telephone digital
pager number (813) 887-9422, to provide agents of the captioned
investigation with reports concerning toll records and subscriber
information derived as a result of such interception, as
requested of Dial Page and GTE of Florida, Inc., from time to
time by said law enforcement officers.

This Court has considered the foregoing application by
the United States, and finds that there is reason to believe that
the information requested is relevant to a legitimate law
enforcement inquiry conducted by the Drug Enforcement
Administration and Special Federal Officers deputized in the
captioned investigation that the relief requested is reasonably
necessary to effectuate existing orders of this Court, and that
it is not unduly burdensome,

IT IS THEREFORE, ORDERED,

1.    That Dial Page and GTE of Florida, Inc., shall
provide agents of the Drug Enforcement Administration and Special
Federal Officers deputized in the captioned investigation from
time to time, as may be requested by law enforcement officers,
with toll records and subscriber information derived from the
captioned electronic and wire interception;

2.    That the above-described toll records and
subscriber information be provided by Dial Page and GTE of
Florida, Inc., as expeditiously as possible during the
continuation of said electronic and wire interception, and
without necessity of further orders of this Court;

3.    That Dial Page and GTE of Florida, Inc., shall not
reveal or disclose the existence of this Application or Order, or
its subject matter, either to its subscribers or any other
persons until further Order of this Court; and

4.    That this Order and accompanying Application be
sealed until further order of this Court.

Dated this _22nd_ day of _JULY_ 1993.

UNITED STATES DISTRICT JUDGE

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Angelique Braccetty          Terrance Malloy

Henry Lewis                  Juan Carlos

Joe Fernandez                Carl Jackson

Rodney Mills

Respectfully submitted,

DOUGLAS N. FRAZIER
United States Attorney

By: _____
THOMAS M. FINDLEY
Assistant United States Attorney
500 Zack Street, Room 410
Tampa, Florida   33602
813/274-6351

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN THE MATTER OF THE          )
APPLICATION OF THE UNITED     )
STATES FOR AN ORDER           )    Case Nos. 93-10-Misc-Cr-T-17
AUTHORIZING THE INTERCEPTION  )              93-11-Misc-Cr-T-21
OF WIRE COMMUNICATIONS        )              93-12-Misc-Cr-T-15

---

INVENTORY

TO:

A.   On July 22, 1993; August 3, 1993; and on August 9, 1993; applications for orders authorizing interception of wire communications were filed in the United States District Court for the Middle District of Florida;

B.   That pursuant to the above-noted application, orders were entered authorizing the interception of wire communications for a period of thirty (30) days.

C.   That between the dates of July 22, 1993 and August 19, 1993, wire communications were intercepted.

Very truly yours,

DOUGLAS N. FRAZIER
United States Attorney

By: _____
THOMAS M. FINDLEY
Assistant United States Attorney

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN THE MATTER OF THE APPLICATION     :
OF THE UNITED STATES OF AMERICA      :
FOR AN ORDER AUTHORIZING THE         :   MISC. NO.
INTERCEPTION OF ELECTRONIC           :
AND WIRE COMMUNICATIONS              :

## ORDER

Attached is a motion to seal certain papers or materials; or a pleading submitted by counsel for filing already marked in camera without benefit of a preceding motion and order so directing.

With respect to the attached, the Clerk is directed to:

_____✓_____     File the Order and document(s) in camera.

_____     File the Order and document(s) in the public record.

_____     Return the document(s) to counsel for resubmission, if counsel desires, as a public document.

DONE and ORDERED this 22 day of July 1993, in Tampa, Florida.

UNITED STATES DISTRICT JUDGE
ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

ORDERS FROM DEFENDANT KOVACHEVICH FROM SEALED
SECRET DOCKETED CASE

EXHIBIT K



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                  Case No.8:93-mc-10-cr-T-17AEP

ANTHONY LEWIS,

_____

## EX PARTE ORDER UNDER SEAL

Anthony Lewis seeks confirmation of the Court's receipt of his August 25, 2010 motion requesting an in camera review of issues related to interception of electronic and wire communication in his criminal case.

The Court did not receive any such document. Lewis' motion for an evidentiary hearing related to the motion is denied as moot.

ORDERED at Tampa, Florida, on *NOVEMBER 8th*, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Anthony Lewis

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FILED

2010 NOV 26  PM 1:38

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

ANTHONY LEWIS,

v.                                      Case No. 8:93-mc-10-cr-T-17

UNITED STATES OF AMERICA.

---

### EX PARTE ORDER UNDER SEAL

This cause is before the Court on Lewis's sealed motions alleging that the interception of electronic and wire communications in his criminal case was fraudulent because the Government had not acquired the necessary authorization from the Attorney General to apply to a United States District Judge for an order authorizing the interception of electronic and wire communications.

Lewis's motions must be denied. A copy of the authorization appears in the sealed record. The authorization was signed by Attorney General Janet Reno on April 5, 1993 in the Attorney General's Order No. 1709-93.

Accordingly, Lewis's sealed motions, S-4, S-5, and S-6 are denied, with prejudice.

ORDERED at Tampa, Florida, on *November 24th*, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Anthony Lewis

FINAL ORDER FROM DEFENDANT KOVACHEVICH FROM
_____SEALED SECRET DOCKETED CASE_____

EXHIBIT 1.

# SEALED FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

11 FEB 25 AM II: 50

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

ANTHONY LEWIS,

v.                                              Case No. 8:93-mc-10-cr-T-17

UNITED STATES OF AMERICA.

_____

## EX PARTE ORDER UNDER SEAL

1. "Petitioner's request for clear error for the Court's erroneous determination that authorization from the Untied States Attorney General exist for interception of telephone communications of the petition, request for unsealing and production of documents, and request for recusal because of conflict where the residing judge is a witness to fraud, fraudulent concealment and criminal acts" is denied.

2. "Petitioner's request for evidentiary hearing for opportunity to confront and rebut the government and court's evidence for illegal and unlawful interception of telephone communications and for findings and conclusions regarding criminal violations" is denied.

3. "Petitioner's request for ruling on motions relevant to clear error, fraud, fraudulent concealment and criminal acts that affect the integrity of the judicary [sic] and court, as well

as the effective and expeditious administration of justice" is granted pursuant to this order. The Court has ruled on the motions.

Lewis's related criminal case has been closed for several years. Lewis may not file any additional motions in this sealed case without the prior consent of the Court.

ORDERED at Tampa, Florida, on *FEBRUARY 25th*, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA: Jay L. Hoffer
Anthony Lewis

2

FRAUDULENT/FICTIONAL ALLEGED ORDER FOR WIRETAP
RELIED ON BY DEFENDANT KOVACHEVICH

EXHIBIT M



Office of the Attorney General
Washington. D. C. 20530

ORDER NO. 1709-93

SPECIAL DESIGNATION OF THE ASSISTANT, ACTING ASSISTANT,
AND ANY DEPUTY ASSISTANT ATTORNEY GENERAL OF THE CRIMINAL
DIVISION TO AUTHORIZE APPLICATIONS FOR COURT ORDERS FOR
INTERCEPTION OF WIRE OR ORAL COMMUNICATIONS UNDER
CHAPTER 119, TITLE 18, UNITED STATES CODE

By virtue of the authority vested in me by 28 U.S.C. §§ 509
and 510, 5 U.S.C. § 301, and 18 U.S.C. § 2516(1), and in full
recognition that 18 U.S.C. § 2516(1) empowers the Attorney
General, Deputy Attorney General, and Associate Attorney General
to authorize applications to a Federal judge of competent
jurisdiction for orders authorizing the interception of wire and
oral communications, and in order to preclude any contention that
the designations by the prior Attorney General have lapsed, I
hereby specially designate the Assistant Attorney General in
charge of the Criminal Division, any Acting Assistant Attorney
General in charge of the Criminal Division, and any Deputy
Assistant Attorney General of the Criminal Division, to exercise
the power conferred by Section 2516(1) of Title 18, United States
Code, to authorize applications to a Federal judge of competent
jurisdiction for orders authorizing or approving the interception
of wire or oral communications by the Federal Bureau of
Investigation or a Federal agency having responsibility for the
investigation of the offense(s) as to which such application is

made, when such interception may provide evidence of any of the
offenses specified in Section 2516 of Title 18, United
States Code.

    Order No. 1593-92 of May 28, 1992, is revoked.

Date: April 5, 1993

                                    JANET RENO
                                    Attorney General

- 2 -

ELEVENTH CIRCUIT'S ORDER DENYING REQUEST FOR
WRIT OF MANDAMUS RELEVANT TO SEALED SECRET DOCKETED CASE

EXHIBIT N

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT



No. 12-13023-A

Dist. Ct. Dkt. No. 8:93-cr-00249-RAL-1

IN RE:

ANTHONY LEWIS,

Petitioner.

On Petition for Writ of Mandamus to the
United States District Court for the
Middle District of Florida

**ORDER:**

Anthony Lewis, a *pro se* federal prisoner, moves this Court for leave to proceed *in forma pauperis* ("IFP") on his petition for a writ of mandamus, in which he asks this Court to: (1) vacate his convictions and sentences; (2) dismiss the indictment in his criminal case; (3) order his immediate release from prison; and/or remand his case back to the district court with orders to: (4) unseal a "secret docketed case;" (5) assign a new judge address his initial 28 U.S.C. § 2255 habeas motion; and/or (6) assign a new judge to conduct an investigation into an alleged coverup of fraudulent conduct on part of the district court and its officers.

Lewis seeks to file this petition IFP pursuant to 28 U.S.C. § 1915(a), which provides that any court of the United States may authorize the commencement of a proceeding without

prepayment of fees by a person who submits an affidavit that includes a statement of assets that the person possesses, and indicates that the person is unable to pay such fees. The court, however, may dismiss the action at any time if it determines that the allegation of poverty is untrue or the action or appeal is frivolous. *See* 28 U.S.C. § 1915(e)(2)(A) & (B). In this case, Lewis has established poverty by way of an affidavit of indigency and prison account statement. As discussed below, however, his petition is frivolous.

Mandamus is available "only in drastic situations, when no other adequate means are available to remedy a clear usurpation of power or abuse of discretion." *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997) (quotation omitted). Mandamus may not be used as a substitute for appeal or to control decisions of the district court in discretionary matters. *Id.* "In particular, a writ of mandamus may issue only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *In re Smith*, 926 F.2d 1027, 1030 (11th. Cir. 1991) (quotation omitted). The petitioner has the burden of showing that the claimed right to issuance of the writ is clear and indisputable. *In re Lopez-Lukis*, 113 F.3d 1187, 1188 (11th Cir. 1997).

Mandamus relief is not warranted in this case. Lewis's requests that this Court vacate his convictions and sentences, dismiss the indictment in his criminal case, and order his immediate release from prison are not cognizable in mandamus because they do not ask this Court to order an inferior court to act, but ask this Court to act itself. As to Lewis's other forms of requested relief, a remand of his case with instructions to unseal a secret docketed case, assign a new judge to address his initial § 2255 habeas motion, and assign a new judge to conduct an investigation

2

into the alleged conspiracy, Lewis had the adequate alternative remedy of filing in the district court motions for such relief.

Accordingly, the petition is frivolous and the motion for IFP status is **DENIED.** *See* 28 U.S.C. § 1915(e)(2)(B)(I).

UNITED STATES CIRCUIT JUDGE

3

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 12-13023-A

---

Dist. Ct. Dkt. No. 8:93-cr-00249-RAL-1

IN RE:

ANTHONY LEWIS,

Petitioner.

---

On Petition for Writ of Mandamus to the
United States District Court for the
Middle District of Florida

---

**BEFORE: BARKETT and JORDAN , Circuit Judges.**

**ORDER:**

  Anthony Lewis, a *pro se* federal prisoner, moves for reconsideration of this Court's denial

of leave to proceed IFP on his petition for writ of mandamus, in which he asked this Court to:

(1) vacate his convictions and sentences; (2) dismiss the indictment in his criminal case; (3) order

his immediate release from prison; and/or remand his case back to the district court with orders

to: (4) unseal a "secret docketed case"; (5) assign a new judge to address his initial 28 U.S.C. § 2255

motion to vacate; and/or (6) assign a new judge to conduct an investigation into an alleged coverup

of fraudulent conduct of the district court and its officers.  Lewis's mandamus petition also included

a request for this Court to exercise its supervisory powers over the district court and order it to

resolve the claims he presented in his § 2255 motion to vacate.

A party seeking rehearing or reconsideration must specifically allege any point of law or fact that we overlooked or misapprehended. *See* Fed.R.App.P. 40(a)(2). Lewis states that, while we noted in our denial of his motion for IFP that his mandamus petition was frivolous, we did not specifically respond to his request for us to exercise our supervisory powers. Lewis contends that his motion merits reconsideration given that we overlooked the law concerning that request, specifically, *United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993), and *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992) (*en banc*). Lewis also states that the Court overlooked the facts of his case in holding that he had the adequate alternate remedy of filing motions in the district court for some of his requested forms of relief, as he had already filed such motions. Finally, Lewis claims that his mandamus petition was not frivolous because it had "overwhelming merit in law and fact," as he has proven the existence of a court conspiracy against him.

The phrase "supervisory power" references an appellate court's ability to review the actions of a lower court. *See Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) ("The appellate courts were . . . exercising the so-called supervisory power of an appellate court to review proceedings of trial courts and to reverse judgments of such courts which the appellate court concludes were wrong"). In *Clisby*, we noted that we were exercising "our supervisory power over the district courts" when requiring them to resolve all claims for relief raised in a 28 U.S.C. § 2254 habeas petition, but we did not grant a particular remedy known as "supervisory power." *See Clisby*, 960 F.2d at 936.

Mandamus is available "only in drastic situations, when no other adequate means are available to remedy a clear usurpation of power or abuse of discretion," and may "not be used as a

substitute for appeal." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997) (quotation omitted).

      Lewis misreads our decision in *Clisby*. "Supervisory power" is not a particular remedy that can be requested by a petitioner, but is an overarching term referring to this Court's authority over the district courts within its Circuit. *See Cupp*, 414 U.S. at 146, 94 S.Ct. at 400. Lewis's request for us to exercise our supervisory power was, in essence, identical to his request for mandamus relief, rather than a separate request for relief that we overlooked. Contrary to Lewis's argument, we did not specifically reference our supervisory powers in *Valenti. See generally Valenti*, 987 F.2d 708.

      As to Lewis's claim that we overlooked the fact that he had filed motions for his requested relief in the district court, he also misreads *Jackson*, as the availability of mandamus relief is determined by whether an adequate alternative remedy existed in the district court, rather than by whether he was granted such remedy. *See Jackson*, 130 F.3d at 1004. We did not overlook the fact that the previous motions had been denied, as their denial did not make mandamus a proper avenue for relief. *See id.*

      Finally, to the extent that Lewis claims we overlooked the "overwhelming merit in law and fact" of his mandamus petition concerning the existence of a court conspiracy against him, he presents no specific allegations of an overlooked point of law or fact on that point, as required by Fed.R.App.P. 40(a)(2). Accordingly, we **DENY** reconsideration.

*FABRICATED SEARCH WARRANTS CONTAINING*
ILLEGALLY INTERCEPTED TLEPHONE COMMUNICATION INFORMATION

EXHIBIT O

# SEARCH WARRANT

IN THE _____ THIRTEENTH JUDICIAL CIRCUIT _____ IN AND FOR

**HILLSBOROUGH COUNTY, FLORIDA**

IN THE NAME OF THE STATE OF FLORIDA:
TO:   THE SHERIFF OF HILLSBOROUGH COUNTY, FLORIDA, AND/OR ANY OF HIS LAWFUL
DEPUTIES
THE CHIEF OF THE TAMPA POLICE DEPARTMENT AND/OR ANY POLICE OFFICER
THEREOF:

WHEREAS, complaint on oath and in writing, supported by affidavit has been made before me, the

undersigned _____ *Judge . Don Castor* _____

in and for the Hillsborough County, Florida, by   Detective R.A. Olewinski of the City of
Tampa Police Department

That affiant has reason to believe and does believe certain premises located in Hillsborough County, Florida,
described as follows, to-wit: 12230 North     th street apartment 346 is located within the
Cinnamon Cove apartment complex    230 is a story concrete structure that is pink in
color and faces east on the wes·    .de of sixteenth street. Apartment 346 is located on
ground floor and the front door      :es north. The numbers 346 are affixed to the front
door.

being the premises occupied by or under :   ntrol of   Black male Anthony Lewis, Angelique Bracetty
and/or any other persons who tr      hristian names are not known.

and there is now being kept on said premises certain   Stimulent drugs; to wit; cocaine and records
of cocaine transaction, address books with names and entries, any device used in the
manufacture of rock cocaine and any financial records.to include U.S currency.

which is being kept and used in violation of the Laws of the State of Florida, to-wit: the Laws prohibiting

The use and possession of cocaine in violation of Florida State Statute 893.13.

That the facts tending to establish the grounds for this application and the probable cause of affiant believing
that such facts exist are as follows:

Refer to exhibit " A "
which is incorporated
by reference and is
made part hereof

And it appears to the Court that affiant is a reputable citizen of Hillsborough County, State of Florida, and that the
facts set forth in said affidavit show and constitute probable cause for the issuance of this warrant and the Court being satisfied
of the existence of said grounds set forth in said application, or that there is probable cause to believe in their existence.
NOW, THEREFORE, you are commanded with such proper and necessary assistance as may be necessary, in the day·
time or in the nighttime, or on Sunday, as the exigencies of the occasion may demand or require, to enter and search the
aforesaid premises and curtilage thereof (and the persons of anyone found there) (and any vehicles found thereon) for the
property described in this warrant; and if the same or any part thereof be found, you are hereby authorized
to seize and secure same, giving proper receipt therefore and delivering a duplicate copy on said premises, and to
arrest the said   Black male Anthony Lewis, Angelique Bracetty and any John or Jane Doe whose
true christian names are unknown.

or any other person or persons found violating the law in connection with the same, and making a return of your
doings under this warrant within ten (10) days of the date hereof, and you are further directed to bring said property
so found and also the bodies of the persons in possession thereof before any County and/or Circuit Judge having
jurisdiction of this offense to be disposed of according to law

# AFFIDAVIT
## FOR SEARCH WARRANT

IN THE _____ THIRTEENTH JUDICIAL CIRCUIT _____ IN AND FOR

### HILLSBOROUGH COUNTY, FLORIDA

STATE OF FLORIDA,
COUNTY OF HILLSBOROUGH

BEFORE ME, _____ *Tulip Don Casto* _____

_____, in and for Hillsborough County, Florida, personally came
Detective R. A. Olewinski of the City of Tampa Police Department
who, being first duly sworn, deposes and says. That affiant is a citizen and resident of said Hillsborough County, State of Florida, and that he has reason to believe and does believe that those certain premises located in Hillsborough County, Florida, described as follows, to-wit:
12230 North 16th street apartment 346 is located within the Cinnamon Cove apartment complex. 12230 is a two story concrete structure that is pink in color. The building faces east on the west side of sixteenth street. Apartment 346 is located on the ground floor and the front door faces north. The numbers 346 are affixed to the door.

being the premises occupies by or under the control of   Black male Anthony Lewis, Angeliquie Bracetty, and/or any persons who christian  names are not known.

and there is now being kept on said premises certain Stimulent drugs; to wit; cocaine and records of cocaine transactions, address books with names and entries, any devices used in the manufacture of rock cocaine.and any financial records. to include U.S. currency.

which is being kept and used in violation of the Laws of the State of Florida, to-wit the Laws prohibiting
The illegal use and possession of cocaine in violation of Florida State Statute 893.13

That the facts tending to establish the grounds for this application and the probable cause of affiant believing that such facts exist are as follows:

Refer to exhibit " A "
which is incorporated
by reference and is
made part hereof

WHEREOF, affiant makes this affidavit and prays the issuance of a search warrant in due form of law for the search of the above described premises for the said property, heretofore described, and for the seizure and safe keeping thereof, subject to the order of this Honorable Court, by the duty constituted officers of the law

Sworn to and subscribed before me this _____ day of _____ *August* _____ A D 19 ___

INVENTORY AND RECEIPT OF PROPERTY SEIZED
UNDER THE WITHIN SEARCH WARRANT

EXHIBIT

#1 SMALL PLASTIC BAGS
#2 OHAUS SCALE/ W/COCAINE RESIDUE
#3 9mm GLOCK (LWB2105) TWO MAGAZINES
#4 500 U.S. CURRENCY (RETURNED)
#5 LETTER TO A. LEWIS
#6 PLASTIC BAGGIE/Co RESIDUE
#7 PLASTIC BAGGIE " "
#8 PLASTIC BAGGIE " "
#9 TWO BOXES BAKING SODA
'10 TWO ROLLS PAPER TOWELS
-11 1 BOX FREEZER BAGS, ZIP LOCK
#12 1 16oz BAKING SODA
#13 EMPTY BOTTLE VINIGOR & PAPER TOWEL
#14 NEWS PAPER CLIPPINGS LAW PUBLICATION

#15 NOTE BOOKS ADDRESS BOOK
#16 MILK CARTON WITH RECORDS
#17 TAPE WRAPPINGS
#18 PAPER TOWELS (USED)
#20 BLACK BRIEF CASE
#21 AMANA MICRO WAVE
#22 3M GERM FILTER MASK
#19 BLACK BOOK

This 17 day of _____, A.D., 19 93   _____
Officer

R E T U R N

STATE OF FLORIDA,
COUNTY OF HILLSBOROUGH:

Received the within search warrant on the 17 day of _____, A.D., 19 3 and executed the same in Hillsborough County, Florida, on the 7 day of _____ A.D., 19 3, by searching the premises described herein and by taking into my custody and possession the following described property, to-wit:

ABOVE INVENTORY

And I further executed the said warrant by arresting ANTHONY LEWIS
and by delivering a duplicate copy of this warrant to ANGELINE BRACETTY
and by making and delivering to the said _____
a true inventory of the above described property.

_____
Officer

I R.A. OLEWINSKE, _____ the officer by whom the foregoing warrant was executed, do swear that the above inventory contains a true and detailed account of all property taken by me on said warrant

Exhibit " A "

Your Affiant, Detective R. A. Olewinski, has been employed
with the Tampa Police Department since December of 1979.
Your affiant is presently assigned as a Detective with the
Narcotics Bureau and as been so assigned since October 13, 1991.
Prior assignments were within Uniform District One as an Officer
reaching the rank of Corporal on January 27, 1985 and the Criminal
Intelligence Bureau from March 24, 1991 to October 13, 1991. During
this time your affiant has investigated numerous offenses including
various narcotic related crimes that have resulted in the seizure
and identification of narcotic law violators. Your affiant has
attended a five hundred fifty two ( 552 ) Police Academy of which
a portion was devoted to narcotics investigation. Your affiant has
conducted Valtox tests on dangerous drugs including cocaine and
marijuana and has received positive results.

In November of 1992 The Drug Enforcement Agency in conjunction
with the Hillsborough County Sheriffs Office and the Tampa Police
Department initiated an investigation into the illegal drug
trafficking of Anthony L. LEWIS.  During the course of this
investigation your affiant has received information directly ,
through other law enforcement officers and through six confidential
informants that Anthony Lewis distributes quantities of cocaines in
Hillsoborough County, Florida.

On November 5, 1992 Hillsborough Sheriff's Office Detective
Fred Swope, acting in an undercover capacity, met with Anthony
LEWIS in Tampa Florida to negotiate the purchase of crack cocaine
from Anthony LEWIS. Anthony LEWIS agreed to the purchase of

cocaine and delivered 94.3 grams of crack cocaine in exchange for three thousand dollars in U. S. currency. A field test on the cocaine was conducted with positive results.

Anthony L. LEWIS has a prior arrest for cocaine trafficking and is the subject of a federal arrest warrant for delivery of cocaine.

On July 21, 1993 United States District Judge Elizabeth Kovachevich signed an order for the intercept of communications on telephone number 813 933-2944 subscribed to Henry Lewis of 2608 E. Yukon street, Tampa Florida and telephone number 887 - 9422 a digital pager subscribed to L and L Systems of 1507 East Lake Avenue. The contract from Dial Page showed that Anthony LEWIS signed for the pager service.

On August 3, 1993 United States District Judge Elizabeth Kovachevich signed an order for the intercept of communications on telephone number 818 979 - 4849 subscribed to Brenda Douglas of 12230 North 16th street, apartment 346, in Tampa Florida.

On August 9, 1993 United States District Judge Elizabeth Kovachevich signed an order for the intercept of communications on telephone number (813) 620-7412 a cellular telephone subscribed to Anthony LEWIS of 2608 East Yukon street Tampa Florida.

On August 16, 1993 at 8:35 pm pertinent telephone call number 415 was intercepted from (813) 620-7412. The telephone call was incoming from an unknown latin male to Anthony LEWIS. In the conversation Anthony LEWIS talks with a latin male about money then uses code terms changing money for car titles. LEWIS tells the latin male that he has the car title and needs the car tonight. The

latin male agrees to meet LEWIS and asks for the number. LEWIS says
346.

On August 16, 1993 at 8:54 pm pertinent telephone call number
418 was intercepted from the telephone number (813) 620-7412. The
telephone call was outgoing from Anthony LEWIS to an unknown male
at telephone number (813) 933-5260. In this conversation Anthony
LEWIS advises the male that he picked up the clothes just awhile
ago and in the morning they will be in full bloom. In the course of
this intercept the term clothes has been used as a code term
for cocaine. In the affiants experience subjects who traffic in
cocaine often use code terms to disguise their transactions when
using telephone communications.

On August 16, 1993 at 8:56 pm a pertinent telephone call
number 419 was intercepted from (813) 620-7412. The telephone call
was outgoing to (813) 238-8463. Anthony LEWIS talks to an unknown
female. In this conversation Anthony LEWIS tells the female that he
would be there first thing in the morning. LEWIS also advised that
that everything was safe right here.

On August 16, 1993 pertinent telephone call number 1046 was
intercepted at 9:10 pm from telephone number (813) 979-4949 the
telephone call was outgoing to (813) 223-4488. Anthony LEWIS talks
to an unknown male while inside the address of 12230 North 16th
street apartment 346. Anthony LEWIS tells the male that he will
see him in the morning. The male responds that he hopes so. LEWIS
tells the male that it's for sure.

On August 16, 1993 at 9:20 pm pertinent telephone call number
1052 was intercepted from (813) 979-4849. The telephone call was

outgoing to (813) 971-9062. In this conversation Anthony LEWIS speaks to a latin male. The latin male asks LEWIS for the number. Lewis replies "346". The latin male then asks what is the name. Lewis tells the male Wanda Stubbs.

In response to pertinent call 1052, Special Agent Thomas Feeney, of the United States Department of Justice, Drug Enforcement Administration, and Detective D. W. Todd, Tampa Police Department, Narcotics Bureau responded to 12230 North 16th Street, Apartment 346, Tampa, Hillsborough County, Florida.

Upon our arrival, Special Agent Feeney spoke with the security guard relating a latin subject attempting to enter the apartment complex. The security guard advised that a female with a latin male stopped at the gate requesting entry into the complex. The couple was not sure if they were going to apartment 336 or apartment 346, but they were going to see someone known as "Angelique" but they did not know her last name.

Upon leaving, the female and latin male advised the security guard that they had visited apartment 346.

While Special Agent Feeney was speaking with the guard, Detective D. W. Todd drove to the area of apartment 346, and observed a small parked in front of apartment 346, next to Anthony Lewis' vehicle. A short time later, Detective D. W. Todd observed this vehicle departing the area of apartment and stopping at the security gate. Detective Todd observed the vehicle was bearing Florida License "NYB 06V". A registration check revealed the vehicle is registered to a 1987 Nissan owned by "Carolina Torres, 14930 S. W. 82nd Terrace, Apartment 205, Miami, Florida".

On August 17, 1993 between  12:44 am and 1:15 am, various calls were intercepted that indicated that at least one (1) subject would be leaving the apartment within a short period of time.

On August 17, 1993, at approximately 1:45 am, Detective Tim Lovett of the Hillsborough County Sheriff's Office, observed a black male walking from the area of the front door of apartment 346.  The black male departed in a small white car with dark tinted windows.  Detective D. W. Todd observed the small white car leave the apartment complex via the west gate.   The vehicle traveled southbound on North 15th Street, westbound on East 122 Avenue, southbound on North Nebraska Avenue, the westbound on East Fowler Avenue, turning into the Howard Johnson Motel.

In the south parking lot of the Howard Johnson Motel, units from the Tampa Police Department, Hillsborough County Sheriff's Office, and the Drug Enforcement Administration attempted to stop the white vehicle.  The driver of the vehicle, later identified as Terrance Malloy, attempted to flee, and struck a marked unit from the Hillsborough County Sheriff's Office.   Terrance Malloy was arrested at the scene.  Approximately one-half kilogram of crack cocaine was observed in plain view, in the floorboard of his vehicle, on the driver's side.  A valtox field test was performed Detective Todd.  This test resulted in a positive reaction for the presence of cocaine.

Due to the above your affiant has reason to believe and does believe that there is a quantity of a controlled substance; to wit; cocaine inside the apartment located at 12230 North 16th street number 346, Tampa Hillsborough County Florida, contrary to

On August 17, 1993 between   12:44 am and  1:15 am, various
calls were intercepted that indicated that at least one (1) subject
would be leaving the apartment within a short period of time.

On August 17, 1993, at approximately 1:45 am, Detective Tim
Lovett of the Hillsborough County Sheriff's Office, observed a
black male walking from the area of the front door of apartment
346.  The black male departed in a small white car with dark tinted
windows.  Detective D. W. Todd observed the small white car leave
the apartment complex via the west gate.   The vehicle traveled
southbound on North 15th Street, westbound on East 12 Avenue,
southbound on North Nebraska Avenue, the westbound on East Fowler
Avenue, turning into the Howard Johnson Motel.

In the south parking lot of the Howard Johnson Motel, units
from the Tampa Police Department, Hillsborough County Sheriff's
Office, and the Drug Enforcement Administration attempted to stop
the white vehicle.  The driver of the vehicle, later identified as
Terrance Malloy, attempted to flee, and struck a marked unit from
the Hillsborough County Sheriff's Office.   Terrance Malloy was
arrested at the scene.  Approximately one-half kilogram of crack
cocaine was observed in plain view, in the floorboard of his
vehicle, on the driver's side.  A valtox field test was performed
Detective Todd.  This test resulted in a positive reaction for the
presence of cocaine.

Due to the above your affiant has reason to believe and
does believe that there is a quantity of a controlled substance; to
wit; cocaine inside the apartment located at 12230 North 16th
street number 346, Tampa Hillsborough County Florida, contrary to

IN THE THIRTEENTH JUDICIAL CIRCUIT IN AND FOR
HILLSBOROUGH COUNTY, FLORIDA

SEARCH WARRANT

IN THE NAME OF THE STATE OF FLORIDA:
TO:          THE CHIEF OF THE TAMPA POLICE DEPARTMENT AND/OR ANY
             POLICE OFFICER THEREOF:
             THE SHERIFF OF HILLSBOROUGH COUNTY, FLORIDA AND/OR OF
             LAWFUL DEPUTY THEREOF:
             THE SPECIAL AGENT IN CHARGE OF THE DRUG ENFORCEMENT
             ADMINISTRATION AND/OR ANY LAWFUL AGENT THEREOF:

WHEREAS, complaint on oath and in writing, supported by
affidavit has been made before me, the undersigned
Robert H. Bonanno, Circuit Judge
_____

in and for Hillsborough County, Florida, by Detective D. W. Todd,
Jr., with the City of Tampa Police Department.

    That affiant has reason to believe and does believe certain
premises located in Hillsborough County, Florida described as
follows, to wit:

    A single family residence, which has a common street address
of 4101 North Holly Street, Tampa, Hillsborough County, Florida.
This residence is of frame construction, being brown and beige in
color.  The residence sits on the east side of North Holly Street,
facing west, and is further indicated by the numeric insignia
"4101" affixed to the corner of the residence.

    This warrant shall include any outbuildings located on said
property and any vehicles parked there or under the control of the
occupants.

    Being the premises occupied by or under the control of a black

1

male named Anthony L. Lewis (aka: "Mace") born on November 27, 1965, and there now being kept on said premises certain controlled substance; to wit: cocaine.

Which is being kept and used in violation of the laws of the State of Florida, to wit: the laws prohibiting the illicit use, illicit possession, illicit distribution, illicit trafficking, or illicit delivery of cocaine, as stated in Florida State Statue 893.13 and 893.135.

That the facts tending to establish the grounds for this application and the probable cause of the affiant believing that such facts exist are set forth in a written affidavit which has been sworn to in my presence.

And it appears to the Court that the affiant is a reputable citizen of the State of Florida, and that the facts set forth in said affidavit show and constitute probable cause for the issuance of this warrant and the Court being satisfied of the existence of said grounds set forth in said application, or that there is probable cause to believe in their existence.

NOW THEREFORE, you are commanded with such proper and necessary assistance as may be necessary, in the daytime or in the nighttime, or on Sunday, as the exigencies of the occasion may demand or require, to enter and search the aforesaid premises and curtilage thereof (and of the persons of anyone found there) (and any vehicles found thereon) for the property described in this warrant: and if same of any part thereof be found, you are hereby authorized to seize and secure same, giving proper receipt

2

therefore and delivering a duplicate copy on said premises, and to arrest the said Anthony L. Lewis (aka: "Mace"), or any other person or person found violating the law in connection with the same, (and make a return of your doings under this warrant within ten days of the date hereof,) and you are further directed to bring said property so found and also the bodies of the persons in possession thereof before any County and/or Circuit Judge having jurisdiction of this offense to be disposed of according to law.

WITNESS    my    hand    and    seal    this    _____ day    of _____ , 1993.

_____
Judge in and for Hillsborough County, Florida

IN THE THIRTEENTH JUDICIAL CIRCUIT IN AND FOR
HILLSBOROUGH COUNTY, FLORIDA

STATE OF FLORIDA:
COUNTY OF HILLSBOROUGH:

AFFIDAVIT FOR SEARCH WARRANT

BEFORE ME, Robert A Bonanno, Circuit Judge

in and for Hillsborough County, Florida personally came Detective
D. W. Todd, Jr. of the City of Tampa Police Department, Narcotics
Bureau who being first duly sworn, deposes, and says: That affiant
is a citizen and resident of the State of Florida, and that he has
reason to believe and does believe that certain premises located in
Hillsborough County, Florida described as follows, to wit:

A single family residence, which has a common street address
of 4101 North Holly Street, Tampa, Hillsborough County, Florida.
This residence is of frame construction, being brown and beige in
color. The residence sits on the east side of North Holly Street,
facing west, and is further indicated by the numeric insignia
"4101" affixed to the corner of the residence.

Being the premises occupied by or under the control of a black
male, Anthony L. Lewis (aka: "Mace"), who was born on November 27,
1965.

That the facts tending to establish the grounds for the
application and probable cause of the affiant believing that such
facts exists are as follows:

Your affiant, Detective D. W. Todd, Jr., is a duly sworn,
appointed, and authorized member of the City of Tampa Police

Department.  Detective D. W. Todd is currently assigned to and has been assigned since November 1985, to the Tactical Division, Narcotics Bureau, where your affiant is charged with the responsibility of investigating violations dealing with dangerous drugs.   Your affiant, Detective D. W. Todd is also sworn as a Deputy Sheriff with the Pinellas County Sheriff's Office where your affiant is assigned to a multi-agency task force conducting investigations pertaining to narcotic law violations.  Detective D. W. Todd, Jr., is a certified instructor by the State of Florida, Department of Criminal Justice and Standards, and presently instructs in the area of narcotics investigations, and identification.   Detective D. W. Todd is a graduate of the Tampa Police Academy, where your affiant completed three hundred twenty hours (320) of instruction pertaining to law enforcement, including narcotics identification.   Detective D. W. Todd is a graduate of the "Basic Narcotic Enforcement School" sponsored by the United States Department of Justice through the Drug Enforcement Administration, where your affiant completed eighty (80) hours of instruction.   Additionally your affiant is a graduate of two "Financial Investigation" schools sponsored by the United States Internal Revenue Service.   Detective D. W. Todd has conducted numerous investigations involving violations of Florida State Statues, and Federal Acts, with regards to dangerous drugs. Detective D. W. Todd has applied for, and been granted, search warrants in the past which has led to the arrest and successful prosecution of violators, along with the seizure of quantities of illicit drugs.

On August 17, 1993, Terrance Genell Malloy was interviewed by Detective D. W. Todd of the Tampa Police Department, Narcotics Bureau. This interview was conducted in the Tampa Police Department, Narcotics Bureau, during which Terrance Malloy provided the following information:

Terrance Malloy has known Anthony Lewis, aka: "Mace" since approximately 1987. Terrance Malloy has been involved in the distribution of quantities of crack cocaine for the past "couple months" with Anthony Lewis. Anthony Lewis receives quantities of cocaine from Colombian Nationals.

Approximately two (2) to three (3) weeks ago, Terrance Malloy witnessed a Colombian National, known to him as "Carlos", deliver three (3) kilograms of cocaine HCL to Anthony Lewis in exchange for fifty-thousand dollars in United States Currency. This transaction took place in Anthony Lewis' residence located at 2608 East Yukon Street, Tampa, Florida. The three (3) kilograms were wrapped in a brown tape. Anthony Lewis also has clothing and furniture inside the Yukon residence.

Approximately two (2) days later, Terrance Malloy was inside the residence located at 4101 North Holly Street, Tampa, Hillsborough County, Florida. While within the residence, Terrace Malloy observed "Mace" cutting a quantity of cocaine base into one hundred dollar packs.

On August 12, 1993, Terrance Malloy personally received twenty packs from "Mace" in exchange for fifteen hundred dollars, ($1,500.00) in United States Currency. This transaction also took place at 2608 East Yukon Street residence.

On August 16, 1993, Terrance Malloy overheard "Mace" tell someone on the telephone that he had "bought six (6) shirts". Terrace Malloy related that this means that he purchased six (6) kilograms of cocaine.  Terrance Malloy believes that "Mace" is currently storing five (5) of the kilograms within the residences located at 2608 East Yukon Street, and 4101 North Holly.

Your affiant has reason to believe and does believe the information provided is true and reliable based on the following:

During November 1992, members of the Hillsborough County Sheriff's Office, Drug Enforcement Administration, and the Tampa Police Department began an investigation into the illicit activities of Anthony Lewis aka: "Mace".

On November 5, 1992, Hillsborough County Sheriffs Detective Fred Swoope and a confidential informant, (CI), met LEWIS and two other unidentified black males inside the Burger King located at Busch Blvd., Tampa, FL.  Detective Swoope informed LEWIS that he was interested in purchasing three ounces of crack cocaine in "cookies," or in "packs" for $3,000.00.  LEWIS told    Detective Swoope that he would sell him thirty six "packs."

Shortly thereafter, Detective Swoope and the confidential informant followed Anthony Lewis and the two unidentified males directly to 2608 East Yukon Street, Tampa, Florida.

Inside this residence, Detective Swoope observed Anthony Lewis place a number of telephone calls from a telephone located inside the residence.

When Anthony Lewis was finished using the telephone, he told Detective Swoope that he had to go and get the crack cocaine.



Anthony Lewis then left the residence, along with one of the two unidentified black males who had been present with him at the Burger King Restaurant.   Later,   Anthony Lewis returned to the residence and met with Detective Swoope, who was seated in the living room.   A short time later, Anthony Lewis walked into the kitchen and began to count U.S. currency at the kitchen table.   A few minutes later, Anthony Lewis gave Detective Swoope a large plastic bag.   Detective Swoope examined this bag and found that it contained thirty-six small plastic bags, commonly referred to as "packs."  Each of these bags contained about eight pieces of crack cocaine.   At this point in time, Detective Swoope handed Anthony Lewis $3,000.00 in U.S. currency.   A little while later, Detective Swoope and the CI left 2608 East Yukon Street, Tampa, Florida.

On December 21, 1992, the crack cocaine purchased from Anthony Lewis was analyzed at the DEA'S Southeast Regional Laboratory. This analysis revealed that the substance purchased was 94.3 grams of cocaine base.

On April 6, 1993, Tampa Police Department Detectives Jeff Davis and Robert Sinclair established surveillance at the residence of Anthony LEWIS at 2608 East Yukon Street, Tampa, Florida.   Upon arrival at that location, Detectives Davis and Sinclair observed that garbage containers had been placed out by the curb of this residence.   Subsequent to making this observation, Detectives Davis and Sinclair seized the garbage and transported it to the Tampa Police Department.   An examination of this garbage resulted in the seizure of the following items:

(a)   3 Q-tips, 5 single edge razor blades, 2 small clear



plastic bags with suspected cocaine residue.

(b)    8 single edge razor blades with suspected cocaine residue.

(c)    Paper towels with suspected cocaine residue.

(d)    Two airline tickets for one way flight to Miami on March 28, 1993 in the names of A. Lewis and C. Graces.

(e)    An advertisement flyer addressed to Anthony LEWIS 2608 E. Yukon Street, Tampa, Florida.

(f)    One manual to a Ohaus electronic scale.

(g)    One doctors statement addressed to Angelique Bracetty, at 14408 Hellenic with a change of address notification to 12230 North 16th St., Tampa, Florida 33612.

(h)    Patient information form in the name of Angelique Bracetty. The address provided for BRACETTY on this form was listed as 4101 N. Holly St., Tampa, Florida.

(i)    Three empty razor single edge razor blade boxes.

(j)    One empty sixteen ounce baking soda box.

(k)    Nine single edge razor blades and 6 small plastic bags.

After examining these items, Detective Olewinski performed a presumptive test on the residue found on the above-listed items. The results of these tests were positive for the presence of cocaine.

On July 2, 1993, Detective Olewinski established surveillance at the residence of Anthony Lewis, at 2608 East Yukon Street, Tampa, Florida. Upon arrival at that location, Detective Olewinski observed that garbage had been placed out by the curb of

this residence.  Subsequent to making this observation, Detective Olewinski seized the garbage and transported it to the Tampa Police Department.  An examination of this garbage resulted in the seizure of the following items:

(a)    2   clear   plastic   self-sealing   plastic   bags containing suspected cocaine residue.

(b)   8 clear plastic sandwich bags

(c)    2  separate  containers  commonly  used  to  package kilogram quantities of cocaine.  These containers were constructed of brown plastic tape.  One container was marked "CAESA 200" and the other was marked "CAESA 134".

(d)   1 empty 16 ounce box of Arm and Hammer Baking Soda.

(e)    1  newspaper  page  containing  suspected  cocaine residue.

(f)    1  Tampa  Electric  Company,  dated  June  4,  1993, addressed to Anthony L. Lewis, at 2608 E. Yukon St., Tampa, Florida.

(g)    1  General  Telephone  Company  bill,  dated  May  31, 1993, addressed to Henry Lewis, at 2608 E. Yukon St., Tampa, Florida.

(h)    1  GTE  Mobilenet  bill,  dated  June  22,  1993, addressed to Anthony Lewis, at 2608 East Yukon Street, Tampa, Florida.

After  examining  these  items,  Detective  Olewinski  performed  a presumptive  test  on  the  residue  found  on  the  above-listed  items. The  results  of  these  tests  were  positive  for  the  presence  of cocaine.

On July 12, 1993, at approximately 5:00 p.m., Tampa Police Detective Richard Olewinski and Drug Enforcement Administration Special Agent Thomas Feeney were conducting surveillance in the vicinity of 4101 N. Holly Street, Tampa, Florida. At that time, Detective Olewinski and Special Agent Feeney observed that there were two green rubber trash cans on North Holly Street, directly in front of 4101 North Holly Street and adjacent to the driveway of this residence.

Immediately following this observation, Detective Olewinski and Special Agent Feeney retrieved two green plastic garbage bags from one of the aforementioned green trash cans. Subsequently, Detective Olewinski and Special Agent Feeney examined the contents of these two trash bags and found that they contained the following items:

(a)   4 separate containers commonly used to package kilogram quantities of cocaine. Two of these containers consisted of filament tape and a rubber material. The other two containers were constructed of filament tape and a silver material.

(b)   3 empty razor blade containers.

(c)   10 razor blades containing suspected cocaine residue.

(d)   2 paper towels containing suspected cocaine residue.

(e)   2 16-ounce boxes of Arm and Hammer baking soda.

(f)   2 clear plastic bags containing suspected cocaine residue.

(g)  3 empty razor blade boxes, one razor blade and 1 empty
razor blade cartridge.

(h)  2 envelopes addressed to Anthony LEWIS, one at
2608 East Yukon Street, Tampa, Florida and the other
at an address in Havana, Florida.

Detective Olewinski performed a presumptive field test items (a)
through (g). The test on items (c), (d) and (f) were positive for
the presence of cocaine.

Anthony L. Lewis has a prior arrest for cocaine trafficking
and is the subject of a federal arrest warrant for delivery of
cocaine.

On July 13, 1993, S/A Thomas Feeney learned from the Tampa
Electric Company (TECO) that Anthony Lewis, Social Security Number:
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, subscribes to the electric service at 4101 North Holly
St., Tampa, Florida.   According to records maintained by TECO,
Lewis has subscribed to service at this address since March 15,
1993.

On July 21, 1993 United States District Judge Elizabeth
Kovachevich signed an order for the intercept of communications on
telephone number (813) 933-2944 subscribed to Henry Lewis of 2608
East Yukon Street, Tampa Florida and telephone number (813) 887-
9422 a digital pager subscribed to L and L Systems of 1507 East
Lake Avenue. The contract from Dial Page showed that Anthony LEWIS
signed for the pager service.

On August 3, 1993 United States District Judge Elizabeth
Kovachevich signed an order for the intercept of communications on



telephone number (813) 979-4849 subscribed to Brenda Douglas of 12230 North 16th street, apartment 346, in Tampa Florida.

On August 9, 1993 United States District Judge Elizabeth Kovachevich signed an order for the intercept of communications on telephone number (813) 620-7412 a cellular telephone subscribed to Anthony LEWIS of 2608 East Yukon street Tampa Florida.

Based on the foregoing totality of the circumstances, your affiant, Detective D. W. Todd has reason to believe and does believe that a quantity of cocaine or cocaine base is being kept within the residence located at 4101 North Holly and 2608 East Yukon Street, Tampa, Hillsborough County, Florida. Further that the cocaine is being stored in violation of Florida State Statue 893.13 and 893.135, and is subject to seizure.

Sworn to and subscribed before me, this ____ day of _____, 1993.

D. W. TODD, Jr., Detective

IN THE THIRTEENTH JUDICIAL CIRCUIT IN AND FOR
HILLSBOROUGH COUNTY, FLORIDA

SEARCH WARRANT

IN THE NAME OF THE STATE OF FLORIDA:
TO:        THE CHIEF OF THE TAMPA POLICE DEPARTMENT AND/OR ANY
POLICE OFFICER THEREOF:
THE SHERIFF OF HILLSBOROUGH COUNTY, FLORIDA AND/OR ANY OF
LAWFUL DEPUTY THEREOF:
THE SPECIAL AGENT IN CHARGE OF THE DRUG ENFORCEMENT
ADMINISTRATION AND/OR ANY LAWFUL AGENT THEREOF:

WHEREAS, complaint on oath and in writing, supported by

affidavit has been made before me, the undersigned

_Robert H. Bonanno, Circuit Judge_

in and for Hillsborough County, Florida, by Detective D. W. Todd,

Jr., with the City of Tampa Police Department.

That affiant has reason to believe and does believe certain

premises located in Hillsborough County, Florida described as

follows, to wit:

A single family residence, which has a common street address

of 2608 East Yukon Street, Tampa, Hillsborough County, Florida.

This residence is beige in color with brown trim.  The residence

sits on the north side of East Yukon Street, facing south, and is

further indicated by the numeric insignia affixed to the top of the

carport.

This warrant shall include any outbuildings located on said

property and any vehicles parked there or under the control of the

occupants.

Being the premises occupied by or under the control of a black

1

male named Anthony L. Lewis (aka: "Mace") born on November 27, 1965, and there now being kept on said premises certain controlled substance; to wit: cocaine.

Which is being kept and used in violation of the laws of the State of Florida, to wit: the laws prohibiting the illicit use, illicit possession, illicit distribution, illicit trafficking, or illicit delivery of cocaine, as stated in Florida State Statue 893.13 and 893.135.

That the facts tending to establish the grounds for this application and the probable cause of the affiant believing that such facts exist are set forth in a written affidavit which has been sworn to in my presence.

And it appears to the Court that the affiant is a reputable citizen of the State of Florida, and that the facts set forth in said affidavit show and constitute probable cause for the issuance of this warrant and the Court being satisfied of the existence of said grounds set forth in said application, or that there is probable cause to believe in their existence.

NOW THEREFORE, you are commanded with such proper and necessary assistance as may be necessary, in the daytime or in the nighttime, or on Sunday, as the exigencies of the occasion may demand or require, to enter and search the aforesaid premises and curtilage thereof (and of the persons of anyone found there) (and any vehicles found thereon) for the property described in this warrant: and if same of any part thereof be found, you are hereby authorized to seize and secure same, giving proper receipt

therefore and delivering a duplicate copy on said premises, and to arrest the said Anthony L. Lewis (aka: "Mace"), or any other person or person found violating the law in connection with the same, (and make a return of your doings under this warrant within ten days of the date hereof,) and you are further directed to bring said property so found and also the bodies of the persons in possession thereof before any County and/or Circuit Judge having jurisdiction of this offense to be disposed of according to law.

WITNESS    my    hand    and    seal    this    _17th_ day    of _August_ , 1993.

_____
Judge in and for Hillsborough County, Florida

IN THE THIRTEENTH JUDICIAL CIRCUIT IN AND FOR
HILLSBOROUGH COUNTY, FLORIDA

STATE OF FLORIDA:
COUNTY OF HILLSBOROUGH:

AFFIDAVIT FOR SEARCH WARRANT

BEFORE ME, _Robert H. Bonanno, Circuit Judge_

_____ ,

in and for Hillsborough County, Florida personally came Detective

D. W. Todd, Jr. of the City of Tampa Police Department, Narcotics

Bureau who being first duly sworn, deposes, and says:  That affiant

is a citizen and resident of the State of Florida, and that she has

reason to believe and does believe that certain premises located in

Hillsborough County, Florida described as follows, to wit:

A single family residence, which has a common street address

of 2608 East Yukon Street, Tampa, Hillsborough County, Florida.

This residence is beige in color with brown trim.   The residence

sits on the north side of East Yukon Street, facing south, and is

further indicated by the numeric insignia affixed to the top of the

carport.

Being the premises occupied by or under the control of a black

male, Anthony L. Lewis (aka: "Mace"), who was born on November 27,

1965.

That the facts tending to establish the grounds for the

application and probable cause of the affiant believing that such

facts exists are as follows:

Your affiant, Detective D. W. Todd, Jr., is a duly sworn,

appointed,  and  authorized  member  of  the  City  of  Tampa  Police

Department.  Detective D. W. Todd is currently assigned to and has been assigned since November 1985, to the Tactical Division, Narcotics Bureau, where your affiant is charged with the responsibility of investigating violations dealing with dangerous drugs.  Your affiant, Detective D. W. Todd is also sworn as a Deputy Sheriff with the Pinellas County Sheriff's Office where your affiant is assigned to a multi-agency task force conducting investigations pertaining to narcotic law violations.  Detective D. W. Todd, Jr., is a certified instructor by the State of Florida, Department of Criminal Justice and Standards, and presently instructs in the area of narcotics investigations, and identification.  Detective D. W. Todd is a graduate of the Tampa Police Academy, where your affiant completed three hundred twenty hours (320) of instruction pertaining to law enforcement, including narcotics identification.  Detective D. W. Todd is a graduate of the "Basic Narcotic Enforcement School" sponsored by the United States Department of Justice through the Drug Enforcement Administration, where your affiant completed eighty (80) hours of instruction.  Additionally your affiant is a graduate of two "Financial Investigation" schools sponsored by the United States Internal Revenue Service.  Detective D. W. Todd has conducted numerous investigations involving violations of Florida State Statues, and Federal Acts, with regards to dangerous drugs. Detective D. W. Todd has applied for, and been granted, search warrants in the past which has led to the arrest and successful prosecution of violators, along with the seizure of quantities of illicit drugs.

On August 17, 1993, Terrance Genell Malloy was interviewed by Detective D. W. Todd of the Tampa Police Department, Narcotics Bureau.   This interview was conducted in the Tampa Police Department, Narcotics Bureau, during which Terrance Malloy provided the following information:

Terrance Malloy has known Anthony Lewis, aka: "Mace" since approximately 1987.   Terrance Malloy has been involved in the distribution of quantities of crack cocaine for the past "couple months" with Anthony Lewis.   Anthony Lewis receives quantities of cocaine from Colombian Nationals.

Approximately two (2) to three (3) weeks ago, Terrance Malloy witnessed a Colombian National, known to him as "Carlos" deliver three (3) kilograms of cocaine HCL to Anthony Lewis in exchange for fifty-thousand dollars in United States Currency.   This transaction took place in Anthony Lewis' residence located at 2608 East Yukon Street, Tampa, Florida.   The three (3) kilograms were wrapped in a brown tape.   Anthony Lewis also has clothing and furniture inside the Yukon residence.

Approximately two (2) days later, Terrance Malloy was inside the residence located at 4101 North Holly Street, Tampa, Hillsborough County, Florida.   While within the residence, Terrace Malloy observed "Mace" cutting a quantity of cocaine base into one hundred dollar packs.

On August 12, 1993, Terrance Malloy personally received twenty packs from "Mace" in exchange for fifteen hundred dollars, ($1,500.00) in United States Currency.   This transaction also took place at 2608 East Yukon Street residence.

On August 16, 1993, Terrance Malloy overheard "Mace" tell someone on the telephone that he had "bought six (6) shirts". Terrace Malloy related that this means that he purchased six (6) kilograms of cocaine.  Terrance Malloy believes that "Mace" is currently storing five (5) of the kilograms within the residences located at 2608 East Yukon Street, and 4101 North Holly.

Your affiant has reason to believe and does believe the information provided is true and reliable based on the following:

During November 1992, members of the Hillsborough County Sheriff's Office, Drug Enforcement Administration, and the Tampa Police Department began an investigation into the illicit activities of Anthony Lewis aka: "Mace".

On November 5, 1992, Hillsborough County Sheriffs Detective Fred Swoope and a confidential informant, (CI), met LEWIS and two other unidentified black males inside the Burger King located at Busch Blvd., Tampa, FL.  Detective Swoope informed LEWIS that he was interested in purchasing three ounces of crack cocaine in "cookies," or in "packs" for $3,000.00.  LEWIS told  Detective Swoope that he would sell him thirty six "packs."

Shortly thereafter, Detective Swoope and the confidential informant followed Anthony Lewis and the two unidentified males directly to 2608 East Yukon Street, Tampa, Florida.

Inside this residence, Detective Swoope observed Anthony Lewis place a number of telephone calls from a telephone located inside the residence.

When Anthony Lewis was finished using the telephone, he told Detective Swoope that he had to go and get the crack cocaine.

Anthony Lewis then left the residence, along with one of the two unidentified black males who had been present with him at the Burger King Restaurant.   Later,   Anthony Lewis returned to the residence and met with Detective Swoope, who was seated in the living room.   A short time later, Anthony Lewis walked into the kitchen and began to count U.S. currency at the kitchen table.   A few minutes later, Anthony Lewis gave Detective Swoope a large plastic bag.   Detective Swoope examined this bag and found that it contained thirty-six small plastic bags, commonly referred to as "packs."   Each of these bags contained about eight pieces of crack cocaine.   At this point in time, Detective Swoope handed Anthony Lewis $3,000.00 in U.S. currency.   A little while later, Detective Swoope and the CI left 2608 East Yukon Street, Tampa, Florida.

On December 21, 1992, the crack cocaine purchased from Anthony Lewis was analyzed at the DEA'S Southeast Regional Laboratory. This analysis revealed that the substance purchased was 94.3 grams of cocaine base.

On April 6, 1993, Tampa Police Department Detectives Jeff Davis and Robert Sinclair established surveillance at the residence of Anthony LEWIS at 2608 East Yukon Street, Tampa, Florida. Upon arrival at that location, Detectives Davis and Sinclair observed that garbage containers had been placed out by the curb of this residence. Subsequent to making this observation, Detectives Davis and Sinclair seized the garbage and transported it to the Tampa Police Department. An examination of this garbage resulted in the seizure of the following items:

(a)   3 Q-tips, 5 single edge razor blades, 2 small clear

plastic bags with suspected cocaine residue.

(b)   8 single edge razor blades with suspected cocaine residue.

(c)   Paper towels with suspected cocaine residue.

(d)   Two airline tickets for one way flight to Miami on March 28, 1993 in the names of A. Lewis and C. Graces.

(e)   An advertisement flyer addressed to Anthony LEWIS 2608 E. Yukon Street, Tampa, Florida.

(f)   One manual to a Ohaus electronic scale.

(g)   One doctors statement addressed to Angelique Bracetty, at 14408 Hellenic with a change of address notification to 12230 North 16th St., Tampa, Florida 33612.

(h)   Patient information form in the name of Angelique Bracetty. The address provided for BRACETTY on this form was listed as 4101 N. Holly St., Tampa, Florida.

(i)   Three empty razor single edge razor blade boxes.

(j)   One empty sixteen ounce baking soda box.

(k)   Nine single edge razor blades and 6 small plastic bags.

After examining these items, Detective Olewinski performed a presumptive test on the residue found on the above-listed items. The results of these tests were positive for the presence of cocaine.

On July 2, 1993, Detective Olewinski established surveillance at the residence of Anthony Lewis, at 2608 East Yukon Street, Tampa, Florida. Upon arrival at that location, Detective Olewinski observed that garbage had been placed out by the curb of

this residence. Subsequent to making this observation, Detective Olewinski seized the garbage and transported it to the Tampa Police Department. An examination of this garbage resulted in the seizure of the following items:

(a)   2 clear plastic self-sealing plastic bags containing suspected cocaine residue.

(b)   8 clear plastic sandwich bags

(c)   2 separate containers commonly used to package kilogram quantities of cocaine. These containers were constructed of brown plastic tape. One container was marked "CAESA 200" and the other was marked "CAESA 134".

(d)   1 empty 16 ounce box of Arm and Hammer Baking Soda.

(e)   1 newspaper page containing suspected cocaine residue.

(f)   1 Tampa Electric Company, dated June 4, 1993, addressed to Anthony L. Lewis, at 2608 E. Yukon St., Tampa, Florida.

(g)   1 General Telephone Company bill, dated May 31, 1993, addressed to Henry Lewis, at 2608 E. Yukon St., Tampa, Florida.

(h)   1 GTE Mobilenet bill, dated June 22, 1993, addressed to Anthony Lewis, at 2608 East Yukon Street, Tampa, Florida.

After examining these items, Detective Olewinski performed a presumptive test on the residue found on the above-listed items. The results of these tests were positive for the presence of cocaine.

On July 12, 1993, at approximately 5:00 p.m., Tampa Police Detective Richard Olewinski and Drug Enforcement Administration Special Agent Thomas Feeney were conducting surveillance in the vicinity of 4101 N. Holly Street, Tampa, Florida. At that time, Detective Olewinski and Special Agent Feeney observed that there were two green rubber trash cans on North Holly Street, directly in front of 4101 North Holly Street and adjacent to the driveway of this residence.

Immediately following this observation, Detective Olewinski and Special Agent Feeney retrieved two green plastic garbage bags from one of the aforementioned green trash cans. Subsequently, Detective Olewinski and Special Agent Feeney examined the contents of these two trash bags and found that they contained the following items:

(a)   4 separate containers commonly used to package kilogram quantities of cocaine. Two of these containers consisted of filament tape and a rubber material. The other two containers were constructed of filament tape and a silver material.

(b)   3 empty razor blade containers.

(c)   10 razor blades containing suspected cocaine residue.

(d)   2 paper towels containing suspected cocaine residue.

(e)   2 16-ounce boxes of Arm and Hammer baking soda.

(f)   2 clear plastic bags containing suspected cocaine residue.

    (g)   3 empty razor blade boxes, one razor blade and 1 empty
           razor blade cartridge.

    (h)   2 envelopes addressed to Anthony LEWIS, one at
           2608 East Yukon Street, Tampa, Florida and the other
           at an address in Havana, Florida.

Detective Olewinski performed a presumptive field test items (a)
through (g). The test on items (c), (d) and (f) were positive for
the presence of cocaine.

Anthony L. Lewis has a prior arrest for cocaine trafficking
and is the subject of a federal arrest warrant for delivery of
cocaine.

On July 13, 1993, S/A Thomas Feeney learned from the Tampa
Electric Company (TECO) that Anthony Lewis, Social Security Number:
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, subscribes to the electric service at 4101 North Holly
St., Tampa, Florida. According to records maintained by TECO,
Lewis has subscribed to service at this address since March 15,
1993.

On July 21, 1993 United States District Judge Elizabeth
Kovachevich signed an order for the intercept of communications on
telephone number (813) 933-2944 subscribed to Henry Lewis of 2608
East Yukon Street, Tampa Florida and telephone number (813) 887-
9422 a digital pager subscribed to L and L Systems of 1507 East
Lake Avenue. The contract from Dial Page showed that Anthony LEWIS
signed for the pager service.

On August 3, 1993 United States District Judge Elizabeth
Kovachevich signed an order for the intercept of communications on

telephone number (813) 979-4849 subscribed to Brenda Douglas of 12230 North 16th street, apartment 346, in Tampa Florida.

On August 9, 1993 United States District Judge Elizabeth Kovachevich signed an order for the intercept of communications on telephone number (813) 620-7412 a cellular telephone subscribed to Anthony LEWIS of 2608 East Yukon street Tampa Florida.

Based on the foregoing totality of the circumstances, your affiant, Detective D. W. Todd has reason to believe and does believe that a quantity of cocaine or cocaine base is being kept within the residence located at 4101 North Holly and 2608 East Yukon Street, Tampa, Hillsborough County, Florida. Further that the cocaine is being stored in violation of Florida State Statue 893.13 and 893.135, and is subject to seizure.

Sworn to and subscribed before me, this _____ day of _____, 1993.

_____
D. W. TODD, Jr., Detective

RECENTLY OBTAINED INFORMATION OF PAST AND
ILLEGALLY AND UNLAWFULLY INTERCEPTED TELEPHONE COMMUNICATIONS

EXHIBIT P

SUBJECT: Rueters: U.S. directs agents to cover up program used to investigate Americans
DATE: 08/05/2013 06:21:04 PM

Hi friends: Interesting article. Professor Berman wonders if every drug prisoner should file Brady claims.

Exclusive: U.S. directs agents to cover up program used to investigate Americans

How the DEA keeps its secrets secret
2:33pm EDT

By John Shiffman and Kristina Cooke

WASHINGTON | Mon Aug 5, 2013 3:25pm EDT

(Reuters) - A secretive U.S. Drug Enforcement Administration unit is funneling information from intelligence intercepts, wiretaps, informants and a massive database of telephone records to authorities across the nation to help them launch criminal investigations of Americans.

Although these cases rarely involve national security issues, documents reviewed by Reuters show that law enforcement agents have been directed to conceal how such investigations truly begin - not only from defense lawyers but also sometimes from prosecutors and judges.

The undated documents show that federal agents are trained to "recreate" the investigative trail to effectively cover up where the information originated, a practice that some experts say violates a defendant's Constitutional right to a fair trial. If defendants don't know how an investigation began, they cannot know to ask to review potential sources of exculpatory evidence - information that could reveal entrapment, mistakes or biased witnesses.

"I have never heard of anything like this at all," said Nancy Gertner, a Harvard Law School professor who served as a federal judge from 1994 to 2011. Gertner and other legal experts said the program sounds more troubling than recent disclosures that the National Security Agency has been collecting domestic phone records. The NSA effort is geared toward stopping terrorists; the DEA program targets common criminals, primarily drug dealers.

"It is one thing to create special rules for national security," Gertner said. "Ordinary crime is entirely different. It sounds like they are phonying up investigations."

THE SPECIAL OPERATIONS DIVISION

The unit of the DEA that distributes the information is called the Special Operations Division, or SOD. Two dozen partner agencies comprise the unit, including the FBI, CIA, NSA, Internal Revenue Service and the Department of Homeland Security. It was created in 1994 to combat Latin American drug cartels and has grown from several dozen employees to several hundred.

Today, much of the SOD's work is classified, and officials asked that its precise location in Virginia not be revealed. The documents reviewed by Reuters are marked "Law Enforcement Sensitive," a government categorization that is meant to keep them confidential.

'Remember that the utilization of SOD cannot be revealed or discussed in any investigative function,' a document presented to agents reads.. The document specifically directs agents to omit the SOD's involvement from investigative reports, affidavits, discussions with prosecutors and courtroom testimony. Agents are instructed to then use "normal investigative techniques to recreate the information provided by SOD."

A spokesman with the Department of Justice, which oversees the DEA. declined to comment

·· DEA officials defended the program, and said trying to "recreate" an investigative trail is not only legal but a

excuse to stop that vehicle, and then have a drug dog search it," the agent said.

"PARALLEL CONSTRUCTION"

After an arrest was made, agents then pretended that their investigation began with the traffic stop, not with the SOD tip, the former agent said. The training document reviewed by Reuters refers to this process as "parallel construction."

The two senior DEA officials, who spoke on behalf of the agency but only on condition of anonymity, said the process is kept secret to protect sources and investigative methods. "Parallel construction is a law enforcement technique we use every day," one official said. "It's decades old, a bedrock concept."

A dozen current or former federal agents interviewed by Reuters confirmed they had used parallel construction during their careers. Most defended the practice; some said they understood why those outside law enforcement might be concerned.

"It's just like laundering money - you work it backwards to make it clean," said Finn Selander, a DEA agent from 1991 to 2008 and now a member of a group called Law Enforcement Against Prohibition, which advocates legalizing and regulating narcotics.

Some defense lawyers and former prosecutors said that using "parallel construction" may be legal to establish probable cause for an arrest. But they said employing the practice as a means of disguising how an investigation began may violate pretrial discovery rules by burying evidence that could prove useful to criminal defendants.

A QUESTION OF CONSTITUTIONALITY

"That's outrageous," said Tampa attorney James Felman, a vice chairman of the criminal justice section of the American Bar Association. "It strikes me as indefensible."

Lawrence Lustberg, a New Jersey defense lawyer, said any systematic government effort to conceal the circumstances under which cases begin "would not only be alarming but pretty blatantly unconstitutional."

Lustberg and others said the government's use of the SOD program skirts established court procedures by which judges privately examine sensitive information, such as an informant's identity or classified evidence, to determine whether the information is relevant to the defense.

"You can't game the system," said former federal prosecutor Henry E. Hockeimer Jr. "You can't create this subterfuge. These are drug crimes, not national security cases. If you don't draw the line here, where do you draw it?"

Some lawyers say there can be legitimate reasons for not revealing sources. Robert Spelke, a former prosecutor who spent seven years as a senior DEA lawyer, said some sources are classified. But he also said there are few reasons why unclassified evidence should be concealed at trial.

"It's a balancing act, and they've doing it this way for years," Spelke said. "Do I think it's a good way to do it? No, because now that I'm a defense lawyer, I see how difficult it is to challenge."

CONCEALING A TIP

One current federal prosecutor learned how agents were using SOD tips after a drug agent misled him, the prosecutor told Reuters. In a Florida drug case he was handling, the prosecutor said, a DEA agent told him the investigation of a U S citizen began with a tip from an informant. When the prosecutor pressed for more information, he said, a DEA supervisor intervened and revealed that the tip had actually come through the SOD and from an NSA intercept.

"I was pissed," the prosecutor said. "Lying about where the information came from is a bad start if you're trying to comply with the law because it can lead to all kinds of problems with discovery and candor to the court." The prosecutor never filed charges in the case because he lost confidence in the investigation, he said.

A senior DEA official said he was not aware of the case but said the agent should not have misled the prosecutor. How often ... not track what happens

---

albeit without any reference to how that information is used or represented when cases go to court

The DEA has long publicly touted the SOD's role in multi-jurisdictional and international investigations, connecting agents in separate cities who may be unwittingly investigating the same target and making sure undercover agents don't accidentally try to arrest each other.

SOD'S BIG SUCCESSES

The unit also played a major role in a 2008 DEA sting in Thailand against Russian arms dealer Viktor Bout; he was sentenced in 2011 to 25 years in prison on charges of conspiring to sell weapons to the Colombian rebel group FARC. The SOD also recently coordinated Project Synergy, a crackdown against manufacturers, wholesalers and retailers of synthetic designer drugs that spanned 35 states and resulted in 227 arrests.

Since its inception, the SOD's mandate has expanded to include narco-terrorism, organized crime and gangs. A DEA spokesman declined to comment on the unit's annual budget. A recent LinkedIn posting on the personal page of a senior SOD official estimated it to be $125 million.

Today, the SOD offers at least three services to federal, state and local law enforcement agents: coordinating international investigations such as the Bout case; distributing tips from overseas NSA intercepts, informants, foreign law enforcement partners and domestic wiretaps; and circulating tips from a massive database known as DICE.

The DICE database contains about 1 billion records, the senior DEA officials said. The majority of the records consist of phone log and Internet data gathered legally by the DEA through subpoenas, arrests and search warrants nationwide. Records are kept for about a year and then purged, the DEA officials said.

About 10,000 federal, state and local law enforcement agents have access to the DICE database, records show. They can query it to try to link otherwise disparate clues. Recently, one of the DEA officials said, DICE linked a man who tried to smuggle $100,000 over the U.S. southwest border to a major drug case on the East Coast.

"We use it to connect the dots," the official said.

"AN AMAZING TOOL"

Wiretap tips forwarded by the SOD usually come from foreign governments, U.S.. intelligence agencies or court-authorized domestic phone recordings. Because warrantless eavesdropping on Americans is illegal, tips from intelligence agencies are generally not forwarded to the SOD until a caller's citizenship can be verified, according to one senior law enforcement official and one former U.S. military intelligence analyst.

"They do a pretty good job of screening, but it can be a struggle to know for sure whether the person on a wiretap is American," the senior law enforcement official said.

Tips from domestic wiretaps typically occur when agents use information gleaned from a court-ordered wiretap in one case to start a second investigation.

As a practical matter, law enforcement agents said they usually don't worry that SOD's involvement will be exposed in court That's because most drug-trafficking defendants plead guilty before trial and therefore never request to see the evidence against them. If cases did go to trial, current and former agents said, charges were sometimes dropped to avoid the risk of exposing SOD involvement.

Current and former federal agents said SOD tips aren't always helpful - one estimated their accuracy at 60 percent. But current and former agents said tips have enabled them to catch drug smugglers who might have gotten away.

"It was an amazing tool," said one recently retired federal agent. "Our big fear was that it wouldn't stay secret."

DEA officials said that the SOD process has been reviewed internally. They declined to provide Reuters with a copy of their

-- ------------------------------------------------------------------------------------ -- --------

SUBJECT: ACLU
DATE: 09/08/2013 09:06:02 AM

09/04/2013

Drug Agents Have an NSA-Style Spying Problem
By Ezekiel Edwards, ACLU Criminal Law Reform Project at 2:58pm

Over the last few months, we've been bombarded with revelation after revelation about the NSA's unprecedented spying on
Americans. But, according to The New York Times, the NSA's untethered snooping is eclipsed by the agents fighting in a war
that began long before 9/11: the costly and failed War on Drugs.

The Drug Enforcement Administration's secret Hemisphere Project, news of which broke this week, allows drug law
enforcement agencies broad access to billions of AT&T phone records going back a quarter century to 1987. As The New York
Times explained, "the scale and longevity of the data storage appears to be unmatched by other government programs,
including the N.S.A.'s gathering of phone call logs under the Patriot Act."

Our government's mass telephonic data-mining has sparked immense and deserved outrage. But to those who have been
targeted by the War on Drugs for the last several decades, the Hemisphere Project is only one in a long line of privacy-invading
tactics employed by the U.S. government. Many other intrusions  such as the thousands of unconstitutional stops-and-frisks of
people of color in cities across the country, the countless doors kicked in by police in search of drugs, the seizure and forfeiture
of property of people never convicted of a crime  are representative of the kinds of common corporal intrusions that have been
endured by many Americans, disproportionately of color, long before many post 9/11-era invasions of privacy became
commonplace for all Americans.

Further, since 9/11, there has been an increasingly entrenched relationship between overreaching national security programs
and domestic drug law enforcement policies. Each has fed on the other: the long-running drug war provided useful surveillance
blueprints for the massive domestic spying programs that have sprouted up since 9/11. At the same time, domestic drug law
enforcement agencies have seized upon the dismantling of basic constitutional protections over the past decade  in the name
of national security  and pointed the resulting weapons toward America's own citizens.

It should not surprise us then that the Hemisphere Project is only the latest disclosure of mission creep. We found out last
month that the DEA secretly uses NSA surveillance data against Americans as part of its drug investigations  and then
conceals its reliance on this foreign intelligence information. This practice jeopardizes the right to a fair trial for anyone facing
criminal prosecution based on evidence derived from that surveillance data. Or consider "sneak and peek" warrants, in which
law enforcement enters a home or office when no one is present and conducts a search of the premises, without giving notice
to the occupant beforehand. Provisions allowing for these warrants were included in the Patriot Act after government officials
said they are necessary to fight terrorism, but 76% of "sneak and peeks" were used in drug investigations in 2010. (And that is
no anomaly: from 2006-2009, 1,618 sneak and peek warrants were used in drug cases, 22 in fraud cases, and 15 in terrorism
investigations). Further, the use of GPS tracking devices, aerial surveillance, and the militarization of police  often justified by
national security needs  are instead often coopted as highly destructive components of our domestic drug war.

In keeping with the clandestine nature of our government's various spying programs, the DEA had delineated a series of steps
to "keep the program under the radar" by instructing "all requestors  to never refer to Hemisphere in any official document" and
"walling off" the information the government obtains from Hemisphere." This is all in the name of enforcing drug prohibition, a
40-year failure that has cost billions, led to the unnecessary incarceration of millions of Americans, and failed to make a
significant dent in the use, availability, or potency of drugs.

Why has the DEA kept this surreptitious surveillance program in the shadows? Because, as with so many of government
surveillance programs, Hemisphere raises serious constitutional questions. There is a strong argument that it is unreasonable
under the Fourth Amendment for the government to outsource the automatic collection and storage of millions of Americans'
phone records without any individualized suspicion and without court approval or oversight simply so that law enforcement
agencies have easy and immediate access in the future.. Like the N.S.A.'s mass call-tracking program, such extensive and
                                                                  allows the government to construct incredibly detailed and

the life and privacy of millions of its own citizens. The U.S. should be ending the War on Drugs, not expanding it by secretly outsourcing widespread surveillance.